UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AUDREY BURNS<br><br>                    Plaintiff,<br><br>          vs.<br><br>JAMES LIDESTRI,<br><br>                    Defendant. | Case No. 7:25-cv-07474-KMK<br><br>**ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS** |
| JAMES LIDESTRI,<br><br>                    Counterclaimant,<br><br>          vs.<br><br>AUDREY BURNS,<br><br>                    Counterclaim-Defendant. | |

Defendant James Lidestri ("Defendant" or "Counterclaimant"), by and through undersigned counsel, Lewis & Lin LLC, hereby submits this Answer to the First Amended Complaint and asserts Counterclaims against Plaintiff Audrey Burns ("Plaintiff" or "Counterclaim-Defendant"). The following responses correspond to the numbered paragraphs of Plaintiff's First Amended Complaint. Any allegation not expressly admitted is denied. Following Defendant's responses to the First Amended Complaint, Defendant asserts his Affirmative Defenses. Following the Affirmative Defenses, Defendant asserts Counterclaims against Plaintiff.

Defendant responds to the allegations of the First Amended Complaint as follows:

1.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1.

2.     Defendant admits being connected with Plaintiff through a Dallas-based photographer. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 2.

3.     Defendant admits being the owner of BFC Enterprises, LLC ("BFC"), the legal entity that owned and operated <teenstarlet.com>. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 3.

4.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4.

5.     Defendant denies the allegations in Paragraph 5.

6.     Defendant denies the allegations in Paragraph 6.

7.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in sentence one of Paragraph 7. Defendant denies the allegations in sentence two of Paragraph 7.

8.     Defendant admits initiating a lawsuit for, *inter alia*, defamation against Plaintiff. Defendant denies the remaining allegations in Paragraph 8.

9.     Defendant denies the allegations in Paragraph 9.

10.     Defendant admits to living in Dutchess County, New York.

11.     Defendant admits initiating a lawsuit for, *inter alia*, defamation against Plaintiff in the United States District Court Southern District of New York. Defendant denies the remaining allegations in Paragraph 11.

12.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12.

13.     Defendant denies the allegations in Paragraph 13.

14.    Defendant denies the allegations in Paragraph 14.

15.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15.

16.    Defendant admits that "SaaS" generally refers to subscription-based software delivered over the internet. Defendant denies the remaining allegations in Paragraph 16.

17.    Paragraph 17 contains legal arguments that do not require a response. To the extent a response is required, Defendant denies the allegations in Paragraph 17.

18.    Paragraph 18 contains legal arguments that do not require a response. To the extent a response is required, Defendant denies the allegations in Paragraph 18.

19.    Paragraph 19 contains legal arguments that do not require a response. To the extent a response is required, Defendant admits to residing in this District, but denies the remaining allegations in Paragraph 19.

20.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20.

21.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21.

22.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22.

23.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23.

24.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24. Defendant avers that the "photographer, Jim" referenced in Paragraph 24 refers to Jim Bauer (hereinafter "Bauer").

25.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25.

26.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26.

27.     Defendant admits to having used the business name "Giacomo Photography" in the past. Defendant denies the remaining allegations in Paragraph 27.

28.     Defendant denies the allegations in Paragraph 28.

29.     Defendant denies there having been any "'test shoot' for [Defendant]." Defendant avers that he did not know Bauer or Plaintiff at the time of the allegations in Paragraph 29. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 29.

30.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30.

31.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31.

32.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32.

33.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33.

34.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34.

35.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35.

36.     Defendant denies selecting any clothing related to the allegations in Paragraph 36. Defendant avers that he did not know Bauer or Plaintiff at the time of the allegations in Paragraph 36. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 36.

37.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37.

38.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38. Defendant avers that he did not know Bauer or Plaintiff at the time of the allegations in Paragraph 38.

39.     Defendant denies the allegations in Paragraph 39.

40.     Defendant denies the allegations in Paragraph 40.

41.     Defendant denies the allegations in Paragraph 41.

42.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in sentence one of Paragraph 42. Defendant denies the allegations in sentence two of Paragraph 42.

43.     Defendant denies the allegations in Paragraph 43.

44.     Defendant denies the allegations in Paragraph 44.

45.     Defendant denies the allegations in Paragraph 45.

46.     Defendant denies the allegations in Paragraph 46.

47.     Defendant denies the allegations in Paragraph 47.

48.     Defendant denies making any "first payment" as alleged in Paragraph 48. Defendant avers that he did not know Bauer or Plaintiff at the time of the allegations in Paragraph

48. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 48.

49.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49.

50.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50.

51.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51.

52.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52. Defendant avers that he did not know Bauer or Plaintiff at the time of the allegations in Paragraph 52.

53.    Defendant denies the allegations in Paragraph 53.

54.    Defendant denies making any "promise" as alleged in Paragraph 54. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 54.

55.    Defendant denies the allegations in Paragraph 55.

56.    Defendant denies the allegations in Paragraph 56.

57.    Defendant denies the allegations in Paragraph 57.

58.    Defendant denies the allegations in Paragraph 58.

59.    Defendant denies the allegations in Paragraph 59. Defendant avers that Defendant never conducted any photoshoot ever of a minor without a parent or guardian being present, a strict rule that Defendant always followed.

60.    Defendant denies the allegations in Paragraph 60.

61.    Defendant denies the allegations in Paragraph 61. Defendant avers that Defendant did not purchase business class airfare for Plaintiff and her mother and that Defendant did not send any Western Union payment to Plaintiff as alleged in paragraph 61. Defendant further avers that Plaintiff and her mother stayed in a hotel in Fishkill, NY for the first three nights of their trip (Thursday April 18 – Saturday April 20), and in Times Square, Manhattan on the fourth and final night. Defendant further avers that the photoshoot took place on Friday and Saturday at Plaintiff's home nearby, hence why Plaintiff and her mother stayed in Fishkill the first three nights.

62.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 62.

