UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AUDREY BURNS,

               Plaintiff,

      -against-

JAMES LIDESTRI,

          Defendant.

Case No.: 25-cv-07474

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM

VERIDIAN LEGAL P.C.

Daniel S. Szalkiewicz, Esq.
Cali P. Madia, Esq.
23 West 73rd Street, Suite 102
New York, NY 10023
(212) 706-1007
daniel@veridianlegal.com
*Attorneys for Plaintiff*

## Table of Contents

Table of Authorities ............................................................................................................ 3

PRELIMINARY STATEMENT ........................................................................................ 5

STATEMENT OF FACTS AS ALLEGED IN THE COMPLAINT ............................. 6

ARGUMENT ...................................................................................................................... 7

    **A.    The Statements Are Not Pleaded with Particularity and Contain Fabricated Statements** ................................................................................................................. 8

    **B.    The Allegedly Defamatory Statements Are Not Published or Authored By Plaintiff** 9

    **C.    The Allegedly Defamatory Statements Do Not Assert Plaintiff Claimed Lidestri Raped Her** ............................................................................................................... 9

    **D.    Defendant's Silence Leads to Pleading Deficiencies** .................................... 11

    **E.    Many of the Statements are Not Capable of a Defamatory Meaning, Not Concerning Defendant, and are True** ...................................................................... 11

    **F.    The Statements Are Nonactionable because Defendant is a Public Figure and the Complaint Fails to Adequately Allege Malice.** ...................................................... 14

        **1.    Defendant is a Public Figure.** ...................................................................... 15

        **2.    Defendant has not Plausibly Alleged Malice.** ............................................. 17

    **G.    New York anti-SLAPP Law Mandates Dismissal.** ...................................... 18

    **H.    The Amended Complaint Should be Dismissed for Lack of Jurisdiction over Plaintiff** ................................................................................................................... 19

        **1.    Defendant Fails to Obtain Jurisdiction over Plaintiff  Pursuant to CPLR 302(a)(1)** 20

        **2.    Defendant Has Not Alleged Plaintiff Was Present in New York to Establish Jurisdiction Pursuant to CPLR 302(a)(2)** .......................................................... 21

        **3.    Plaintiff Does not Derive Substantial Revenue from New York** ........................... 21

CONCLUSION ................................................................................................................. 23

## Table of Authorities

**Cases**

1st Amendment Praetorian v. N.Y. Times Co., No. 1:23-cv-00012 (MKV), 2025 U.S. Dist. LEXIS 59133, at *19 (S.D.N.Y. Mar. 28, 2025) ...................................................... 23

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)............................................................................. 7

Bell v Alden Owners, Inc., 299 AD2d 207, 209 (1st Dept 2002) ......................................... 13

Best Van Lines, Inc. v Walker, 490 F.3d 239, 244 (2d Cir 2007) .......................................... 25

Biro v. Condé Nast, 807 F.3d 541, 544, aff'd 622 F. App'x 67 (2d Cir. 2015) .................. 20, 22

Black v Phoenix Cayman Ltd., 224 AD3d 494, 494 (1st Dept 2024) ..................................... 25

Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 511 n.30 (1984) ..................... 20

Brimelow v. N.Y. Times Co., No. 21-66-cv, 2021 U.S. App. LEXIS 31672, at *3 (2d Cir. Oct. 21, 2021) ............................................................................................................................. 14

Catania v Liriano, 2021 NY Slip Op 34027[U] [Sup Ct, Bronx County 2021] ..................... 22

Coleman v Grand, 523 F Supp 3d 244, 255 (EDNY 2021)..................................................... 20

Curtis Publ'g Co. v. Butts, 388 U.S. 130, 153 (1967) ........................................................... 19

Dellaportas v. Shahin, 2024 U.S. Dist. LEXIS 141096, at *19 (S.D.N.Y. Aug. 7, 2024)............. 9

English v Avon Prods., Inc., 206 AD3d 404, 406 [1st Dept 2022] ........................................ 25

Farber v Jefferys, 103 AD3d 514, 515 (1st Dept 2013).......................................................... 21

Fischer v. Stiglitz, No. 15-CV-6266 (AJN), 2016 U.S. Dist. LEXIS 74842, at *6 (S.D.N.Y. June 8, 2016) ............................................................................................................................... 24

Francis v. Kings Park Manor, Inc., 992 F.3d 67, 70 (2d Cir. 2021) ...................................... 11

Friedman v. Self Help Cmty. Servs., No. 11-CV-3210 (NGG) (JMA), 2015 U.S. Dist. LEXIS 32872, at *8 (E.D.N.Y. Mar. 17, 2015) ........................................................................... 11

