UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AUDREY BURNS

        Plaintiff / Counterclaim-Defendant,

    vs.

JAMES LIDESTRI,

        Defendant / Counterclaimant.

Case No. 7:25-cv-07474-KMK

 

**<u>COUNTERCLAIMANT'S MEMORANDUM OF LAW IN OPPOSITION TO COUNTERCLAIM-DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS</u>**

**LEWIS & LIN, LLC**
David D. Lin, Esq.
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
David@iLawco.com
*Attorneys for Defendant /
Counterclaimant*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................... 1

RELEVANT FACTUAL BACKGROUND ..................................................................... 2

    A.   COUNTERCLAIMANT'S BACKGROUND AND PHOTOGRAPHY ACTIVITIES............................ 2

    B.   THE PARTIES' RELATIONSHIP AND PHOTOSHOOTS ..................................................... 3

    C.   THE NEW YORK TIMES ARTICLE AND COUNTERCLAIM-DEFENDANT'S FALSE

    ACCUSATIONS ........................................................................................................ 4

RELEVANT PROCEDURAL BACKGROUND ............................................................ 7

ARGUMENT ..................................................................................................................... 8

    A.   THE COURT SHOULD DISREGARD COUNTERCLAIM-DEFENDANT'S EXTRINSIC

    SUBMISSIONS ......................................................................................................... 8

    B.   THE COURT HAS PERSONAL JURISDICTION OVER COUNTERCLAIM-DEFENDANT............ 9

        a.   *Plaintiff Consented to Personal Jurisdiction by Filing This Action* ............................... 9

        b.   *In the Alternative, Jurisdiction Exists Under CPLR § 302 and Due Process* ............... 11

    C.   THE COUNTERCLAIMS PLAUSIBLY STATE CLAIMS FOR DEFAMATION PER SE ............... 12

        a.   *The Counterclaim Satisfies Any Applicable Particularity Requirement* ....................... 12

        b.   *Falsity Is Squarely Alleged; Any Truth Defense Is Unsupported and Premature* ......... 13

        c.   *Speaking to a Reporter Does Not Immunize Counterclaim-Defendant from Liability* .. 15

        d.   *The Challenged Statements Are Actionable Statements of Fact Concerning*

        *Counterclaimant* .............................................................................................. 16

        e.   *The Counterclaims Adequately Plead Defamation Per Se and Damages* ..................... 17

    D.   COUNTERCLAIMANT IS A PRIVATE FIGURE; THE PUBLIC FIGURE DEFENSE FAILS AS A

    MATTER OF LAW ................................................................................................... 18

        a.   *The Motion Fails to Establish General Public-Figure Status*....................................... 18

        b.   *The Motion Fails to Establish Limited-Purpose Public-Figure Status*.......................... 19

    E.   NEW YORK'S ANTI-SLAPP STATUTE DOES NOT APPLY ................................................. 20

    F.   EVEN IF PUBLIC-FIGURE STATUS OR § 76-A APPLIED, THE COUNTERCLAIMS PLAUSIBLY

    ALLEGE ACTUAL MALICE ...................................................................................... 22

CONCLUSION ............................................................................................................... 23

<u>**Table of Authorities**</u>

<u>**Page(s)**</u>

**CASES**

*Adam v. Saenger*, 303 U.S. 59 (1938)..........................................................................................9

*Allan & Allan Arts Ltd. v. Rosenblum*, 201 A.D.2d 136 (N.Y. App. Div. 1994) .......................21

*Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012) ...................................14

*Bell v. Alden Owners, Inc.*, 299 A.D.2d 207 (1st Dep't 2002) ....................................................13

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) .....................................................11

*Biro v. Condé Nast*, 807 F.3d 541 (2d Cir. 2015) .......................................................................22

*Biro v. Condé Nast*, 883 F. Supp. 2d 441 (S.D.N.Y. 2012) ........................................................12

*Brian v. Richardson*, 87 N.Y.2d 46 (1995)..................................................................................16

Calder v. Jones, 465 U.S. 783 (1984) ...........................................................................................12

*Campo v. Paar,* 18 A.D.2d 364 (1st Dep't 1963) .........................................................................15

*Carroll v. Trump*, 590 F. Supp. 3d 575 (S.D.N.Y. 2022) ............................................................17

*Carroll v. Trump*, 680 F. Supp. 3d 491 (S.D.N.Y. 2023) ............................................................17

*Celle v. Filipino Reporter Enters., Inc*., 209 F.3d 163 (2d Cir. 2000)........................................17

*Chambers v. Time Warner, Inc*., 282 F.3d 147 (2d Cir. 2002) ......................................................8

*Coleman v. Grand,* 523 F. Supp. 3d 244 (E.D.N.Y. 2021)..........................................................19

*Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.*, 233 F.3d 697 (2d Cir. 2000)................10

*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) ..............................................................................21

*Gary Friedrich Enters., LLC v. Marvel Enters., Inc*., No. 08 Civ. 1533, 2011 WL 13262163
     (S.D.N.Y. May 4, 2011) ...........................................................................................................9

*Geraci v. Probst*, 15 N.Y.3d 336 (2010)......................................................................................15

*Gertz v. Robert Welch, Inc*., 418 U.S. 323 (1974) .......................................................................18

*Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation*, No. 06 Civ. 1260, 2009 WL
     4547792 (E.D.N.Y. Dec. 1, 2009).........................................................................................12

*Gross v. N.Y. Times Co*., 82 N.Y.2d 146 (1993) ..........................................................................16

*Grupke v. Linda Lori Sportswear, Inc.*, 174 F.R.D. 15 (E.D.N.Y. 1997)......................................9

*Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657 (1989) .........................................22

*Khalil v. Fox Corp.*, 630 F. Supp. 3d 568 (S.D.N.Y. 2022) ........................................................19

*La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020)............................................................................21

*Lawlor v. Gallagher Presidents' Report, Inc.*, 394 F. Supp. 721 (S.D.N.Y. 1975)....................19

*Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448 (1932).................................................9