63.    Defendant denies the allegations in Paragraph 63. Defendant avers that the picture of $100 bills and a Juicy Couture bag was taken in Manhattan after the two-day photoshoot, after Defendant, Plaintiff, and Plaintiff's mother went sightseeing in Manhattan on Sunday April 21, 2013. The Juicy Couture bag is from Plaintiff's personal purchase at the store earlier in the day.

64.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64.

65.    Defendant denies the allegations in Paragraph 65. Defendant avers that Defendant picked Plaintiff and her mother up from the airport and drove them to their hotel in Fishkill.

66.    Defendant denies the allegations in Paragraph 66. Defendant avers that the sightseeing trip around Times Square occurred on Sunday, after the two-day photoshoot. Defendant further avers that Plaintiff and her mother stayed in the Times Square hotel on Sunday night and went to the airport via taxi the following morning.

67.     Defendant denies the allegations in Paragraph 67. Defendant avers that Plaintiff and her mother knew well in advance before the trip that the photoshoot would be taking place at Defendant's home.

68.     Defendant denies the allegations in Paragraph 68. Defendant avers that Defendant picked Plaintiff and her mother up from the hotel in Fishkill on the morning of Friday, April 19, and drove only a short distance to Defendant's home for the photoshoot.

69.     Defendant denies that it was a "long drive," and denies that there was anything for Plaintiff's mother to "find out" as alleged in Paragraph 69. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 69.

70.     Defendant denies that cherry blossoms surrounded or lined Defendant's driveway. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 70.

71.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 71.

72.     Defendant denies the allegations in Paragraph 72.

73.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73 concerning Plaintiff's mother's use of medication or suffering from an accident. Defendant denies the remaining allegations in Paragraph 73, including the allegation that Plaintiff's mother "plopped down" and any implication that Plaintiff's mother was not present during the photoshoot.

74.     Defendant denies the allegations in Paragraph 74. Defendant avers that both Plaintiff and her mother were shown photos of other models on BFC's website and from BFC's non-nude photograph portfolio.

75.     Defendant denies the allegations in Paragraph 75.

76.     Defendant admits that Plaintiff and her mother were shown photos of other models on BFC's website and from BFC's non-nude photograph portfolio. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 76.

77.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77.

78.     Defendant denies the allegations in Paragraph 78. Defendant avers that Plaintiff and her mother knew before the trip what the compensation would be and that the photoshoot would be two days.

79.     Defendant denies that Plaintiff stayed in a hotel in Times Square the night before the photoshoot as alleged in Paragraph 79, and Defendant avers that Plaintiff stayed in a hotel in Fishkill, NY the night before the photoshoot. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 79.

80.     Defendant admits to showing Plaintiff and her mother the planned wardrobe, which was first discussed over the phone prior to the trip. Defendant avers that Plaintiff then tried on all the outfits and approval was given by Plaintiff's mother. Defendant denies the remaining allegations in Paragraph 80.

81.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81.

82.     Defendant denies the allegations in Paragraph 82. Defendant avers that the models always dressed in the bathroom or another private room.

83.    Defendant denies the allegations in Paragraph 83. Defendant avers that after photos were taken in a particular outfit, it was standard for a short 1-3 minute video to be filmed of the model posing similarity to the photos. Defendant further avers that this was not an attempt to create "behind the scenes" footage as alleged in Paragraph 83.

84.    Defendant denies the allegations in Paragraph 84.

85.    Defendant denies the allegations in Paragraph 85.

86.    Defendant denies the allegations in Paragraph 86.

87.    Defendant denies the allegations in Paragraph 87.

88.    Defendant denies the allegations in Paragraph 88.

89.    Defendant denies the allegations in Paragraph 89.

90.    Defendant denies the allegations in Paragraph 90.

91.    Defendant denies the allegations in Paragraph 91.

92.    Defendant denies the allegations in Paragraph 92.

93.    Defendant denies the allegations in Paragraph 93.

94.    Defendant denies the allegations in Paragraph 94.

95.    Defendant denies the allegations in Paragraph 95. Defendant avers that photographs were taken in at least five different locations each day.

96.    Defendant denies the allegations in Paragraph 96. Defendant avers that after the first day photoshoot, Defendant drove Plaintiff and her mother back to their hotel in Fishkill.

97.    Defendant denies the allegations in Paragraph 97.

98.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 98. Defendant avers that Plaintiff was in a good mood and high spirits throughout both days of the photoshoot.

99.    Defendant denies the allegations in Paragraph 99. Defendant avers that on both days, Plaintiff's mother was "walking around" and present during the shoots.

100.    Defendant denies the allegations in Paragraph 100.

101.    Defendant denies the allegations in Paragraph 101.

102.    Defendant denies the allegations in Paragraph 102.

103.    Defendant admits that Defendant and Plaintiff's mother executed a contract, but denies the remaining allegations in Paragraph 103.

104.    Defendant admits that Plaintiff's mother signed the contract, but denies the remaining allegations in Paragraph 104. Defendant avers that the name "Kris Karson" was selected the following morning on the car ride to Manhattan.

105.    Defendant denies the allegations in Paragraph 105. Defendant avers that models and their parents are always shown a sample of the photographs at the conclusion of the shoot, but that they could not have any until the content was edited.

106.    Defendant denies the allegations in Paragraph 106. Defendant avers that on Sunday morning, Defendant picked Plaintiff and her mother up from their hotel in Fishkill and then went sightseeing in Manhattan. Defendant further avers that after sightseeing, Plaintiff and her mother checked into a hotel in Times Square to stay the night, before flying home the following morning.

107.    Defendant denies the allegations in Paragraph 107. Defendant avers that BFC purchased the domain name <KrisKarson.com>.

108.    Defendant admits that Plaintiff's photographs were subsequently posted on the website. Defendant avers that Plaintiff, like all models, was given permanent access to the website to see the photographs and videos that were posted, and that each model could see every other model's content that was posted as well.