Geddes v Princess Properties Intern., Ltd., 88 AD2d 835 [1st Dept 1982] ......................... 13

Gertz v. Robert Welch, Inc., 418 U.S. 323, 333–34 (1974) ............................................. 19, 22

Gill v. Giuliani, No. 23cv4087 (DLC), 2024 U.S. Dist. LEXIS 212208, at *12 (S.D.N.Y. Nov. 21, 2024) ............................................................................................................................... 9

Goldblatt v. Seaman, 225 A.D.2d 585, 586 (2d Dep't 1996) ................................................. 22

Gottwald v Sebert, 40 NY3d 240, 251-252 (2023).................................................................. 21

Jacobus v Trump, 55 Misc 3d 470, 474 [Sup Ct 2017], affd, 156 AD3d 452 [1st Dept 2017].... 17

James v. Flynn, 132 A.D.3d 1214, 1216 (App. Div. 3rd Dept. 2015) ..................................... 10

Kesner v Dow Jones & Co., 515 F Supp 3d 149, 166 (SDNY 2021)......................................... 8

Kingstown Capital Mgt. L.P. v CPI Prop. Group, S.A., 205 AD3d 467, 468 (1st Dept 2022) .... 26

Kinsey v The NY Times Co., 991 F3d 171, 174 (2d Cir 2021)................................................... 8

McCollum v. Baldwin, 688 F. Supp. 3d 117, 133 (S.D.N.Y. 2023)......................................... 10

N.Y. Times Co. v. Sullivan, 376 U.S. 254, 279–80 (1964) ..................................................... 19

Palka v. Servicemaster Mgmt. Servs. Corp., 83 N.Y.2d 579, 590 (1994)................................ 12

Prince v The Intercept, 2023 US Dist LEXIS 119974, at *14 (SDNY July 12, 2023, No. 21-CV-10075 [LAP]).................................................................................................................... 22

Reid v. McKelvey, No. 22-CV-10708 (JGLC) (OTW), 2024 U.S. Dist. LEXIS 176975, at *12
  (S.D.N.Y. Sep. 30, 2024)............................................................................................................ 10
Rivera v Capital One Fin. Corp., 2018 NY Slip Op 33045[U], *4 (Sup Ct, NY County 2018] .. 13
Russo v. Iacono, 73 A.D.2d 913, 913 (App. Div. 2nd Dept. 1980)............................................. 10
Santana v. Leith, 117 A.D.3d 711, 712, 985 N.Y.S.2d 147, 149 (App. Div. 2nd Dept.) ............ 10
Satanic Temple, Inc. v. Newsweek Magazine LLC, 661 F. Supp. 3d 159, 166 (S.D.N.Y. 2023) 24
SOS Capital v Recycling Paper Partners of PA, LLC, 220 AD3d 25, 33 (1st Dept 2023) .......... 26
SPCA of Upstate NY, Inc. v Am. Working Collie Assn., 18 NY3d 400, 405 [2012].................. 25
Specht v. City of N.Y., 15 F.4th 594, 606 (2d Cir. 2021)............................................................... 8
St. Amant v. Thompson, 390 U.S. 727, 731 (1968) ............................................................... 20, 23
Taggart v. Costabile, 131 A.D.3d 243, 249 (App. Div. 2nd Dept. 2015)............................. 11, 12
Three Amigos SJL Rest., Inc. v CBS News Inc., 28 NY3d 82, 86 [2016].................................... 17
Trakis v Manhattanville Coll., 51 AD3d 778, 781 (2d Dept 2008) ............................................. 13

**Statutes**
CPLR 302(a)(1) .......................................................................................................................... 25
CPLR 302(a)(2) ..................................................................................................................... 26, 27
N.Y. Civ. Rights Law § 76-a(2).................................................................................................. 23
**Treatises**
Prosser & Keeton, Torts § 12 at 56 (5th ed 1984) ...................................................................... 14

## PRELIMINARY STATEMENT

Defendant-Counterclaimant JAMES LIDESTRI'S ("Lidestri" or "Defendant") Counterclaim (the "Counterclaim") brazenly admits that he photographed girls as young as 15 years old for his websites.  Lidestri's website, and how he "groomed" women into becoming his models, became the subject of two New York Times articles. On November 10, 2024, The New York Times in a piece entitled "She was a Child Instagram Influencer.  Her Fans Were Grown Men." covered the story of a fifteen-year-old girl who was paid $10,000 per month by Lidestri to take bikini photographs for his website "SelectSets[.][1]"  The New York Times describes the photographs contained on SelectSets as those toeing the line of child sex abuse material, with commenters describing the then-fifteen-year-old interviewee as "Submissive and breedable." When contacted by The New York Times, Lidestri seemingly acknowledged his responsibility for the site, with The New York Times writing about their call with him "He said that he was a tech entrepreneur, no longer in the photography business, and had provided information to law enforcement about 'people who weren't playing by the rules.'"