*Lerman v. Flynt Distrib. Co.*, 745 F.2d 123 (2d Cir. 1984) .........................................................18

*Liberman v. Gelstein*, 80 N.Y.2d 429 (1992) ..............................................................................17

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013) ...................11

*Milkovich v. Lorain Journal Co*., 497 U.S. 1 (1990)...................................................................16

*Palin v. New York Times Co*., 940 F.3d 804 (2d Cir. 2019) ..........................................................8

*Palin v. New York Times Co*., 113 F.4th 245 (2d Cir. 2024) .......................................................22

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998) ........................................... 13

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ...................... 21

*Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236 (2d Cir. 2017) .................... 13

*Time, Inc. v. Firestone*, 424 U.S. 448 (1976)................................................................................ 18

*Trakis v. Manhattanville College*, 51 A.D.3d 778 (2d Dep't 2008) ........................................... 13

*V&A Collection, LLC v. Guzzini Properties Ltd.*, 46 F.4th 127 (2d Cir. 2022) ........................... 9

*Wolston v. Reader's Digest Ass'n*, 443 U.S. 157 (1979) ............................................................. 20

## STATUTES

N.Y. Civ. Rights Law §§ 70-a and 76-a .................................................................................... 20

## RULES

N.Y. C.P.L.R. § 302 ...................................................................................................................... 9

N.Y. C.P.L.R. § 302(a)(1) ........................................................................................................... 11

N.Y. C.P.L.R. § 3016(a) .............................................................................................................. 12

Fed. R. Civ. P. 8 ............................................................................................................................. 1

Fed. R. Civ. P. 12 ........................................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 8

Fed. R. Civ. P. 12(d) ...................................................................................................................... 8

Fed. R. Civ. P. 13(a) .................................................................................................................... 10

Fed. R. Civ. P. 56 ........................................................................................................................ 21

## PRELIMINARY STATEMENT

Defendant and Counterclaimant James Lidestri ("Counterclaimant") respectfully submits this Memorandum of Law in Opposition to Plaintiff and Counterclaim-Defendant Audrey Burns's ("Counterclaim-Defendant") Motion to Dismiss the Counterclaims.

Counterclaim-Defendant asks this Court to do what Rule 12 does not permit: accept her narrative and defenses as true at the pleading stage; recharacterize – without meaningful factual support – Counterclaimant as a public figure unentitled to ordinary reputational protections; and disclaim jurisdiction over a party who voluntarily chose this forum to assert her own claims. None of those positions comports with the governing standards under Rule 8 and Rule 12. Rather than test the sufficiency of the pleadings, the motion seeks to resolve factual disputes, weigh credibility, and impose evidentiary burdens that have no place at this stage, and it improperly relies on an affirmation addressing matters outside the pleadings and unrelated to jurisdiction – materials that cannot be considered without converting the motion to one for summary judgment, which would be premature here.

In short, the Counterclaims allege that Counterclaim-Defendant made specific and false statements of fact, including accusations of sexual assault, to reporters at The New York Times with the intent and expectation that those statements would be published, and that she subsequently amplified the publication through her own social media. The Counterclaims expressly deny the published statements, plead facts inconsistent with Counterclaim-Defendant's account, and allege falsity, publication, fault (including actual malice), and damages. Those allegations are more than sufficient to state a claim. Counterclaim-Defendant's attempt to hide behind the New York Times byline is likewise unavailing, as publication by a newspaper or journalist does not shield the source of false statements from liability. The motion should be denied in its entirety.

1

## RELEVANT FACTUAL BACKGROUND

### A.  Counterclaimant's Background and Photography Activities

As alleged in the Counterclaims, Counterclaimant is a businessman and consultant who has worked across various technology and media ventures over the course of his career. Counterclaims ¶ 13. Only one company in which he served in a senior role was publicly traded, and he left that position nearly twenty-five years ago. *Id.* ¶ 14. He does not make media appearances, is not sought out for public commentary, has not spoken at industry conferences, and has made no effort to cultivate public notoriety. *Id.* ¶¶ 16-18. Other than through this litigation and incidental mention in two New York Times articles, he is not publicly associated with any controversy. *Id.* ¶ 19.

Beginning in approximately 2001, Counterclaimant operated a subscription-based glamour photography website as a side venture through a corporate entity based in Dutchess County, New York. *Id.* ¶¶ 20-25. As alleged, he conducted those operations under strict terms designed to ensure lawfulness and transparency – particularly when working with models under the age of eighteen. *Id.* ¶¶ 26-33. Those terms included, among other things: adherence to all applicable laws governing lawful imagery; restrictions limiting nude content solely to adults; executed written releases and agreements; mandatory parental involvement and consent for any model under eighteen; and operational safeguards ensuring that models – and, for minors, their parents or guardians – had full visibility into all images and website content. *Id.* ¶¶ 26-33. As alleged, over the duration of this venture, Counterclaimant did not receive a single complaint or accusation of unlawful conduct from any model, parent, or law enforcement authority, and the business was conducted openly and transparently. *Id.* ¶¶ 31-33.

2

## B.  **The Parties' Relationship and Photoshoots**

Counterclaimant first became acquainted with Counterclaim-Defendant when she was sixteen years old, through a Dallas-based photographer who had previously photographed her. Counterclaims ¶ 37. Counterclaimant had no contact with Counterclaim-Defendant prior to her turning sixteen. *Id.* Counterclaim-Defendant and her mother expressed interest in being added to Counterclaimant's company's website, and the company's first payment to Counterclaim-Defendant was for three sets of photographs taken when she was over sixteen. *Id.* ¶¶ 38-39.

When plans were made for an in-person photoshoot, Counterclaim-Defendant was living in Oklahoma and had never been to New York. *Id.* ¶ 40. The parties agreed that the shoot would take place at Counterclaimant's residence, which functioned as a studio, and that Counterclaim-Defendant and her mother would travel together – allowing Counterclaim-Defendant to both participate in the shoot and visit New York City. *Id.* ¶¶ 40-42. Consistent with Counterclaimant's strict rules governing minor models, Counterclaimant ensured that Counterclaim-Defendant's mother accompanied her and was present throughout. *Id.* ¶¶ 40-44.