109.    Defendant denies the allegations in Paragraph 109.

110.    Defendant denies the allegations in Paragraph 110.

111.    Defendant denies the allegations in Paragraph 111.

112.    Defendant denies the allegations in Paragraph 112. Defendant avers that all comments posted by users on the website were pre-screened for "vulgar" or inappropriate content, and models would only see the posted comments after such screening. Defendant further avers that all posted comments were publicly available for any users or models to see.

113.    Defendant denies the allegations in Paragraph 113 as it relates to reincorporating the allegations from Paragraph 112 which are denied. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 113.

114.    Defendant denies the allegations in Paragraph 114. Defendant avers that another model, Amanda Zimmerman, noticed Plaintiff's photographs on the website and expressed an interest to photograph on the same day as Plaintiff, and asked Defendant to arrange it. Defendant avers that Defendant made the offer to Plaintiff and her mother, and they agreed to the photoshoot in Florida.

115.    Defendant denies the allegations in Paragraph 115. Defendant avers that it would have been impossible for the models to arrive before Defendant, as Defendant was staying in the house where the photoshoots were being conducted. Defendant further avers that the reason the Plaintiff and Ms. Zimmerman were being photographed on the same day was because Ms. Zimmerman had requested it. Defendant further avers that it was rumored that Ms. Zimmerman and Plaintiff subsequently began a romantic relationship with each other.

116.    Defendant denies the allegations in Paragraph 116.

117.    Defendant denies the allegations in Paragraph 117. Defendant avers that Plaintiff was not present for Defendant's conversation with Ms. Zimmerman regarding a tattoo, which was on a completely different previous day. Defendant further avers that Ms. Zimmerman never asked Defendant's "permission" for a tattoo, and Defendant was in no position to give or deny any such permission.

118.    Defendant denies the allegations in Paragraph 118.

119.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 119.

120.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 120.

121.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 121.

122.    Defendant denies the allegations in Paragraph 122.

123.    Defendant denies the allegations in Paragraph 123.

124.    Defendant denies the allegations in Paragraph 124.

125.    Defendant admits that after Plaintiff turned 18, Defendant photographed Plaintiff on at least once occasion, but denies the remaining allegations in Paragraph 125. Defendant avers that Plaintiff wanted more money and offered to do more erotic (or explicit) work, which BFC did not engage in, so Plaintiff left to pursue such work with others.

126.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 126, but denies any and all unlawful conduct as alleged by Plaintiff.

127.    Defendant denies the allegations in Paragraph 127.

128.    Defendant denies the allegations in Paragraph 128.

129.    Defendant denies the allegations in Paragraph 129.

130.    Defendant denies the allegations in Paragraph 130.

131.    Defendant denies the allegations in Paragraph 131.

132.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 132, but denies any connection between Defendant and Plaintiff's experience of substance abuse.

133.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 133. Defendant avers that subsequent to their working relationship, and with no connection to Defendant, Plaintiff did pornography on multiple websites, including selling content on OnlyFans independently and jointly with Ms. Taylor Compton.

134.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 134. Defendant avers that subsequent to their working relationship, and with no connection to Defendant, Plaintiff did pornography on multiple websites, including selling content on OnlyFans independently and jointly with Ms. Taylor Compton.

135.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 135.

136.    Defendant denies the allegations in Paragraph 136. Defendant avers that no such incident occurred and no such video ever existed.

137.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 137.

138.    Defendant denies the allegations in Paragraph 138. Defendant avers that he did not "exploit" Plaintiff.

139.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 139.

140.    Defendant denies having ever "exploited" Plaintiff or anyone else. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 140.

141.    Defendant admits the allegations in Paragraph 141.

142.    Defendant admits that a particular business was offered for sale, but denies that the individual in question decided not to buy the business. Defendant denies the remaining allegations in Paragraph 142.

143.    Defendant admits the allegations in Paragraph 143.

144.    Defendant denies the allegations in Paragraph 144, including that the article "focused heavily on" Defendant or that a woman reported that Defendant bought her a sex toy at 17. Defendant avers that the content of the article speaks for itself, and denies any mischaracterization by Plaintiff of same.

145.    Defendant denies the allegations in Paragraph 145.

146.    Defendant denies the allegations in Paragraph 146.

147.    Defendant denies the allegations in Paragraph 147.

148.    Defendant denies the allegations in Paragraph 148. Defendant avers that BFC purchased the referenced domain name <teenstarlet.com>.

149.    Defendant denies that he personally owned and operated the websites, but admits the remaining allegations in Paragraph 149.

150.    Defendant denies the allegations in Paragraph 150.

151.    Defendant denies that Defendant personally needed to approve models, and avers that other individuals in BFC would also need to give input and approval. Defendant admits that BFC sometimes had models fly to other states for photoshoots, but mostly to Florida since that is where most of the models and photographers lived. Defendant further avers that the vast majority of the time, BFC preferred to photograph the models close to their home location.

152.    Defendant denies the allegations in Paragraph 152. Defendant avers that any trips for the photoshoots were proposed as a matter of efficiency for the particular photoshoot.

153.    Defendant denies that he was the owner of the website, and avers that BFC owned the Teen Starlet website. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 153.

154.    Defendant denies that he was the owner of the website, and avers that BFC owned the Teen Starlet website. Defendant denies that he would personally publish any content, and avers that BFC editors would select, edit, create a title for and publish the content. Defendant denies that any sexually explicit content was shot for Plaintiff or any other model under the age of 18. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 154.

155.    Defendant denies the allegations in Paragraph 155.

156.    Defendant denies that he was the owner of the website, and avers that BFC owned the Teen Starlet website. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 156, including its reference to the content sets in Paragraph 154.

157.    Defendant denies the allegations in Paragraph 157.

158.    Defendant denies the allegations in Paragraph 158.

159.    Defendant denies the allegations in Paragraph 159.

160.    Defendant denies the allegations in Paragraph 160. Defendant avers that BFC purchased the referenced domain name.