On December 30, 2024, The New York Times ran another, similar piece entitled: "The Men Who Use Instagram to Groom Child Influencers[2]"  In this story three different women disclosed "alleged sexual misconduct by Mr. Lidestri." Id.  One woman – not Plaintiff – indicated that, at seventeen, Lidestri paid her for intimate content "meant only for him" and disclosed their communications and her banking records.  The records detailed that Lidestri "mailed her the sex toy and said he would pay her every month if she sent him explicit content." When she initially declined, he balked, writing "You don't want to make a few hundred dollars?"

---

[1] https://www.nytimes.com/2024/11/10/us/child-influencer.html, and annexed hereto as Exhibit 1.

[2] https://www.nytimes.com/2024/12/30/us/child-influencers-photographers-abuse.html and annexed hereto as Exhibit 2.

and "What are your alternatives?" before the teenager complied.  The New York Times interviewed yet another woman – also not Plaintiff – who, as a sixteen-year-old model, recalled asking Lidestri's permission to get a tattoo and him only allowing it after she posed for him naked. Id.

Lidestri is suing Audrey for defamation. However, as discussed below, the First Amendment and New York law prevents lawsuits from abusers like Lidestri. While truth is an absolute defense to defamation, Lidestri's Counterclaim is deficient and should be dismissed in its entirety.

## STATEMENT OF FACTS AS ALLEGED IN THE COMPLAINT

In 2001, Lidestri began "shooting nude photographs of adult female models" (Counterclaim 20) and then chose instead to start taking photographs of girls "under the age of 18[.]" Counterclaim 26, 28.  Lidestri then posted these photographs on a subscription based website accessible to anyone 18 or older who held a valid credit card. Counterclaim 21.  Prior to meeting Burns, this website had at least 20 "models" ranging between the ages of 15 to 21 years. Counterclaim 35.  However, Lidestri did not discriminate in age, and would post images of girls who were less than 16 years old. Counterclaim 35-36.

In late 2012 or "early 2013" Lidestri learned of Burns and posted some of her photographs on his company's website. Counterclaim 37-38.  According to Lidestri, on April 18, 2013, Burns and her mother flew to New York City to meet Lidestri for a two day photoshoot. Counterclaim 42-43.  During this photoshoot, Lidestri denies having any contact with Burns or sexually assaulting her. Counterclaim 48-51.  Lidestri then took two other photoshoots of Burns

when she was under the age of 18; Lidestri denies any inappropriate touching during these shoots. <u>Counterclaim 61, 63</u>.

Lidestri's Counterclaim offer little in the way of context and even less in the way of denials. Plaintiff's allegedly defamatory statement is contained in paragraph 81 of the Counterclaim. The points relating to Plaintiff include:

- "Mr. Lidestri sexually assaulted her when she visited him in New York for a photo shoot"
- "She started working for Mr. Lidestri when she was 14"
- "Photos she shared on Facebook from the trip included separate images of Mr. Lidestri and at least 10 $100 bills. They were posted in April 2013, when she was 16. Mr. Lidestri offered her money beyond what she had been paid for the photo shoot, Ms. Burns said. He then sexually assaulted her with his hands and mouth, she said. 'He asked if I wanted to stop, and I couldn't speak,' she said. 'I was catatonic.'"
- "All three women said they remained quiet when younger because they felt powerless, because they needed the money or because Mr. Lidestri said they or their parents could get in trouble."

Notably, Defendant admits to the bulk of the statements in the article.

## **ARGUMENT**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). "A complaint is properly dismissed where, as a matter of law, 'the allegations in a complaint, however true, could not raise a claim of entitlement to relief.'" <u>Kesner v Dow Jones & Co.</u>, 515 F Supp 3d 149, 166 (SDNY 2021). For motion to dismiss purposes, the complaint is deemed "to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." <u>Kinsey v The NY Times Co.</u>, 991 F3d 171, 174 (2d Cir 2021). This Court has previously held that there "is particular value in resolving defamation claims at the pleading stage, so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms." <u>Kesner</u>, 515 F Supp 3d, at 166-167.

As detailed below, Defendant has failed to plead a case for defamation because the statements are not pleaded with particularity; Defendant is a public figure and has failed to plead malice; and the court lacks jurisdiction over the claims because Defendant is not a resident of New York and has not transacted business in New York.