The first photoshoot took place on April 19 and 20, 2013. *Id.* ¶ 42. Prior to beginning, Counterclaim-Defendant and her mother signed a written contract and approved all attire. *Id.* ¶ 43. Her mother was present for both days and free to be in the studio at any time. *Id.* ¶ 44. No alcohol or drugs were provided to Counterclaim-Defendant at any time. Counterclaims ¶ 45. Counterclaimant categorically denies that any inappropriate physical contact occurred and denies any sexual assault occurred. *Id.* ¶¶ 46-50.

Following the shoot, Counterclaim-Defendant and her mother were both extremely happy with the results and expressed eagerness to do another photoshoot. *Id.* ¶ 51. On the following day, Counterclaimant drove all three to Manhattan for a tour of the city, accommodating Counterclaim-

Defendant's interest in seeing Times Square and doing some shopping, before reserving them a hotel room at the Crowne Plaza Times Square for their final night before departing home. *Id*. ¶¶ 52-54.

Following the April 2013 photoshoot, Counterclaim-Defendant and her mother again expressed satisfaction with the results and enthusiastically invited Counterclaimant to Oklahoma for a second shoot – scheduled at their suggestion for June 2, 2013, at the Choctaw Casino and Resort Hotel, near their home. *Id*.  ¶¶ 51, 56-57. That shoot was also very successful, and Counterclaim-Defendant and her mother were both again pleased with the results. *Id*. ¶ 58. No drugs or alcohol were provided, and there was no inappropriate physical contact of any kind. *Id*. ¶¶ 59-64. Additional photoshoots followed without incident. *Id*. ¶ 65. The final photoshoot occurred in July 2014, shortly after Counterclaim-Defendant turned eighteen. *Id*. ¶ 66. At that session, non-party Amanda Zimmerman also appeared as a second model. *Id*. ¶ 67. Ms. Zimmerman and Counterclaim-Defendant arrived significantly late to the shoot, keeping two photographers and a makeup artist waiting. *Id*. ¶ 68. Counterclaimant later learned that they had gone out drinking the night before and arrived hung over. *Id*. ¶ 69. During the session, at Ms. Zimmerman's request, the two models posed together for additional photographs at the conclusion of the shoot, and copies were provided to them. *Id*. ¶ 70. No nude photographs were taken. *Id*. ¶ 71.

The parties thereafter parted ways. Pursuant to their contractual agreement, Counterclaimant's company continued to publish Counterclaim-Defendant's photographs and paid her the agreed contractual share of profits. *Id*. ¶¶ 72-74.

### C.  The New York Times Article and Counterclaim-Defendant's False Accusations

Between December 24 and December 28, 2024, reporters Jennifer Valentino-DeVries and

Michael H. Keller of The New York Times contacted Counterclaimant and his counsel regarding allegations made by Counterclaim-Defendant that were to appear in a forthcoming article. Counterclaims ¶ 75. The article was not focused on Counterclaimant; rather, it concerned men who use social media platforms to develop relationships with underage models. *Id*. ¶ 76. In the course of reporting that article, however, the reporters spoke with former online models, including Counterclaim-Defendant. *Id*. ¶ 77.

In the days leading up to publication, Counterclaimant and his attorneys engaged in multiple conversations with the reporters concerning the allegations. *Id*. ¶ 80. The reporters disclosed that Counterclaim-Defendant had met with or spoken to them regarding her interactions with Counterclaimant and had made a series of accusations, including that: (i) she traveled to New York for a photoshoot; (ii) she was left alone in the house with Counterclaimant without her mother present; (iii) he provided her a drink that made her feel strange; (iv) he sexually assaulted her with his hands and mouth; and (v) he paid her more than the previously agreed amount; Counterclaim-Defendant also presented photographs showing cash from her trip purportedly corroborating her account. *Id*. ¶ 80(a)-(f).

On December 30, 2024, the article was published. The portion of those statements published in the article read, in relevant part:

> Another woman, Audrey Burns, now 28, said Mr. Lidestri sexually assaulted her when she visited him in New York for a photo shoot. At the time, she said, her life was chaotic, and she had lived for a while with her mother in a shelter in Oklahoma. She started working for Mr. Lidestri when she was 14, she recalled, and later traveled to New York with her mother. Photos she shared on Facebook from the trip included separate images of Mr. Lidestri and at least 10 $100 bills. They were posted in April

2013, when she was 16. Mr. Lidestri offered her money beyond what she had been

paid for the photo shoot, Ms. Burns said. He then sexually assaulted her with his hands

and mouth, she said. "He asked if I wanted to stop, and I couldn't speak," she said. "I

was catatonic."

*Id*. ¶ 81.

The Counterclaims expressly allege that these statements are false. Counterclaimant denies

that any sexual assault occurred, denies providing alcohol or drugs, denies offering payment

beyond agreed compensation, denies asking whether Counterclaim-Defendant "wanted to stop,"

and denies that she was "catatonic." *Id*. ¶¶ 83-87.

On the same day the article was published, Counterclaim-Defendant posted a message to

her public Facebook page – accessible to all visitors – captioned "Here it is!," which included a

direct link to and preview of the article, thereby further amplifying and republishing the statements

to her own audience. *Id*. ¶¶ 88-90.

The Counterclaims allege that Counterclaim-Defendant deliberately supplied the *Times*

with a false and misleading narrative. Specifically, the Counterclaims allege that Counterclaim-

Defendant provided the *Times* with materially false and internally inconsistent timelines of the

parties' first New York photoshoot. *Id*. ¶ 97. She also presented photographic evidence of a

shopping trip to the reporters as purported corroboration of events she claimed occurred before the

photoshoot, when in fact the images were taken after the shoot had concluded. *Id*. ¶ 98. The

Counterclaims further allege that Counterclaim-Defendant omitted from her public narrative that

she and her mother invited Counterclaimant to conduct a second photoshoot approximately six

weeks after the first, and that she advanced false statements that Counterclaimant began working

with her at a substantially younger age than that reflected by contemporaneous records and the

6

parties' dealings. *Id.* ¶¶ 99-100. They also allege that she falsely claimed she was alone with Counterclaimant during the New York photoshoot despite her mother's presence. *Id.* ¶ 101. Finally, the Counterclaims allege that Counterclaim-Defendant republished and amplified the accusations through her public Facebook post following publication of the Article. *Id.* ¶ 102.