161.    Defendant denies the allegations in Paragraph 161.

162.    Defendant denies the allegations in Paragraph 162.

163.    Defendant denies the allegations in Paragraph 163.

164.    Defendant denies the allegations in Paragraph 164.

165.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 165.

166.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 166.

167.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 167.

168.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 168.

169.    Defendant denies the allegations in Paragraph 169.

170.    Defendant denies the allegations in Paragraph 170.

171.    Defendant re-alleges and incorporates herein by reference its responses to Paragraphs 1-170 above, inclusive, as though fully set forth herein.

172.    Defendant denies the allegations in Paragraph 172.

173.    Defendant denies the allegations in Paragraph 173.

174.    Defendant denies the allegations in Paragraph 174.

175.    Defendant denies the allegations in Paragraph 175.

176.    Defendant denies the allegations in Paragraph 176.

177.    Defendant denies the allegations in Paragraph 177.

178.    Defendant denies the allegations in Paragraph 178.

179.    Defendant denies the allegations in Paragraph 179.

180.    Paragraph 180 contains legal arguments that do not require a response. To the extent a response is required, Defendant denies the allegations in Paragraph 180.

181.    Defendant denies the allegations in Paragraph 181.

182.    Defendant denies the allegations in Paragraph 182.

183.    Defendant denies the allegations in Paragraph 183.

184.    Defendant denies the allegations in Paragraph 184.

185.    Defendant denies the allegations in Paragraph 185.

186.    Defendant denies the allegations in Paragraph 186.

187.    Defendant denies the allegations in Paragraph 187.

188.    Defendant denies the allegations in Paragraph 188.

189.    Defendant re-alleges and incorporates herein by reference its responses to Paragraphs 1-188 above, inclusive, as though fully set forth herein.

190.    Defendant denies the allegations in Paragraph 190.

191.    Defendant denies the allegations in Paragraph 191.

192.    Defendant denies the allegations in Paragraph 192.

193.    Defendant denies the allegations in Paragraph 193.

194.    Defendant denies the allegations in Paragraph 194.

195.    Defendant denies the allegations in Paragraph 195.

196.    Defendant re-alleges and incorporates herein by reference its responses to Paragraphs 1-195 above, inclusive, as though fully set forth herein.

197.    Defendant denies the allegations in Paragraph 197.

198.    Defendant denies the allegations in Paragraph 198.

199.    Defendant denies the allegations in Paragraph 199.

200.    Defendant denies the allegations in Paragraph 200.

201.    Defendant denies the allegations in Paragraph 201.

202.    Defendant denies the allegations in Paragraph 202.

203.    Defendant denies the allegations in Paragraph 203.

204.    Defendant denies the allegations in Paragraph 204.

205.    Defendant denies the allegations in Paragraph 205.

206.    Defendant denies the allegations in Paragraph 206.

207.    Defendant denies the allegations in Paragraph 207.

208.    Defendant re-alleges and incorporates herein by reference its responses to Paragraphs 1-207 above, inclusive, as though fully set forth herein.

209.    Defendant denies the allegations in Paragraph 209.

210.    Defendant denies the allegations in Paragraph 210.

211.    Defendant denies the allegations in Paragraph 211.

212.    Defendant denies the allegations in Paragraph 212.

213.    Defendant denies the allegations in Paragraph 213.

214.    Defendant denies the allegations in Paragraph 214.

215.    Defendant denies the allegations in Paragraph 215.

216.    Defendant denies the allegations in Paragraph 216.

217.    Defendant re-alleges and incorporates herein by reference its responses to Paragraphs 1-216 above, inclusive, as though fully set forth herein.

218.    Defendant denies the allegations in Paragraph 218.

219.    Defendant denies the allegations in Paragraph 219.

220.    Defendant denies the allegations in Paragraph 220.

221.    Defendant re-alleges and incorporates herein by reference its responses to Paragraphs 1-220 above, inclusive, as though fully set forth herein.

222.    Defendant denies the allegations in Paragraph 222.

223.    Defendant denies the allegations in Paragraph 223.

224.    Defendant re-alleges and incorporates herein by reference its responses to Paragraphs 1-223 above, inclusive, as though fully set forth herein.

225.    Defendant denies the allegations in Paragraph 225.

226.    Defendant denies the allegations in Paragraph 226.

227.    Defendant denies the allegations in Paragraph 227.

The remainder of Plaintiff's Complaint constitutes Plaintiff's request for relief to which no response is required. To the extent a response is required, Defendant denies that Plaintiff is entitled to the relief sought. All allegations that have not been specifically admitted or alleged are hereby denied.

## AFFIRMATIVE DEFENSES

Defendant does not presently know all of the facts and circumstances relating to Plaintiff's claims, and reserves the right to amend this Answer and affirmative defenses. Subject to the foregoing, and without waiving or excusing Plaintiff's burden of proof, or admitting that any of the following are in fact defenses upon which Defendant has any burden of proof as

opposed to denials of matters as to which Plaintiff has the burden of proof, or that Defendant has any burden of proof at all, Defendant hereby asserts the following affirmative defenses.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

Plaintiff's First Amended Complaint, in whole or in part, fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

### (No Private Right of Action)

To the extent Plaintiff asserts claims under criminal statutes that do not supply a private civil remedy (or are not within the scope of the civil-remedy statute being invoked), those claims are barred as a matter of law.

## THIRD AFFIRMATIVE DEFENSE

### (Statute of Limitations)

One or more of Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations, statutes of repose, and/or other time-based limitations on liability and recovery.

## FOURTH AFFIRMATIVE DEFENSE

### (Lack of Causation / Proximate Cause)

Plaintiff's alleged injuries and damages were not caused by Defendant, were not proximately caused by Defendant, and/or were caused in whole or in part by independent, intervening, or superseding acts or omissions of third parties, and any recovery must be limited accordingly.

## FIFTH AFFIRMATIVE DEFENSE

### (Failure to Plead and Prove Required Statutory Elements)

Plaintiff cannot establish the required elements for one or more statutory claims and therefore recovery is barred.