### A. The Statements Are Not Pleaded with Particularity and Contain Fabricated Statements

"[D]efamation must be pled with sufficient particularity to withstand a motion to dismiss" Rivera v Capital One Fin. Corp., 2018 NY Slip Op 33045[U], *4 (Sup Ct, NY County 2018)). C.P.L.R. §3016(a) mandates that, in actions to recover damages for defamation, "the particular words complained of shall be set forth in the complaint[.]" Case law has extended the particularity requirement to necessitate that a counterclaimant allege the "time, manner and persons to whom the publication was made." Geddes v Princess Properties Intern., Ltd., 88 AD2d 835 (1st Dept 1982); see also Bell v Alden Owners, Inc., 299 AD2d 207, 209 (1st Dept 2002); Trakis v Manhattanville Coll., 51 AD3d 778, 781 (2d Dept 2008)).

For example, in Bell, the First Department dismissed the action because the complaint alleged statements were made to "certain unspecified individuals, at dates, times and places left unspecified". Bell, 299 AD2d at 208. In Trakis, the Second Department dismissed a slander claim because the plaintiff "failed to set forth in the complaint the allegedly defamatory remarks… [and] [f]urther he never identified who spoke the remarks, or to whom they were published." Trakis, 51 AD3d at 781 [2d Dept 2008]).

Here, a significant portion of the allegedly defamatory statements are not statements but rather descriptions of alleged statements or how they took place. Initially, Defendant's Counterclaim alleges that "Mr. Lidestri did none of these things." Counterclaim 83.

The issue with Lidestri's claims, however, is that he admits to most of the allegations.

Reading the counterclaim, it is unclear what the exact statements that are actually contained within the Article are defamatory and the subject of the lawsuit.  Defendant uses phrases like "[i]n sum and substance" to submit his version of what the article says when in fact the actual words are completely different.

## B. The Allegedly Defamatory Statements Are Not Published or Authored By Plaintiff

The only quote from Plaintiff in the complaint was:

> "He asked if I wanted to stop, and I couldn't speak," she said. "I was catatonic."

Under New York law, a complaint asserting defamation claims must plausibly allege five elements: "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability" <u>Brimelow v. N.Y. Times Co</u>., No. 21-66-cv, 2021 U.S. App. LEXIS 31672, at *3 (2d Cir. Oct. 21, 2021).  Here, the Plaintiff is not the publisher of the statements contained within the Complaint.  The only quoted text is Plaintiff's statement of opinion, that she was unable to speak and catatonic.  To the extent the Defendant attributes the remainder of the statements in the article to Plaintiff, he has not alleged, and is unable to show, she is the individual who published them under the law.

## C. The Allegedly Defamatory Statements Do Not Assert Plaintiff Claimed Lidestri Raped Her

Reading the statements attributed to Plaintiff demonstrates that the words attributed to her do not accuse Defendant of raping her.

> Mr. Lidestri offered her money beyond what she had been paid for the photo shoot, Ms. Burns said. He then sexually assaulted her with his hands and mouth, she said.
> "He asked if I wanted to stop, and I couldn't speak," she said. "I was catatonic."

Nowhere in the Counterclaim is Plaintiff quoted as giving her age when the incident occurred and The New York Times does not specify when this particular sexual act took place.  According to the article, Plaintiff began working for Defendant when she was 14 and "later" traveled to New York for a photoshoot with him.  While the article does make mention of pictures of money and Defendant taken by Plaintiff and posted on her Facebook group when she was 16, it is not clear that this is when the alleged sexual act took place.  Admittedly, Defendant's counterclaim is entirely silent as to whether an act took place and, if it did, when.  Defendant merely states that "Counterclaimant did not sexually assault Counterclaim-Defendant in any way", "Counterclaimant did not offer or give Counterclaim-Defendant more money than she was to earn for the photoshoot",  Counterclaimant did not "ask if [Counterclaim-Defendant] wanted to stop" and "Counterclaim-Defendant was not 'catatonic' in any way".  It is unclear who the last three denials lead to a finding of defamation.  He did, however, sexually assault her when she was a minor, which Plaintiff has not specifically denied.

Looking to the article, the only words attributed directly to Plaintiff are "'He asked if I wanted to stop, and I couldn't speak,'" she said.  'I was catatonic.'"  Looking at the statement, it would appear that Defendant is suggesting Plaintiff asked for her consent.  "Courts are not to render statements actionable by giving them a 'strained or artificial construction.'" Qureshi v St. Barnabas Hosp. Ctr., 430 F Supp 2d 279, 287 [SDNY 2006]).