## **RELEVANT PROCEDURAL BACKGROUND**

On September 9, 2025, Counterclaim-Defendant commenced this action asserting various causes of action based on her accusation of sexual assault and related allegations. ECF 1. On December 12, 2025, Counterclaim-Defendant filed her Amended Complaint. ECF 12. On December 29, 2025, Counterclaimant filed his Answer and Counterclaims (ECF 14), which arise from Counterclaim-Defendant's statements to The New York Times that caused the publication of false statements of fact about Counterclaimant, including the same accusation of sexual assault (an allegation Counterclaimant unequivocally denies) that Counterclaim-Defendant's Complaint is based on. The Counterclaims assert claims for defamation *per se* based on several specific false statements made by Counterclaim-Defendant and published in the Article, as detailed therein. Counterclaims ¶¶ 80-87, 91-95.

On January 5, 2026, Counterclaim-Defendant filed a pre-motion letter seeking leave to move to dismiss the Counterclaims. ECF 16. Notwithstanding Judge Karas's Individual Rules, the letter cited no supporting case law or legal authority. *See id.* Counterclaimant responded by letter on January 12, 2026. ECF 17. On January 22, 2026, the Court held a pre-motion conference and issued a briefing schedule for Counterclaim-Defendant's motion to dismiss. *See* 1/22/2026 ECF Minute Entry. On February 3, 2026, Counterclaim-Defendant filed her motion to dismiss the Counterclaims. ECF 19.

This opposition follows.

## ARGUMENT

### A.  The Court Should Disregard Counterclaim-Defendant's Extrinsic Submissions

As a threshold matter, Counterclaim-Defendant's motion is accompanied by her own declaration and multiple exhibits – including photographs, press releases, and articles – that are extrinsic to the pleadings. On a Rule 12(b)(6) motion, the Court is confined to the four corners of the Counterclaims, documents incorporated by reference, and matters subject to judicial notice. *See Chambers v. Time Warner, Inc*., 282 F.3d 147, 152–53 (2d Cir. 2002). If the Court considers extrinsic materials, it must convert the motion to one for summary judgment under Rule 12(d) and afford the parties an opportunity for discovery. *See* Fed. R. Civ. P. 12(d).

The Second Circuit's decision in *Palin v. New York Times Co*. is instructive. There, the district court relied on materials outside the pleadings to assess plausibility at the Rule 12(b)(6) stage without converting the motion to one for summary judgment. The Second Circuit vacated, holding that a court may not resolve factual disputes or make credibility determinations based on material outside the pleadings at the Rule 12(b)(6) stage. 940 F.3d 804, 810-812 (2d Cir. 2019).

Counterclaim-Defendant's declaration presents her version of disputed historical events – the very version the Counterclaims expressly deny. It is not a document integral to the Counterclaims, nor is it offered for any jurisdictional purpose. It is, in substance, a sweeping counter-narrative submitted for the sole purpose of placing Counterclaim-Defendant's disputed account of the facts before the Court at the pleading stage. Accepting that declaration – or the press releases and photographs submitted alongside it – would require the Court to adjudicate credibility and resolve factual disputes that are the province of the finder of fact, which is precisely what *Palin* forbids. These materials should be disregarded in their entirety.

### B.  **The Court Has Personal Jurisdiction Over Counterclaim-Defendant**

### a.  **Plaintiff Consented to Personal Jurisdiction by Filing This Action**

Counterclaim-Defendant's challenge to personal jurisdiction fails as a matter of settled law. She voluntarily commenced this action in the Southern District of New York. Having invoked this Court's jurisdiction to pursue her own claims, she cannot disclaim that jurisdiction when faced with counterclaims arising from the same action.

The Supreme Court has long held that a plaintiff who files suit in a forum consents to that court's jurisdiction with respect to properly asserted counterclaims. In *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 451-52 (1932), the Court explained that by bringing suit, a plaintiff "submitted itself to the jurisdiction of the court with respect to all the issues embraced in the suit, including those pertaining to the counterclaim of the defendants." The Court reaffirmed that principle in *Adam v. Saenger*, 303 U.S. 59, 67-68 (1938), holding that requiring a plaintiff to answer counterclaims in the forum she selected is "the price which the state may exact" for opening its courts. Courts in this Circuit continue to apply that rule. *See V&A Collection, LLC v. Guzzini Properties Ltd.*, 46 F.4th 127, 134–35 (2d Cir. 2022); *Grupke v. Linda Lori Sportswear, Inc.*, 174 F.R.D. 15, 18 (E.D.N.Y. 1997); *Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, No. 08 Civ. 1533, 2011 WL 13262163, at *3 (S.D.N.Y. May 4, 2011).

Counterclaim-Defendant's reliance on CPLR 302-style minimum-contacts analysis is therefore misplaced. That framework governs whether a defendant may be haled into a forum involuntarily. Counterclaim-Defendant was not haled into this Court; she chose it. By filing her Complaint here, she consented to personal jurisdiction over any counterclaims filed against her.

Counterclaim-Defendant's passing assertion that the defamation Counterclaims do not arise from the "same transaction or occurrence" as her claims fares no better. By filing her

lawsuit in this district, Counterclaim-Defendant has consented to jurisdiction for "*all purposes for which justice to the defendant requires [her] presence*," not just those arising from the same transaction or occurrence. *V&A Collection*, 46 F.4th at 132 (emphasis added) (quoting *Adam v. Saenger*, 303 U.S. 59, 67-68 (1938)). In any event, her Amended Complaint is itself premised on the very same photoshoots, interactions, and alleged events that form the basis of the Counterclaims. Indeed, the New York Times article at issue is expressly referenced and attached to her pleadings. *See* Amended Complaint, ECF 12 ¶¶ 143-144.