## SIXTH AFFIRMATIVE DEFENSE

### (Lack of Requisite Scienter / Intent)

Plaintiff cannot establish the required mental states for her claims, and Defendant did not act with any such mental state.

## SEVENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

Plaintiff failed to take reasonable steps to mitigate her alleged damages, and any recovery must be reduced accordingly.

## EIGHTH AFFIRMATIVE DEFENSE

### (No Duplicative Recovery)

Plaintiff is not entitled to duplicative recovery of damages, penalties, statutory damages, or other relief for the same alleged injuries or conduct, and any recovery must be limited to the extent necessary to prevent duplication.

## COUNTERCLAIMS

Defendant and Counterclaimant James Lidestri (hereafter "Counterclaimant") asserts counterclaims against Plaintiff and Counterclaim-Defendant Audrey Burns (hereafter "Counterclaim-Defendant"), and alleges as follows:

1.      This defamation, libel and slander counterclaim is brought in response to the malicious campaign of public lies Counterclaim-Defendant engaged in through a series of conversations with reporters for the New York Times (the "Times"), which ultimately led to

Counterclaim-Defendant knowingly and intentionally causing and allowing these vicious lies about Counterclaimant to be published in the Times in a devastating investigative journalism article that was published across the Times' multiple print and internet platforms and widely promoted to its users and viewers alike.

2.      In sum and substance, Counterclaim-Defendant falsely claimed that when she was a child, Counterclaimant sexually assaulted her and paid her off, knowing that what she was saying was completely and totally false, and with the full intention of destroying his good name.

3.      Counterclaimant brings this counterclaim to hold Counterclaim-Defendant accountable for making the vicious false statement to millions of people that he sexually assaulted her and paid her off when she was a child.

## PARTIES, JURISDICTION, AND VENUE

4.      Counterclaimant is an individual citizen of the State of New York, as he is both domiciled in Dutchess County in the State of New York within the meaning of 28 U.S.C. § 1332 and has demonstrated through his actions that he intends to remain in the State of New York.

5.      Counterclaim-Defendant is an individual citizen of the State of Oklahoma, as she is both domiciled in the City of Moore, State of Oklahoma within the meaning of 28 U.S.C. § 1332 and has demonstrated through her actions that she intends to remain in the State of Oklahoma.

6.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

7.      In addition, and in the alternative to the foregoing, this Court has subject matter jurisdiction over the counterclaims pursuant to 28 U.S.C. § 1367, including because the

counterclaims form part of the same case or controversy as Counterclaim-Defendant's claims, and arise from the same nucleus of operative facts and related events alleged in the Counterclaim-Defendant's First Amended Complaint.

8.      This Court has personal jurisdiction over Counterclaim-Defendant with respect to this counterclaim because Counterclaim-Defendant voluntarily commenced this action in this District, and thereby availed herself of this forum and consented to this Court's exercise of personal jurisdiction for purposes of adjudicating Counterclaimant's counterclaims, including counterclaims arising out of the same case or controversy and/or otherwise properly asserted under Federal Rule of Civil Procedure 13.

9.      In the alternative, and to the extent required, this Court has personal jurisdiction over Counterclaim-Defendant because Counterclaim-Defendant's forum-directed conduct and litigation-related acts in this District give rise to, or are sufficiently related to, the counterclaims asserted herein.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because (a) a substantial part of the events or omissions giving rise to Counterclaimant's counterclaim occurred in this District, and (b) Counterclaim-Defendant chose this District as the forum for its lawsuit, and the counterclaim is properly asserted in this action.

11.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391(c) because Counterclaim-Defendant is subject to this Court's personal jurisdiction in this District (including by consent through filing this action), and thus resides in this District for venue purposes.

## **JURY DEMAND**

12.     Counterclaimant demands a trial by jury in this action on each and every part of his counterclaim.

## STATEMENT OF FACTS

13.    Counterclaimant is a moderately successful businessman and consultant who has been engaged in a number of technology and media ventures throughout his career.

14.    Only one of the companies he has worked for in a senior capacity has been publicly traded; he left that company nearly 25 years ago.

15.    Counterclaimant's Linkedin profile has slightly more than 1,000 connections.

16.    Counterclaimant does not make media appearances and is not sought after for comment on any industry topics for publication.

17.    No trade show organizers or technology conferences have had Counterclaimant speak at their events because of his knowledge, experience or position in any industry.

18.    Counterclaimant is not well known in the technology sector, or any other sector, and he has made no effort to increase his profile.

19.    Other than through this litigation and the incidental mention of his name in two articles in the *New York Times*, he is not known in connection with any particular cause or controversy, and he has not invited further public scrutiny or attention.

20.    Beginning in approximately 2001, as a side gig, Counterclaimant became involved in the glamour photography business, initially shooting nude photographs of adult female models and building websites for some of those models so that they could monetize their photos and videos.

21.    These websites were called subscription sites, whereby a viewer would pay a fee by credit card to access the photo and video content contained within.

22.    Counterclaimant was involved in photo shoots for around forty models over approximately four years in that business without a single complaint about his behavior.

23.     Counterclaimant established a corporation for this business venture, which was the same corporation he used throughout his photography and website business, including during all of the interactions with the Counterclaim-Defendant.

24.     That corporation was registered to a business address in Dutchess County, State of New York.

25.     That corporation did all of its business banking with a Wells Fargo bank in Dutchess County in the State of New York, and all payments made to Defendant, among others, whether by cash or check, or any other form of payment, were made through that bank.

26.     In approximately 2008, Counterclaimant was contacted by the mother of a model who was under the age of 18 who also wanted him to conduct photoshoots and build a website for her daughter.

27.     The mother and model were living in Florida and said they had acquaintances who would also be interested in a similar arrangement.