The only remaining sentence of the paragraph is "Mr. Lidestri offered her money beyond what she had been paid for the photo shoot, Ms. Burns said" a statement which is neither verbatim what Plaintiff said nor defamatory.

**D. Defendant's Silence Leads to Pleading Deficiencies**

Without providing what it is, exactly, that Lidestri does for a living, he claims Plaintiff's statements are defamatory per se because they injure him in his trade, business, or profession. While Defendant's Counterclaim is wholly silent as to Lidestri's career path, The New York Times has identified him as once running a subscription-based website on which he posted photographs of underage girls. It is unclear how these allegations would harm his professional reputation given these facts.

**E. Many of the Statements are Not Capable of a Defamatory Meaning, Not Concerning Defendant, and are True**

It is also necessary that the allegedly false statement of fact be concerning Defendant as opposed to some other third party. In the Counterclaim, Defendant cites entire paragraphs that are either not capable of a defamatory meaning, true, or not concerning him. These include:

> At the time, she said, her life was chaotic, and she had lived for a while with her mother in a shelter in Oklahoma.

> She started working for Mr. Lidestri when she was 14, she recalled, and later traveled to New York with her mother. Photos she shared on Facebook from the trip included separate images of Mr. Lidestri and at least 10 $100 bills. They were posted in April 2013, when she was 16.

"On a motion to dismiss a defamation claim, the court must decide whether the statements, considered in the context of the entire publication, are "reasonably susceptible of a defamatory connotation," such that the issue is worthy of submission to a jury." <u>Stepanov v Dow Jones & Co., Inc.</u>, 120 AD3d 28, 34 (1st Dept 2014)). "If the words are 'not reasonably susceptible of a defamatory meaning, they are not actionable, and cannot be made so by a strained and artificial construction'" <u>Jacobus v Trump</u>, 55 Misc 3d 470, 474 (Sup Ct 2017), <u>affd,</u>

156 AD3d 452 (1st Dept 2017)).  Further, "[i]n order to establish a prima facie case of defamation, plaintiffs must show that the matter published is "of and concerning" them."  Three Amigos SJL Rest., Inc. v CBS News Inc., 28 NY3d 82, 86 [2016]). As the Court held:

> Although it is not necessary for the plaintiffs to be named in the publication, they must plead and prove that the statement referred to them and that a person hearing or reading the statement reasonably could have interpreted it as such (see id.; *Prosser & Keeton, Torts § 111 at 783* [5th ed. 1984] ). This burden is not a light one, and the question of whether an allegedly defamatory statement could reasonably be interpreted to be "of and concerning" a particular plaintiff is a question of law for the courts to decide
> Id.

The Court of Appeals of New York in Three Amigos SJL Rest., Inc. held that a defamatory statement which referenced a strip club's alleged mafia ownership and indicated it was filled with foreign exotic dancers brought to the U.S. through scam marriages was not "of and concerning" the company hired to provide management and talent services to the strip club because the statement "could not reasonably have been understood to mean" that the staffing company was involved with members of organized crime. Id.

The statements that Plaintiff's life was chaotic are not of and concerning the Defendant. Statements that Plaintiff travelled to New York when she was 14 to meet Defendant are also not capable of having a defamatory meaning.  However, even if the court was to find they were, Plaintiff possesses ample evidence demonstrating the veracity of many of the limited representations made by The New York Times.  Date-stamped images Plaintiff uploaded to her Facebook when she was sixteen years old show Defendant taking Plaintiff on a tour of Manhattan including, disturbingly, a trip to the M&M Store in Times Square – every child's dream.  Another image shows a Juicy Couture bag sitting on a hotel bed with ten one hundred

dollar bills lined up in front of a leopard print pillow.  The 117-image album is entitled "NYC modeling trip!" and was uploaded on April 21, 2013.

As Plaintiff has averred, her birthdate is July 1, 1996; accordingly, at the time she uploaded the images, she was 16 years old.  Additionally, documentary evidence demonstrates that she traveled to New York and it was after she was 14.






See Exhibit 6.

Given the statements are true and not capable of a defamatory meaning, the cause of action should be dismissed.