Her claims concern her interactions with Counterclaimant in connection with specific New York photoshoots. The Counterclaims arise from her public accusations about those same interactions. The claims therefore share the identical nucleus of operative facts: the parties' course of dealing, the April 2013 photoshoot, and Counterclaim-Defendant's subsequent statements about those events. The same witnesses, documents, and discovery will bear directly on both sides of the case.

The Counterclaims are thus precisely the type of compulsory counterclaims contemplated by Rule 13(a). A counterclaim is compulsory where a "logical relationship" exists between the claim and the counterclaim and where the essential facts are so logically connected that judicial economy and fairness dictate resolution in one lawsuit. *Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.*, 233 F.3d 697, 699 (2d Cir. 2000). That standard is satisfied here. The truth or falsity of Counterclaim-Defendant's accusations concerning the April 2013 photoshoot is central to both her claims and the defamation Counterclaims, creating the requisite mutuality of proof and factual overlap. See *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978) (distinguishing defamation counterclaims arising from litigation conduct from those tied to the underlying events at issue).

10

**b.   In the Alternative, Jurisdiction Exists Under CPLR § 302 and Due Process**

Even apart from consent, personal jurisdiction independently exists under CPLR §

302(a)(1). That provision permits jurisdiction over a non-domiciliary who "transacts any

business within the state" where the cause of action arises from those transactions. *See Licci ex*

*rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013). In defamation

cases, courts construe this provision more narrowly, requiring "more than the distribution of a

libelous statement" within the state. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 248-49 (2d

Cir. 2007). That heightened standard is readily satisfied here.

This case does not involve a statement merely accessible in New York. The underlying

events at the heart of both Counterclaim-Defendant's Complaint and the Counterclaims – the

photoshoot at issue – took place in New York. Counterclaims ¶¶ 40-44. Counterclaim-Defendant

voluntarily traveled to New York in connection with those events, transacted business in New

York by modeling for a paid photoshoot, and years later deliberately targeted a New York-based

media institution to broadcast her accusations about them. Specifically, she provided detailed

allegations to reporters at The New York Times – a national newspaper headquartered in this

District – for the express purpose of publication. *Id.*  ¶¶ 75-81. She supplied materials

purportedly supporting her narrative and participated in the preparation of the article. *Id.* The

resulting publication was written, edited, and disseminated from New York. She thereafter

amplified the article through her own public social media. *Id.* ¶¶ 88-90. By purposefully

engaging with a New York media entity to publish accusations about New York-based conduct,

Counterclaim-Defendant availed herself of the privilege of conducting activities within this

forum. *See Best Van Lines*, 490 F.3d at 247-48.

The exercise of jurisdiction also comports with due process. Personal jurisdiction is

11

proper where a defendant commits an intentional tort expressly aimed at the forum and knows that the brunt of the injury will be felt there. Calder v. Jones, 465 U.S. 783, 789–90 (1984). Counterclaimant is a New York resident whose business was operated from New York. The conduct underlying the Counterclaims – the photoshoot, the business relationship, and the reputational harm flowing from the published accusations – all center on New York. Furthermore, by directing her false accusations to a New York news organization concerning alleged events that occurred in New York, Counterclaim-Defendant expressly aimed her conduct at this forum and could reasonably foresee being called to answer for it here.

### C.  The Counterclaims Plausibly State Claims For Defamation Per Se

### a.  The Counterclaim Satisfies Any Applicable Particularity Requirement

Counterclaim-Defendant argues that the Counterclaims fail to plead defamatory statements with the particularity required by CPLR § 3016(a). In federal court, however, pleading standards are governed by Rule 8(a) of the Federal Rules of Civil Procedure. See *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 456–57 (S.D.N.Y. 2012) (defamation complaint in federal court is governed by the Federal Rules and *Twombly/Iqbal*, not CPLR § 3016(a)'s state-law particularity requirement). While New York state courts require a plaintiff to set forth "the particular words complained of," N.Y. C.P.L.R. § 3016(a), "the federal rules do not require the particularized pleading requirements set forth in New York's C.P.L.R. section 3016." *Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation*, No. 06 Civ. 1260, 2009 WL 4547792, at *8–9 (E.D.N.Y. Dec. 1, 2009). Rather, Rule 8 requires that the pleading be specific enough to afford sufficient notice of the communications at issue to enable a defense. *Id*.

The Counterclaims readily satisfy that standard – and would easily clear § 3016(a) as well. They identify the precise publication (The New York Times, December 30, 2024), the

specific statements attributed to Counterclaim-Defendant, the manner and scope of publication, and the audience to whom those statements were disseminated. Counterclaims ¶¶ 79-82. They further allege Counterclaim-Defendant's republication of the article on her public Facebook page. *Id.* ¶¶ 88-90. Counterclaim-Defendant's reliance on cases involving vague, unspecified oral statements – such as *Bell v. Alden Owners, Inc.*, 299 A.D.2d 207 (1st Dep't 2002), and *Trakis v. Manhattanville College*, 51 A.D.3d 778 (2d Dep't 2008) – is misplaced. Those cases involved unidentified speakers making oral statements to unspecified individuals at unknown times and places. Here, by contrast, the Counterclaims identify the speaker, the publication, the date, the publisher, and the specific defamatory content. That is sufficient under any applicable standard.

    **b.**  <u>**Falsity Is Squarely Alleged; Any Truth Defense Is Unsupported and Premature**</u>

Counterclaim-Defendant's main argument arises from an improper premise: that her accusations are true and therefore the defamation Counterclaims fail as a matter of law. That is not a Rule 12(b)(6) argument. It is an improper invitation for the Court to resolve a disputed factual question at the pleading stage. The Second Circuit's decision in *Palin*, 940 F.3d 804, underscores this point. The Court of Appeals vacated a pleading-stage dismissal because the district court impermissibly resolved factual disputes and made credibility determinations based on material outside the pleadings. *Id*. at 810-12.