28.     Counterclaimant agreed to do the photoshoots and have his company build the websites for the initial model and any interested acquaintances, but only under certain conditions, which were included in a contract that the model, the model's parent or guardian (if the model was under 18) and Counterclaimant would sign before any photos were taken, including the following:

a.  All financial compensation arrangements would be placed clearly in writing;

b.  A release authorizing the company to host the pictures on the website would be executed;

c.  For models under the age of 18, a parent or guardian would need to be present at the photoshoot at all times;

d.  The poses and attire would need to be agreed to by the guardian (if the model was under 18) prior to the photoshoot; and

e.   All laws regarding the photography of a minor would be adhered to.

29.     All of the company websites were hosted on servers in the United States and used credit card processors based in the United States. They were not accessible via the "dark web" or hidden from the public—every site the company built was accessible to anyone 18 or older who held a valid credit card.

30.     Each model and parent were given login credentials to access the subscription websites so that they could see the entire collection of photos and videos of every model.

31.     The website had a comment moderation feature built into the site so that the models would be shielded from inappropriate or hostile user comments. Comments from subscribers to the models were moderated first by someone on the company's staff and in the cases in which the subscriber made an inappropriate comment, the company would delete the comment and issue a warning, and in the more egregious situations the subscribers were banned from the site.

32.     The models would never receive communications from users on their personal devices--all comments between subscribers and the models were done publically on the website, with no personal contact information shared.

33.     During the entire duration of this venture, no parent, model or any other party ever lodged a complaint about any aspect of this business other than Counterclaim-Defendant.

**Introduction to Counterclaim-Defendant**

34.     Prior to his introduction to Counterclaim-Defendant, the website had been operating for approximately three years, with at least 20 models on the site at that time.

35.     The vast majority of models on the site were between 16 and 21 years old, but a few were 15 years old.

36.     There was no requirement that a model be 16 years old in order for photos to be posted on the site.

37.     Counterclaimant became acquainted with Counterclaim-Defendant when she was 16 years old in late 2012 or early 2013 through a Dallas-based photographer who had previously photographed her. Counterclaimant had no contact with Counterclaim-Defendant prior to the age of 16.

38.     Counterclaim-Defendant and her mother expressed interest in being added to Counterclaimant's company's website, so the Dallas photographer, Counterclaim-Defendant, and her mother agreed to license some photos to put on the company's website to introduce Counterclaim-Defendant to the website members.

39.     The first payment to Counterclaim-Defendant was when Counterclaimant's company purchased three sets of photos which appeared on the website when Counterclaim-Defendant was over 16 years old.

40.     At around that same time, Counterclaim-Defendant and her mother made plans to have her first photoshoot with Counterclaimant in New York, since she was living in Oklahoma and had never been to New York.

41.     Counterclaimant adhered to the rules outlined above and never asked Counterclaim-Defendant to come to New York on her own.

**First Photoshoot with Counterclaim-Defendant – April 2013**

42.     The first photoshoot with Counterclaim-Defendant was on April 19 and 20, 2013, within one month after releasing the three sets of photos taken by her photographer, when Counterclaim-Defendant was 16 years old.

43.     Prior to starting the photoshoot, while in the Dutchess County studio, Counterclaim-Defendant and her mother signed the contract and approved of all the attire to be worn throughout the day, as required.

44.     Counterclaim-Defendant' mother was present for both days and was free to be in the studio whenever she wanted to while the photoshoot was being conducted.

45.     No alcohol or drugs of any kind were provided to Counterclaim-Defendant or her mother.

46.     There was no inappropriate physical contact between Counterclaimant and Counterclaim-Defendant at any time, at the photo shoot or on any other date.

47.     Counterclaimant never touched the intimate parts of Counterclaim-Defendant' body with his hands, at the photo shoot or on any other date.

48.     Counterclaimant never touched the intimate parts of Counterclaim-Defendant' body with his mouth, at the photo shoot or on any other date.

49.     Indeed, no intimate part of Counterclaimant's body ever came into contact with any intimate part of Counterclaim-Defendant' body at the photo shoot or on any other date.

50.     Counterclaimant never sexually assaulted Counterclaim-Defendant, at the photo shoot or on any other date.

51.     The photoshoot went very well and Counterclaim-Defendant and her mother were both extremely happy, and they both exclaimed that they could not wait to do another photoshoot.

52.     On Sunday, April 21, Counterclaimant drove them both to Manhattan and gave them a tour.

53.    Counterclaim-Defendant was especially interested in seeing Times Square and in doing some shopping, so Counterclaimant accommodated them at the company's expense, paying for everything, including at the Juicy Couture store so she could buy some personal clothing.

54.    Counterclaimant reserved a hotel room for Sunday night at the Crowne Plaza Times Square Manhattan for Counterclaim-Defendant and her mother, so that they could get to the airport and return home on Monday while Counterclaimant returned home Sunday night.

55.    Counterclaimant flew to California the next morning.

**Second Photoshoot with Counterclaim-Defendant**

56.    Counterclaim-Defendant and her mother were so happy with the first photoshoot that they enthusiastically invited Counterclaimant to their home area in Oklahoma to conduct a second photoshoot within weeks of the first one.

57.    They suggested the Choctaw Casino and Resort Hotel as the venue, and it was scheduled for Sunday, June 2, 2013.

58.    The shoot was very successful and both Counterclaim-Defendant and her mother were very happy with the results.

59.    So as to avoid confusion, here as well, no alcohol or drugs of any kind were provided to Counterclaim-Defendant or her mother.

60.    There was no inappropriate physical contact between Counterclaimant and Counterclaim-Defendant at any time, at the photo shoot or on any other date.

61.    Counterclaimant never touched the intimate parts of Counterclaim-Defendant' body with his hands, at the photo shoot or on any other date.

62.     No intimate part of Counterclaimant's body ever came into contact with any intimate part of Counterclaim-Defendant' body at the photo shoot or on any other date.

63.     Counterclaimant never touched the intimate parts of Counterclaim-Defendant' body with his mouth, at that photo shoot or on any other date.