**F. The Statements Are Nonactionable because Defendant is a Public Figure and the Complaint Fails to Adequately Allege Malice.**

The First Amendment has prohibited limited public figures from recovering damages for a defamatory falsehood unless "he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." N.Y. Times Co. v. Sullivan, 376 U.S. 254, 279–80 (1964). The Supreme Court later expanded this rule to include public figures, in addition to public officials, Curtis Publ'g Co. v. Butts, 388 U.S. 130, 153 (1967); Gertz v. Robert Welch, Inc., 418 U.S. 323, 333–34 (1974), and the law is

now clear that a public figure libel plaintiff bears the burden of proof on actual malice, a burden he must carry by "demonstrat[ing] with clear and convincing evidence that the defendant realized that his statement was false or that he subjectively entertained serious doubts as to the truth of his statement." <u>Bose Corp. v. Consumers Union of U.S., Inc.</u>, 466 U.S. 485, 511 n.30 (1984); <u>see</u> <u>also</u> <u>St. Amant v. Thompson</u>, 390 U.S. 727, 731 (1968) ("There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."); <u>Biro v. Condé Nast</u>, 807 F.3d 541, 544, aff'd 622 F. App'x 67 (2d Cir. 2015).

Defendant's complaint uses "actual malice buzz-words" (<u>Id.</u>) to allege that Plaintiff's "conduct was committed knowingly, intentionally, willfully, wantonly and maliciously" but fails to allege the proper malice standard.

### 1. Defendant is a Public Figure.

The Complaint does not deny Defendant is a public figure. As a public figure or public personality, Defendant was required to meet certain pleading requirements, to be discussed in the section below. "A public figure is someone with 'general fame or notoriety in the community, and pervasive involvement in the affairs of society'" <u>Coleman v Grand</u>, 523 F Supp 3d 244, 255 (EDNY 2021).

> There are two types of public figures: general and limited purpose public figures. General purpose public figures are those who "occupy positions of such persuasive power and influence that they are deemed public figures for all purposes," and must therefore meet the actual malice standard for all libel claims…To qualify, the person's fame must be 'very great; the individual must be a 'household name' on a national scale <u>Id</u>.

Conversely, limited purpose public figures

'may invite publicity only with respect to a narrow area of interest' and may fairly be considered public figures only where the alleged defamation relates to the publicity they sought…One becomes such a limited-purpose public figure through some 'purposeful activity,' by which the individual has 'thrust' themself ' into the public spotlight and sought a continuing public interest in [their] activities'... In that case, an otherwise private individual may properly be considered 'a public personality'
<u>Gottwald v Sebert</u>, 40 NY3d 240, 251-252 (2023)

Defendant's Counterclaim fails to specify any information about Lidestri.  However, at the time the article was published, Lidestri was a self-described "tech entrepreneur" who ran "photography sites." <u>See</u> Exhibit. 1 pg. 8).  Lidestri also describes himself as a "renowned technology executive and pioneer in the SaaS industry" who is "[r]ecognized as one of the founders of the SaaS industry by *Computer Reseller News*". <u>See</u> Exhibit 4 and 5.

In 2013, one New York court held that a journalist who published countless articles had "voluntarily injected herself into the controversial debate on whether HIV causes AIDS" had "'projected her name and personality before readers of nationally distributed magazines to establish her reputation as a leading authority' in this area" <u>Farber v Jefferys</u>, 103 AD3d 514, 515 (1st Dept 2013).  While the journalist in <u>Farber</u> may have published many articles about HIV, Defendant here thrust himself into the online child pornography business and tech business that made him the subject of the particle.  Based on his own conduct, Defendant is a public figure and was required to allege malice.

Defendant refers to himself as "moderately successful businessman[.]" <u>Counterclaim 13</u>. However, Defendant was a limited public figure by virtue of his participation in the first New York Times article dated November 10, 2024, which was published almost a month and a half prior to the subject article. Additionally, by his own admission, Lidestri both "voluntarily injected himself/herself into a public controversy related to the- subject of the litigation" and "maintained regular and continuing access to the media." <u>Catania v Liriano</u>, 2021 NY Slip Op

34027[U] [Sup Ct, Bronx County 2021]. According to the Counterclaim, Lidestri and his attorneys had multiple conversations with the Times reporters in the five days leading up to the publication of the Lidestri article." <u>Counterclaim 80</u>. Lidestri therefore continue to insert himself into the story and is a limited public figure for those purposes.

### 2. Defendant has not Plausibly Alleged Malice.

Defendant can only recover for defamation upon "clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." <u>Gertz</u>, 418 U.S. at 342. This standard, referred to as "actual malice," is measured by "what the defendant actually believed and not by 'what a reasonably prudent man would have published or would have investigated before publishing.'" <u>Goldblatt v. Seaman</u>, 225 A.D.2d 585, 586 (2d Dep't 1996) (quoting <u>St. Amant</u>, 390 U.S. at 731). On a motion to dismiss, "a public-figure plaintiff must plead 'plausible grounds' to infer actual malice by alleging 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' actual malice." <u>Biro</u>, 807 F.3d at 546 (citation omitted). Additionally, "the defendant must have made the false publication with a high degree of awareness of... probable falsity, or must have entertained serious doubts as to the truth of his publication." <u>Prince v The Intercept</u>, 2023 US Dist LEXIS 119974, at *14 (SDNY July 12, 2023, No. 21-CV-10075 [LAP]).