Under New York law, falsity is an element of a defamation claim, and substantial truth defeats liability. *Tannerite Sports, LLC v. NBCUniversal News Grp*., 864 F.3d 236, 247–48 (2d Cir. 2017). But dismissal at the pleading stage is appropriate only where substantial truth is established on the face of the complaint and documents properly incorporated therein. *Id*.; *see also Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) (affirmative defenses

may support dismissal only when they appear on the face of the complaint).

The Counterclaims expressly and unequivocally allege falsity. Counterclaimant denies that he sexually assaulted Counterclaim-Defendant, denies providing her alcohol or drugs, denies offering payment beyond agreed compensation, denies asking whether she "wanted to stop," denies that she was "catatonic," and denies that he began working with her at the age of 14. Counterclaims ¶¶ 45-50, 83-87. Those allegations directly contradict the statements attributed to Counterclaim-Defendant in the December 30, 2024 article. *Id.* ¶ 81.

Counterclaim-Defendant argues that Counterclaimant "admits to the bulk" of the article's statements. That mischaracterizes the Counterclaims. The Counterclaims acknowledge that photoshoots occurred and that Counterclaim-Defendant was photographed while under eighteen. Counterclaims ¶¶ 37-42. They do not admit sexual assault, coercion, overpayment, or any criminal conduct. *Id.* ¶¶ 45-50, 83-87. Admission of lawful background facts does not establish the truth of the defamatory accusations. Where the pleadings present competing factual narratives, the Court may not resolve credibility or choose between plausible versions of events. *Anderson News, L.L.C. v. Am. Media, Inc*., 680 F.3d 162, 185 (2d Cir. 2012).

What Counterclaim-Defendant has submitted in support of her motion amounts to nothing more than her own competing factual narrative – the very narrative that the Counterclaims allege is not only false, but knowingly and intentionally false. Far from establishing truth on the face of the pleadings, the materials she has submitted are undermined by the specific factual allegations in the Counterclaims, including the demonstrably inconsistent timelines she provided to the *Times*, her misrepresentation of photographic evidence offered as corroboration, and her conspicuous omission of facts – including her mother's presence throughout the photoshoot and her enthusiastic return for a second shoot weeks later – that

directly contradict her account. Counterclaims ¶¶ 96-101.

Because falsity is squarely alleged and substantial truth does not appear on the face of the pleadings, dismissal is improper.

    c.  **Speaking to a Reporter Does Not Immunize Counterclaim-Defendant from Liability**

Counterclaim-Defendant attempts to evade liability by suggesting that because her accusations appeared in a newspaper article, she cannot be held responsible for them. That is not the law.

New York courts have long recognized that a speaker who provides defamatory factual allegations to a reporter, intending or expecting publication, is liable for the resulting publication. *See Campo v. Paar,* 18 A.D.2d 364, 366 (1st Dep't 1963) (one who makes a defamatory statement to a newspaper reporter, authorizing or intending its publication, is responsible for any damage caused). The Court of Appeals has likewise confirmed that a person who participates in or procures publication may be held liable for the resulting defamation. *Geraci v. Probst*, 15 N.Y.3d 336, 345 (2010). The publisher's involvement does not break the chain of causation; the originator of the statement remains responsible.

Counterclaim-Defendant contends that the only language directly "quoted" to her is her statement that she was "catatonic." MTD at 10. But the article attributes specific factual accusations to her throughout. It states, *inter alia,* that "***Another woman, Audrey Burns, now 28, said Mr. Lidestri sexually assaulted her when she visited him in New York for a photo shoot. … Mr. Lidestri offered her money beyond what she had been paid for the photo shoot, Ms. Burns said. He then sexually assaulted her with his hands and mouth, she said.***" Counterclaims ¶ 81 (emphasis in original). These statements are attributed directly to

15

Counterclaim-Defendant and were published with her participation and expectation of publication. A speaker does not escape liability merely because a journalist paraphrases rather than directly quotes her words. *See Geraci*, 15 N.Y.3d at 345.

The Counterclaims further allege that Counterclaim-Defendant actively shaped the false narrative she fed to the *Times* – misrepresenting facts that would have undermined her accusations and providing reporters with a deliberately distorted timeline of events surrounding the photoshoot. Counterclaims ¶¶ 96-101. Her participation was not passive. She was the source, the instigator, and the architect of the defamatory account. Finally, on the day of publication, Counterclaim-Defendant linked to the article on her own public Facebook page with the declaratory caption "Here it is!" Counterclaims ¶¶ 88-90. That conduct constitutes adoption and republication of the statements at issue.

### d. <u>The Challenged Statements Are Actionable Statements of Fact Concerning Counterclaimant</u>

Counterclaim-Defendant argues that the statements attributed to her in the article are not actionable because they are not "of and concerning" Counterclaimant or are incapable of defamatory meaning. Both arguments miss the mark.

A statement is actionable if it asserts facts capable of being proven true or false. *Milkovich v. Lorain Journal Co*., 497 U.S. 1, 18-21 (1990). New York courts distinguish fact from opinion by examining whether the language has a precise meaning, is susceptible to proof, and would be understood by a reasonable reader as conveying factual assertions. *Gross v. N.Y. Times Co*., 82 N.Y.2d 146, 153–54 (1993); *see Brian v. Richardson*, 87 N.Y.2d 46, 51-52 (1995).

The Counterclaims identify specific statements in which Counterclaim-Defendant accused Counterclaimant – by name – of sexual assault and related misconduct during a New

16

York photoshoot. Counterclaims ¶ 81. These are not generalized characterizations, rhetorical hyperbole, or commentary on an industry. They are concrete allegations of criminal conduct describing specific acts that either occurred or did not occur. Accusations of criminal sexual assault – particularly those describing specific acts and circumstances – are paradigmatic statements of fact. *See Carroll v. Trump*, 680 F. Supp. 3d 491 (S.D.N.Y. 2023); *Carroll v. Trump*, 590 F. Supp. 3d 575, 591 (S.D.N.Y. 2022).