64.     Counterclaimant never sexually assaulted Counterclaim-Defendant, at that photo shoot or on any other date.

65.     Additional photoshoots followed thereafter.

**Final Photoshoot with Counterclaim-Defendant**

66.     The final photoshoot with Counterclaim-Defendant was in July 2014, shortly after she turned 18.

67.     At that photoshoot, Amanda Zimmerman was going to be a second model to be photographed at the same location.

68.     Ms. Zimmerman and Counterclaim-Defendant arrived very late to the shoot, keeping two photographers and a makeup artist waiting.

69.     Counterclaimant later found out that they had gone out drinking the night before and were hung over.

70.     During that shoot, Ms. Zimmerman told Counterclaimant that she wanted to take some pictures with Counterclaim-Defendant, which they did at the end of the photoshoot. Counterclaimant and his staff gave them copies of the photos.

71.     The photos were not nude and were only taken at Ms. Zimmerman's request.

**Ongoing Business Relationship with Counterclaim-Defendant**

72.     Counterclaimant's company continued to publish Counterclaim-Defendant' photos and videos on its website for years after the photoshoots.

73.     Counterclaimant's company continued to pay Counterclaim-Defendant her portion of the profits as per her contract after the photoshoots as well.

74.     Each of those transactions originated in New York State, and were paid through the same Wells Fargo Bank in Dutchess County.

**The New York Times Investigation and Article**

75.     Between December 24, 2024 and December 28, 2024, two reporters from the *New York Times*, Jennifer Valentino-DeVries and Michael H. Keller, contacted Counterclaimant and his attorneys to discuss allegations made by Counterclaim-Defendant that were to be part of a forthcoming article.

76.     Counterclaimant was not even going to be the focus of that article; it was instead focused on men who use Instagram to develop grooming relationships with child models.

77.     As part of that article, however, the reporters spoke with earlier online models, one of whom was Counterclaim-Defendant, who had suffered from years of emotional and mental issues and substance abuse.

78.     The reporters then contacted Counterclaimant for a response to Counterclaim-Defendant' false allegations.

79.     In the December 30, 2024, article, Counterclaim-Defendant was depicted in the article in the photo and caption below:



Audrey Burns said she was sexually assaulted as a minor after she traveled for a photo shoot.  Desiree Rios for The New York Times

80.    Counterclaimant and his attorneys had multiple conversations with the *Times* reporters in the five days leading up to the publication of the Article. The reporters revealed that Counterclaim-Defendant had met and/or spoken with the *Times* reporters about her interactions with Counterclaimant. Among Counterclaim-Defendant' statements to the *Times* reporters were the following:

a. Counterclaim-Defendant said that when she was 16 years old, she traveled to New York with her mother and they went to Counterclaimant's house for a photo shoot.

b. That Counterclaim-Defendant was alone in Counterclaimant's house with him, without her mother present.

c. While there, Counterclaimant gave her a drink which left her feeling strange, after which he sexually assaulted her with his hands and mouth.

d. He then provided her more money than what had previously been arranged for the photo shoot.

e. Counterclaim-Defendant allegedly provided a photo to the reporters purportedly showing at least $1,000 in cash from that trip as alleged proof of her story.

f. She allegedly posted photos of her trip to Facebook.

81.    The portion of Counterclaim-Defendant' statements that were published in the *New York Times* article (the "Article") were as follows:

> ***Another woman, Audrey Burns, now 28, said Mr. Lidestri sexually assaulted her when she visited him in New York for a photo shoot***. At the time, she said, her life was chaotic, and she had lived for a while with her mother in a shelter in Oklahoma.
>
> She started working for Mr. Lidestri when she was 14, she recalled, and later traveled to New York with her mother. Photos she shared on Facebook from the trip included separate images of Mr. Lidestri and at least 10 $100 bills. They were posted in April 2013, when she was 16.

***Mr. Lidestri offered her money beyond what she had been paid for the photo shoot, Ms. Burns said. He then sexually assaulted her with his hands and mouth, she said. "He asked if I wanted to stop, and I couldn't speak," she said. "I was catatonic."***

……………….

All three women said they remained quiet when younger because they felt powerless, because they needed the money or because Mr. Lidestri said they or their parents could get in trouble.

[Emphasis added.]

82.    In sum and substance, Counterclaim-Defendant falsely claimed to the world, using the megaphone of the *New York Times*, that when she was a child, Counterclaimant sexually assaulted her and paid her off, knowing that what she was saying was completely and totally false, and with the full intention of destroying his good name.

83.    As detailed above, Counterclaimant did none of these things.

84.    Counterclaimant did not sexually assault Counterclaim-Defendant in any way.

85.    Counterclaimant did not offer or give Counterclaim-Defendant more money than she was to earn for the photoshoot.

86.    Counterclaimant did not "ask if [Counterclaim-Defendant] wanted to stop."

87.    Counterclaim-Defendant was not "catatonic" in any way.

88.    On December 30, 2024, on her public Facebook profile, which was accessible to anyone who chose to visit it[1], Counterclaim-Defendant posted the below post (the "Facebook Post"), further amplifying the Article and her lies contained therein:

---

[1] https://www.facebook.com/profile.php?id=61567917177972.

**Audrey Burns**
December 30, 2024 · 🌐

···

Here it is!



NYTIMES.COM

**The Men Who Use Instagram to Groom Child Influencers**

Photographers and other men offer to build online followings for young girls, but some are pedo...

😮👍❤️ 11                                                                 6 comments

👍 Like          💬 Comment          📞 Send          ↪ Share

All comments ▾

**Tara Miller**
- So proud of you. We love you. We stand with you.  ⚪  this took a lot of courage to speak out against.

4w   Like   Reply                                                        2 👤😆

**Ruby Bowles**
So proud of you sweetheart

4w   Like   Reply        😘

**Cheryl Shelley**
You are so brave to speak out. You will help alot of people with this. We love you!

4w   Like   Reply                                                        😘

**Aaron Shelley** · Follow
I'm so sorry this happened to you. You are so brave to share your story!

4w   Like   Reply                                                😘

**DL Halpain**
Good to see you clean, healthy and happy 💯 took alot of strength to speak out about this !

89.     The Facebook post was posted with a caption reading "Here it is!"

90.     The Facebook post linked to the Article, including a preview with the Article's title visible.

## FIRST CLAIM FOR RELIEF
### (Defamation)

91.     Counterclaimant re-alleges and incorporates paragraphs 1-90 of his counterclaims herein.

92.     Counterclaim-Defendant published or caused to be published false and defamatory statements in the *Times*, which did and had the tendency to expose Counterclaimant to hatred, contempt, ridicule and/or disgrace.