The Supreme Court has provided examples of the facts that can support a claim for actual malice, such as where a story is fabricated by the defendant or is based wholly on "unverified" or "anonymous" sources; where the "allegations are so inherently improbable that only a reckless man would have put them in circulation;" and "where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." <u>St. Amant</u>, 390 U.S. at 732.

17

Defendant does not even attempt to plead actual malice and has made no attempt to meet the heightened pleading standard. Defendant's defamation claim should therefore be dismissed.

### G. New York anti-SLAPP Law Mandates Dismissal.

New York's anti-SLAPP protects victims like Audrey from these type of actions. The law states:

> [I]n an action involving public petition and participation, damages may only be recovered if the plaintiff, in addition to all other necessary elements, shall have established by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false, where the truth or falsity of such communication is material to the cause of action at issue.
> N.Y. Civ. Rights Law § 76-a(2).

The law applies to "[a]n 'action involving public petition and participation' is a claim based upon: (1) any communication in a place open to the public or a public forum in connection with an issue of public interest." 1st Amendment Praetorian v. N.Y. Times Co., No. 1:23-cv-00012 (MKV), 2025 U.S. Dist. LEXIS 59133, at *19 (S.D.N.Y. Mar. 28, 2025). As the court in 1st Amendment Praetorian held, "[t]his action clearly involves a "communication in a place open to the public or a public forum," because all of the allegedly defamatory statements were alleged to have been published online by the New York Times[.]" Id. More so, the article involves an issue of public interest, specifically about men like Lidestri who use the internet to abuse children. As such, New York's anti-SLAPP law applies, and thus Defendant must sufficiently plead actual malice to survive the motion to dismiss.

As discussed above, "[a]ctual malice requires showing that the statements were made with knowledge that [they were] false or with reckless disregard of whether [they were] false or not." Id. [internal quotations omitted]. Thus, the plaintiff needs "to allege facts, that if proven

true, show that the publisher actually possessed a high degree of awareness of the statements' probable falsity." Id.

Here, Lidestri alleges nothing but wholly conclusory allegations of malice by Burns. The failure to plead actual malice is fatal to the claims and the Complaint should be dismissed.

### H. The Amended Complaint Should be Dismissed for Lack of Jurisdiction over Plaintiff

When a plaintiff moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the counterclaimant has the burden of establishing personal jurisdiction. Fischer v. Stiglitz, No. 15-CV-6266 (AJN), 2016 U.S. Dist. LEXIS 74842, at *6 (S.D.N.Y. June 8, 2016). Plaintiff is not alleged to be domiciled in New York or have any physical residence here (Counterclaim ¶5). "Personal jurisdiction over a non-resident defendant in a diversity action is governed by the law of the state in which the federal district court sits, which, in this case, is New York" Satanic Temple, Inc. v. Newsweek Magazine LLC, 661 F. Supp. 3d 159, 166 (S.D.N.Y. 2023). Accordingly, Defendant must rely solely on New York's long-arm statute, CPLR 302(a), for jurisdiction.

New York's long-arm statute authorizes a court to exercise personal jurisdiction over a non-domiciliary who, with respect to the specific transaction at issue in the lawsuit:

> (1) transacts any business within the state . . .; or (2) commits a tortious act within the state, *except as to a cause of action for defamation of character arising from the act*; or (3) commits a tortious act without the state causing injury . . . within the state, except as to a cause of action for defamation of character arising from the act.
> CPLR 302(a) (emphases added).

Importantly, sections 302(a)(2) and (3), which permit jurisdiction over tortious acts committed in New York and those committed outside New York that cause injuries within the state, exempt defamation claims. Best Van Lines, Inc. v Walker, 490 F3d 239, 244 (2d Cir 2007). Defendant

must show that jurisdiction exists under, under CPLR 302(a)(1) for their defamation claim to survive.