Counterclaim-Defendant's "of and concerning" argument likewise fails because it focuses on statements the Counterclaims do not challenge. Her motion highlights background descriptions – such as references to Counterclaim-Defendant's personal circumstances – that are not alleged to be defamatory. The Counterclaims do not, for example, contest the article's statement that Counterclaim-Defendant's "life was chaotic." *See* MTD at 11. That statement does not concern Counterclaimant and is not at issue.

The challenged statements are a different matter entirely. Each one directly and explicitly names Counterclaimant and attributes to him specific acts of sexual misconduct. On the face of the article, there is no ambiguity as to the subject of those accusations. The "of and concerning" requirement is therefore satisfied as a matter of law. *See Celle v. Filipino Reporter Enters., Inc*., 209 F.3d 163, 177 (2d Cir. 2000).

e. **The Counterclaims Adequately Plead Defamation *Per Se* and Damages**

Counterclaim-Defendant argues that because Counterclaimant does not specify his current profession, he cannot establish defamation *per se*. This argument misconceives the doctrine and addresses only one of four independent *per se* categories under New York law. Under New York law, a statement constitutes defamation *per se* if it, among other things, charges the plaintiff with a serious crime. *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992);

*Celle*, 209 F.3d at 177 (2d Cir. 2000). The accusation that Counterclaimant sexually assaulted Counterclaim-Defendant falls squarely within that category. It charges him with a serious felony. Whether Counterclaimant's current profession is specified in the pleadings is entirely beside the point – the crime-imputation category alone operates independently of any professional context. *See Liberman*, 80 N.Y.2d at 435. Where a statement is defamatory *per se*, injury is presumed and damages need not be specifically pleaded. *Id*. In any event, the Counterclaims also allege concrete harm, including reputational injury, emotional distress, and economic damages resulting from the nationwide publication and amplification of the accusations. ¶¶ 103-105. Those allegations are more than adequate at this stage.

### D.  Counterclaimant Is a Private Figure; The Public Figure Defense Fails as a Matter of Law

Counterclaim-Defendant attempts to recast Counterclaimant as a public figure in order to invoke heightened constitutional protections.  Counterclaim-Defendant attempts to recast Counterclaimant as a public figure in order to invoke heightened constitutional protections.  The burden rests squarely on Counterclaim-Defendant to establish public-figure status. *Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 136 (2d Cir. 1984). The motion fails under both general and limited-purpose frameworks.

#### a.  The Motion Fails to Establish General Public-Figure Status

Under *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 345 (1974), an individual is presumed to be a private figure unless he has achieved pervasive fame or notoriety such that he is a public figure for all purposes. The Supreme Court has repeatedly emphasized that this classification is rare and exceptional. *See Time, Inc. v. Firestone*, 424 U.S. 448, 454-55 (1976).

The motion identifies no facts suggesting that Counterclaimant possesses the kind of

"general fame or notoriety in the community" required to qualify as a general public figure. *Coleman v. Grand,* 523 F. Supp. 3d 244, 255 (E.D.N.Y. 2021). He holds no public office, wields no governmental authority, and exercises no pervasive influence over public affairs. He is not a media personality, commentator, or industry spokesperson. The Counterclaims allege precisely the opposite: he has not cultivated public notoriety, does not make media appearances, and has not sought public attention. Counterclaim ¶¶ 16-18.

Counterclaim-Defendant's reliance on two self-promotional press releases distributed through an obscure wire service is legally insufficient. Routine business publicity does not transform a private entrepreneur into a "household name," nor does limited professional visibility equate to pervasive fame. Courts have consistently rejected attempts to equate modest business activity with the extraordinary prominence required for general public-figure status. *See, e.g.*, *Lawlor v. Gallagher Presidents' Report, Inc.*, 394 F. Supp. 721, 726–27 (S.D.N.Y. 1975) (being "a high corporate executive in one of the top 100 corporations" insufficient to confer public-figure status) (internal quotations omitted); *Khalil v. Fox Corp.*, 630 F. Supp. 3d 568, 583–84 (S.D.N.Y. 2022) (plaintiff's "role as a businessman does not invite attention and comment that rises to the level of a public figure").

On this record, there is no plausible basis to treat Counterclaimant as a general public figure.

### b.  <u>The Motion Fails to Establish Limited-Purpose Public-Figure Status</u>

Nor does the motion satisfy the Second Circuit's two-part test for limited-purpose public figures: (1) the existence of a public controversy, and (2) voluntary injection into that controversy in a manner intended to influence its outcome. *Lerman*, 745 F.2d at 136-37. The motion fails on both prongs.

First, there was no preexisting public controversy into which Counterclaimant purportedly injected himself. The alleged "controversy" arose only after Counterclaim-Defendant and others provided false accusations to *Times* reporters in late 2024. Counterclaims ¶¶ 75-81. A controversy manufactured by the very accusations giving rise to the defamation claim cannot serve as the predicate for public figure status – that would allow a defamer to bootstrap her own false statements into a constitutional shield. *See Wolston v. Reader's Digest Ass'n*, 443 U.S. 157, 167 (1979); *Firestone*, 424 U.S. at 454-55.

Second, there is no allegation that Counterclaimant voluntarily sought to influence any public debate. Second, there is no allegation that Counterclaimant voluntarily sought to influence any public debate. The motion's suggestion that he "thrust himself" into a controversy by responding to reporters is legally backwards. MTD at 17. Responding to press inquiries about accusations leveled against oneself is not voluntary injection; it is self-defense. *Firestone* squarely rejected the proposition that engaging with the press after being drawn into public attention converts a private individual into a public figure. 424 U.S. at 454-55.

The assertion that Counterclaimant "thrust himself into the child pornography business" is both factually false and doctrinally incoherent. MTD at 16. The Counterclaim alleges that he operated lawful, subscription-based websites decades ago and has not sought public attention concerning those activities. Operating a lawful business in the past does not constitute voluntary participation in a contemporary public controversy, nor does it demonstrate an intent to influence public debate.