93.     Counterclaim-Defendant amplified her defamatory statements in the Article by republishing and linking to the Article in the Facebook Post.

94.     The defamatory statements in the Article are of and concerning Counterclaimant, and reasonably understood to be about Counterclaimant, having identified Counterclaimant by name.

95.     The defamatory statements in the Article are false, including the statements that Counterclaimant sexually assaulted Counterclaim-Defendant; that Counterclaim-Defendant asked whether she wanted to stop; that Counterclaim-Defendant was in a "catatonic" state; that Counterclaim-Defendant began working for Counterclaimant when she was fourteen years old; and that Counterclaimant offered her additional compensation beyond what she had been paid for the photoshoot.

96.     Counterclaim-Defendant caused the defamatory statements in the Article to be published knowing that they are false or with reckless disregard for the truth of the statements.

97.     Counterclaim-Defendant provided the *Times* with materially false and internally inconsistent timelines concerning the timing and circumstances of the parties' first New York photoshoot. Counterclaim-Defendant also repeated those false timelines in subsequent litigation filings. The advancement and repetition of demonstrably inaccurate timelines concerning core events supports a plausible inference that Counterclaim-Defendant knew her accusations were false.

98.     Counterclaim-Defendant further advanced a false chronology by presenting a cash-and-shopping image as purported corroboration of events that she claimed occurred before the first photoshoot, when in fact the image was taken after sightseeing and shopping at the end of the relevant weekend. Counterclaim-Defendant's use of that image to promote a false sequence of events further supports an inference of knowing falsity or reckless disregard.

99.     Counterclaim-Defendant omitted from her public accusations that she and her mother invited Counterclaimant to conduct a second photoshoot approximately six weeks after the first, which was scheduled for a date shortly thereafter. That omission is inconsistent with Counterclaim-Defendant's narrative that she feared Counterclaimant or sought to avoid him after the first trip, and it supports an inference that Counterclaim-Defendant knowingly advanced a misleading account.

100.    Counterclaim-Defendant also advanced materially false statements concerning when Counterclaimant first knew, contacted, or began working with her, including by asserting that Counterclaimant knew her when she was substantially younger than the timeframe reflected by contemporaneous records and the parties' dealings. This false age-based narrative bears directly on Counterclaim-Defendant's knowledge of falsity.

101.    Counterclaim-Defendant further falsely claimed that she was alone with Counterclaimant during the New York photoshoot and that her mother was effectively excluded. Counterclaim-Defendant's advancement of those claims, despite the presence and involvement of her mother and other circumstances that contradict her account, supports an inference of knowing falsity.

102.    After publication of the Article, Counterclaim-Defendant republished and amplified the defamatory accusations through her own public social media, including through the Facebook Post. Counterclaim-Defendant's affirmative dissemination of the accusations following publication further supports an inference that she intended to maximize the harm caused by statements she knew to be false.

103.    The defamatory statements in the Article constitute defamation per se because they tended to injure Counterclaimant in his trade, business or profession and directly implicated Counterclaimant in a horrific crime; specifically, that he sexually assaulted a child and then paid her off.

104.    In light of Counterclaimant's standing in the community, the nature of the statements made about him, the extent to which those statements were circulated, and the tendency of such statements to injure someone such as Counterclaimant, the defamatory statements in the Article have directly and proximately caused Counterclaimant to suffer significant damages, including damage to his reputation, humiliation, embarrassment, mental suffering, shame and emotional distress.

105.    These damages are ongoing in nature and will continue to be suffered in the future.

106.    The re-publication of the defamatory statements in the Article in other publications, as well as via the dissemination of the Article through social media, including through Counterclaim-Defendant's own Facebook page and in the Facebook Post, caused Counterclaimant to suffer additional damages, all of which were foreseeable to Counterclaim-Defendant.

107.    Counterclaim-Defendant' conduct was committed knowingly, intentionally, willfully, wantonly and maliciously, with the intent to harm Counterclaimant, or in blatant disregard of the substantial likelihood of causing him harm, thereby entitling Counterclaimant to an award of punitive damages.

108.    As a direct and proximate result of Counterclaim-Defendant' misconduct, Counterclaimant is entitled to compensatory, special and punitive damages in an amount to be proven at trial far in excess of $75,000.00.

## PRAYER FOR RELIEF

**WHEREFORE,** Counterclaimant demands judgment against Counter-Defendant, Audrey Burns, as follows:

i.    An award of compensatory, special and punitive damages, as allowed by law, in amounts to be established at trial as to the claim of defamation in excess of $75,000;

ii.    An award of Counterclaimant's reasonable costs associated with this action, including but not limited to reasonable attorneys' fees and expenses, as allowed by law; and

iii.    An award of prejudgment interest and post-judgment interest on all monetary awards, at the highest rate permitted by law, from the date the injury occurred until the date of payment of the judgment.

iv.    Such other and further relief as the Court deems just and proper to protect

Counterclaimant's rights and interests.

Dated: December 29, 2025                    Respectfully Submitted:
      Brooklyn, New York

                            **LEWIS & LIN LLC**

                      By: */s/ David D. Lin*
                            David D. Lin, Esq.
                            77 Sands Street, 6th Floor
                            Brooklyn, New York, 11201
                            Tel: (347) 414-8535
                            Fax (718) 243-9326
                            David@iLawco.com
                            *Attorneys for Defendant / Counterclaimant*