### 1. Defendant Fails to Obtain Jurisdiction over Plaintiff Pursuant to CPLR 302(a)(1)

In order to obtain jurisdiction over a plaintiff pursuant to CPLR 302(a)(1), a counter-plaintiff must satisfy a two-part inquiry. The "first inquiry is whether defendant conducted sufficient activities to have transacted business within the state; the second inquiry is whether plaintiff's claims arise from the transactions". English v Avon Prods., Inc., 206 AD3d 404, 406 [1st Dept 2022]). "New York courts construe 'transacts any business within the state' more narrowly in defamation cases than they do in the context of other sorts of litigation". SPCA of Upstate NY, Inc. v Am. Working Collie Assn., 18 NY3d 400, 405 [2012]). This is because the legislature ensured that:

> particular care must be taken to make certain that non-domiciliaries are not haled into court in a manner that potentially chills free speech without an appropriate showing that they purposefully transacted business here and that the proper nexus exists between the transaction and the defamatory statements at issue
> Id.

Transaction of business must be more than "sporadic emails" and a "few meetings" in New York. See Black v Phoenix Cayman Ltd., 224 AD3d 494, 494 (1st Dept 2024). Here, Defendant has failed to allege any transaction of business between the Defendant and Plaintiff that would confer jurisdiction. Defendant merely cites to 28 U.S.C. § 1332 without going into any additional significant details.

Defendant alleges that Audrey transacted business in New York because "derived a substantial portion of her income via interstate commerce as a model on OnlyFans.com, a website owned by Fenix International Limited, which is based in the United Kingdom."

Counterclaim 5.  Lidestri's inclusion of the Onlyfans page appears solely designed to embarrass Audrey, as there is no basis for jurisdiction in New York simply because Plaintiff transacts business with a **European company**.

The Plaintiff's alleged conduct is not sufficient to assert that she "transacted business" in New York.  Even if Defendant manufactures some transaction of business claims, he will be unable to establish an "articulable nexus between Defendant's New York activities and the cause[s] of action"  Kingstown Capital Mgt. L.P. v CPI Prop. Group, S.A., 205 AD3d 467, 468 (1st Dept 2022).

## 2. Defendant Has Not Alleged Plaintiff Was Present in New York to Establish Jurisdiction Pursuant to CPLR 302(a)(2)

Defendant is equally unable to establish jurisdiction over Plaintiff pursuant to (a)(2).  CPLR 302 (a) (2) permits New York courts to exercise personal jurisdiction over any non-domiciliary, who directly or through an agent, committed a tort within New York.  To invoke New York's long-arm jurisdiction pursuant to CPLR 302(a)(2), we have "traditionally required the defendant's [physical] presence [in New York] at the time of the tort"  SOS Capital v Recycling Paper Partners of PA, LLC, 220 AD3d 25, 33 (1st Dept 2023).

Here, Defendant has not alleged that Plaintiff was physically present when the supposed torts were committed. As such, Defendant cannot use CPLR 302(a)(2) to obtain jurisdiction over the Plaintiff.

## 3. Plaintiff Does not Derive Substantial Revenue from New York

CPLR 302(a)(3) provides that "a court may exercise personal jurisdiction over any non-domiciliary…who in person or through an agent….commits a tortious act without the

state…causing injury within the state…if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." As with CPLR 302(a)(2), claims for defamation are specifically excluded from CPLR 302(a)(3).

Once again, Defendant fails to allege Plaintiff engaged in business within New York or derives substantial revenue from interstate or international commerce.  As such, the Amended Complaint should be dismissed.

### 4. Plaintiff Did not Submit Herself to the Jurisdiction of this Court of an Unrelated Counterclaim

Defendant's final attempt to obtain jurisdiction is through notion that the counterclaim arises from the same case or controversy.  "One exception arises in the context of counterclaims, where a plaintiff bringing suit in a forum 'submit[s] itself to the jurisdiction of the court with respect to all the issues embraced in the suit, including those pertaining to the counterclaim of the defendants.  V&A Collection, LLC v Guzzini Props., 46 F.4th 127, 132 (2d Cir 2022).  Thus, "personal jurisdiction exists where a defendant . . . independently seeks affirmative relief in a separate action before the same court concerning the same transaction or occurrence."  Yehuda v. Zuchaer, No. 22-1972, 2023 U.S. App. LEXIS 34128, at *4 (2d Cir. Dec. 26, 2023).

However, the counterclaim asserted by Defendant (for defamation) does not relate to the the "same transaction or occurrence."  The action brought by Burns against Lidestri in this case relate to the production and dissemination of child pornography.  Lidestri's counterclaim for defamation is because he was upset that a New York Times article exposed his predatory

behavior and sexual assaults.  As such, it cannot be said that the counterclaim relates to Lidestri's photographing of minors.

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff respectfully requests this court grant her Motion to Dismiss in its entirety.

Dated:  February 3, 2026
New York, New York

VERIDIAN LEGAL P.C.

By: _____/Daniel S. Szalkiewicz_____
Daniel S. Szalkiewicz
Cali P. Madia
*Attorneys for Plaintiff*