### E.  New York's Anti-SLAPP Statute Does Not Apply

Counterclaim-Defendant's attempt to shoehorn New York's anti-SLAPP statute into this Rule 12(b)(6) motion is both legally barred and analytically unsupportable.

As a threshold matter, the Second Circuit has squarely held that state anti-SLAPP procedural mechanisms that impose heightened dismissal standards conflict with Federal Rules 12 and 56 and do not apply in federal court. *La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020); *see also Carroll*, 590 F. Supp. 3d 575. Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law but federal procedural rules. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Where a Federal Rule of Civil Procedure answers the question in dispute, it governs. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). Federal Rules 8 and 12 comprehensively govern pleading sufficiency and dismissal standards in this Court. To the extent New York's anti-SLAPP statute purports to impose a different or heightened standard at the dismissal stage, it yields to those Federal Rules. The sole question on this motion is plausibility – whether the Counterclaims allege facts that, if proven, would entitle Counterclaimant to relief.

To the extent Section 76-a of the New York Civil Rights Law has any role in this action at all, it sets the ultimate burden of proof applicable to certain defamation claims at trial. It does not displace Rule 8 or Rule 12(b)(6), and it provides no basis for dismissal at the pleading stage.

Moreover, Counterclaimant does not concede that Section 76-a governs this action in the first instance. New York's anti-SLAPP statute was enacted to protect New York citizens' right to participate freely in public processes – a policy concern the New York courts have recognized as directed squarely at New York speakers. *See, e.g., Allan & Allan Arts Ltd. v. Rosenblum*, 201 A.D.2d 136, 143–44 (N.Y. App. Div. 1994) ("The Legislature has declared that the right of New York citizens to participate freely in the public process must be safeguarded with great diligence."). Counterclaim-Defendant is a resident of Oklahoma, not New York. Counterclaims ¶ 5. She is not a New York citizen seeking protection from a retaliatory suit designed to chill her

participation in New York's public processes. The statute's core policy rationale simply does not apply to her circumstances, and Counterclaimant does not concede that an Oklahoma resident who provided false accusations to a New York newspaper would be entitled to invoke New York's anti-SLAPP protections even if the statute could otherwise be applied in federal court. The Court need not resolve that choice-of-law question at this stage, however, because the Counterclaims survive dismissal under any applicable standard.

**F.** **Even if Public-Figure Status or § 76-a Applied, The Counterclaims Plausibly Allege Actual Malice**

Even assuming arguendo that Counterclaimant were deemed a public figure, or that New York's anti-SLAPP statute applied, the Counterclaim adequately pleads actual malice under the constitutional standard articulated in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).

Actual malice requires that a defendant acted with knowledge of falsity or with reckless disregard for the truth. *Id.*; *see Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657 (1989). At the pleading stage, the Court does not determine whether actual malice has been proven by clear and convincing evidence. The question is whether the complaint alleges facts that, if credited, permit a plausible inference of knowing falsity or reckless disregard. *Palin v. New York Times Co.*, 113 F.4th 245, 259–60 (2d Cir. 2024); *Biro v. Condé Nast*, 807 F.3d 541, 546 (2d Cir. 2015) (public-figure plaintiff must plead "plausible grounds to infer actual malice").

The Counterclaims satisfy that standard – and then some.

The Counterclaims allege that Counterclaim-Defendant provided the *Times* with materially false and internally inconsistent timelines of core events – timelines she later repeated in litigation filings. Counterclaims ¶ 97. They further allege that she presented photographic images to reporters as purported corroboration of events she claimed occurred before the

22

photoshoot, when in fact the photographs were taken afterward. *Id.* ¶ 98. The pleading alleges that she asserted she was left alone with Counterclaimant, notwithstanding her mother's documented presence and participation throughout both days of the shoot. *Id.* ¶ 101. It alleges that she advanced an age-based narrative asserting that Counterclaimant began working with her when she was substantially younger than contemporaneous records reflect. *Id.* ¶ 100. And it alleges that she omitted the fact that she and her mother enthusiastically invited Counterclaimant back for a second photoshoot shortly after the first – conduct the Counterclaims describe as inconsistent with her subsequent claim that she feared him or sought to avoid him. *Id.* ¶ 99.

Counterclaim-Defendant's assertion that the Counterclaims' allegations of actual malice are "wholly conclusory" is therefore unsustainable. MTD at 19. The Counterclaims set forth specific factual inconsistencies and affirmative misrepresentations that, if proven, would satisfy the constitutional standard. A reasonable jury could conclude from these pleaded facts that Counterclaim-Defendant either knew her accusations were false or acted in reckless disregard of the truth. That is precisely what the pleading standard requires. *See Biro*, 807 F.3d at 546; *Palin*, 113 F.4th at 259–60.

Thus, under any heightened framework requiring allegations of actual malice, the Counterclaims survive.

## CONCLUSION

For all the foregoing reasons, Counterclaimant respectfully requests that the Court deny Counterclaim-Defendant's motion to dismiss in its entirety, together with such other and further relief as the Court deems just and proper.

23

Dated: February 26, 2026
       Brooklyn, New York

                                   Respectfully submitted,

                                   **LEWIS & LIN, LLC**

                                   /s/ David D. Lin
                                   David D. Lin, Esq.
                                   77 Sands Street, 6th Floor
                                   Brooklyn, NY 11201
                                   Tel: (718) 243-9323
                                   Fax: (718) 243-9326
                                   David@iLawco.com
                                   *Attorneys for Defendant /*
                                   *Counterclaimant*

## Certificate of Compliance with Word Count Requirement

I, David D. Lin, an attorney duly admitted to practice law, hereby certify that this Memorandum of Law complies with the word count limit set forth in Local Civil Rule 7.1(c), because it contains 6609 words excluding the table of contents, table of authorities, this certification, and the case caption. In preparing this certification, I have relied on the word count of the word- processing system used to prepare this certification.

Dated: February 26, 2026
      Brooklyn, NY

*/s/ David D. Lin*
David D. Lin, Esq.
