June 22, 2026

**Via ECF**
Hon. Judith C. McCarthy
United States Chief Magistrate Judge

*Re:*     ***Audrey Burns v. James Lidestri***
***Civ No. 25-cv-07474-KMK***
***Joint Letter Relating to Discovery***

Dear Judge McCarthy,

Please accept this letter pursuant to Your Honor's June 8, 2026 Order requiring submission of a joint letter relating to discovery disputes by June 22, 2026.

1. **General Discovery Issues.**

**PLAINTIFF'S POSITION:**
Plaintiff has initiated a lawsuit against Defendant for, among other things, his capturing and dissemination of her intimate imagery online when she was a minor.  Plaintiff has served document demands, interrogatories, and requests to admit upon Defendant and, in turn, has received little to no responsive information or documents.

Defendant's July 14, 2025 (Exhibit 1) Declaration is crucial to understanding the outrageousness of Defendant's production and responses to date.  In that declaration, Defendant admitted that he built multiple websites on which photographs of minors appeared; that Plaintiff was among the models who he hosted and photographed at his home in New York; that Plaintiff was sixteen when he photographed her there; that he became acquainted with Plaintiff through a photographer he met on a photography-model forum; that he launched Burns on his website in March 2013; that March 2013 marked "the first payment ever to the photographer and Burns[;]" that Burns and her mother signed a contract provided to them by Lidestri; that his company paid for "everything" on that trip; that Burns and her mother were in town from Thursday until Sunday; that he reserved a hotel room for Burns and her mother for one night; that Lidestri flew to San Diego, CA the same day Burns and her mother flew home; that Defendant again photographed Plaintiff in Oklahoma six weeks later; and that all payments to Burns originated from Lidestri's Wells Fargo Bank accounts.  Importantly, Defendant's Declaration includes confirmation numbers for two hotel rooms and his exact itinerary from his flight to San Diego. Given thirteen years have passed since Plaintiff visited Defendant's home, it is all but inarguable that the confirmation numbers, dates, sequence of events, and other information came from documents within Defendant's possession and control.  Nevertheless, Plaintiff has received no responsive documents, no responsive interrogatory responses, and responses to her requests for admission that are evasive at best.

**DEFENDANT'S POSITION:**

June 23, 2026
Page 2

These disputes are narrower than Plaintiff's rhetoric suggests, and they do not arise from withholding. This case concerns photography ventures Defendant wound down years ago and events alleged more than a decade ago. Defendant served timely responses and produced the responsive, non-privileged materials within his possession, custody, or control. Plaintiff's premise – that Defendant must be hiding a trove of records – mistakes the absence of decade-old materials for suppression. Defendant canceled the associated hosting and email accounts when the ventures closed, and in June 2019 physical media containing the only remaining photographs, videos, contracts, and correspondence were stolen in a residential burglary. Defendant produced the police report and related materials at JL000418-JL000422.

Plaintiff's reliance on Defendant's July 14, 2025 declaration from a prior action between the parties proves the opposite of what Plaintiff suggests: the declaration reflects recollection, not a surviving archive. The confirmation numbers Plaintiff repeatedly cites were found in Defendant's personal calendar and produced on June 19, 2026 at JL000423-JL000426. Plaintiff omits that production. Defendant has produced the responsive documents he has and provided the information he can recall in response to Plaintiff's interrogatories and RFAs.

The live disputes are Plaintiff's own refusals. Plaintiff still has not identified the particular images or videos on which her claims and damages rest; has not provided a usable damages computation; and has not produced original/source materials, URLs, metadata, or custodian information sufficient to test whether specific images were taken when she was under 18, appeared on Defendant's sites, or were disseminated from some other source. Those issues are addressed in Defendant's affirmative issues below.

## Specific Issues

### I.   PLAINTIFF'S DOCUMENT DEMANDS

**Plaintiff's Position:**

Plaintiff's Document Demands are annexed hereto as Exhibit 2.  Broadly speaking, Plaintiff seeks documents relating to Defendant's Teen Starlet enterprise – including communications, images, financial information, website records, contracts, and other documents relevant to Plaintiff's claims.  In response, Defendant has produced 422 pages, only five of which are not publicly available online.  Defendant's document production falls into three categories: 1) publicly available profiles and news articles (JL 1-71); 2) the entire publicly filed court docket of the lawsuit Defendant initially brought against Plaintiff (JL 72-417); and 3) the supporting deposition for a police report dated June 25, 2019 (JL 418-422).

While Plaintiff has received no responsive information, the most egregious deficiencies include: 1) communications between the parties and between Defendant and photographers concerning Plaintiff, between Defendant and Plaintiff's mother, and any other communications concerning Plaintiff (Req. 1-4); 2) photographs, videos, contracts, and business records concerning Plaintiff (Req. 5-8); Defendant's financial records pertaining to Plaintiff and his series of teen model websites (Req. 13-19); website-related documents such as subscriber records, archival copies,

June 23, 2026
Page 3

and documents relating active and inactive teen model websites (Req. 20-25); travel records and photoshoot documents relating to Plaintiff (Req. 26-31); and aliases, online accounts, and photographer-model forums used by Defendant (Req. 52-54).

Plaintiff has sent two letters relating to the document demand deficiencies (Exhibit 3 and Exhibit 4). Generally speaking, Defendant has objected, stating he will conduct a reasonable search for nonprivileged responsive documents and produce same (Exhibit 5), however none have been disclosed. It would appear that Defendant intends to claim that each and every responsive document was lost in the 2019 theft of his electronic devices. Plaintiff's June 17, 2026 letter (Exhibit 4) details why such an excuse is meritless as 1) the documents – like financial records, e-mails, social media exchanges, business entity documents, domain information, etc. – would be stored on third party servers, not Lidestri's stolen cameras and flash drives; and 2) a recent subpoena response conclusively established Lidestri's ownership of Teenstarletgallery.com, a website which was selling images of Plaintiff which were "NOT remastered or altered from the way they were originally released" as recently as 2022 (Exhibit 6), demonstrating his possession of unaltered images post-alleged theft. Plaintiff has also recently come to discover Defendant's relationship with The Morganelli Group LLC, a company which was defending Defendant's online copyrights as recently as August 12, 2020. Paired with Defendant's inclusion of confirmation numbers and detailed itineraries from 2013 in his July 14, 2025 declaration, Defendant cannot reasonably assert he does not have access to any of these documents. Nevertheless, Plaintiff has received nothing. It is unclear if he wishes Plaintiff to believe he committed the confirmation numbers to memory or is asserting they are not relevant even though he included them in his July 14, 2025 declaration. Neither is persuasive.

### **Defendant's Position:**

Plaintiff again mistakes absence for withholding. The historical materials were lost when the ventures closed more than a decade ago and in the 2019 burglary; they are not within Defendant's possession, custody, or control, and Defendant need not subpoena non-parties to recreate them. Defendant searched his accessible accounts and produced what he located, including calendar entries bearing the confirmation numbers Plaintiff repeatedly cites. Defendant's June 18 meet-and-confer response explains this in detail. *See* Ex. A at 1-2. In short:

- **Requests 1-4 (communications).** No responsive emails or texts with Plaintiff or her mother exist in Defendant's possession; the venture email accounts closed long ago, and a search of his accessible accounts, including GiacomoPhotography, located none. Any such communications reside equally in Plaintiff's own accounts.

- **Requests 5-8 (photographs, videos, contracts, business records).** Defendant does not have any such documents in his possession, custody, or control. These materials were lost in the wind-down and subsequent burglary. The Morganelli Group was a DMCA-takedown software vendor, not a source of Burns materials; Defendant did not operate Teenstarletgallery.com, and the claim that he sold Plaintiff's images there in 2022 is false and unsupported, as Defendant explained in his June 18 meet-and-confer response. *See* Ex. A at 1-2.

June 23, 2026
Page 4

- **Requests 13-19 (financial).** No additional underlying records exist within Defendant's possession, custody, or control; the venture's Wells Fargo account was closed and Defendant cannot access closed-account records. Plaintiff's "recent renewal" premise is wrong (last renewal in or about 2021). Her demand for bank, processor, and American Express records seeks third-party materials she can subpoena.

- **Requests 20-25 (websites).** Several listed domains were never Defendant's, including Butterscotchteens.com, Teenglam.net, Honey-cream.com, and Tenderdolls.com, as GoDaddy has confirmed to Plaintiff and as Defendant has explained. *See* Ex. A at 1-2. Others were registered but never operated. Related hosting and email accounts were closed long ago and there are no such records in Defendant's possession, custody, or control.

- **Requests 26-31 (travel/photoshoot).** Defendant produced the travel records and calendar entries he located, including the calendar entries at JL000423-JL000426; no others exist.

- **Requests 52-54 (aliases, accounts, forums).** Defendant searched his accessible GiacomoPhotography account and found nothing responsive.

## II.    PLAINTIFF'S REQUESTS FOR ADMISSION

**Plaintiff's Position:**

Plaintiff has sent a multitude of requests for admission which, generally speaking, ask Defendant to admit that certain images were part of certain sets and that those sets appeared on one or more of Lidestri's websites.  Other requests for admission, however, call upon Defendant to admit other factual details about his relationship with Plaintiff or the photographs themselves, including: "Admit that Exhibit [numerous identifiers] was photographed by You at Your home in Hopewell Junction, New York." For each and every such request, Defendant answered "After reasonable inquiry, Defendant lacks knowledge or information sufficient to admit or deny this Request.  The information known or readily obtainable by Defendant is insufficient to permit an admission or denial."  Respectfully, as Plaintiff indicated in her May 14, 2026 letter (Exhibit 7), the images depict Defendant's backyard, his bedding, his furniture, and identifiable features in his home such as his kitchen and bathtub.  For example, RFA 314 references a photoshoot that occurred in Defendant's bathroom, a unique tub with unique wall art.  RFA W-2 clearly shows Defendant's living room, yard, and pool in the background of the images (Exhibit 8[1]). Despite this, Defendant refused to admit or deny the images were taken on his property.

More so, Rule 36(a)(4) requires a responding party to state that it has made "reasonable inquiry" and that the information "known or readily obtainable" is insufficient. Defendant's own personal knowledge of events he participated in constitutes information "known" to him. A blanket claim of insufficient knowledge as to photographs Defendant personally took – especially photographs he took in his own home – is not a good faith response.

---

[1] Additional redactions to Exhibit 8 were made than the ones originally disclosed to Defendant to protect our client's identity.  Furthermore, on May 14, 2026, links containing the images in the RFA were sent to Defendant.  The links, sent pursuant to court order, led Defendant to the larger, unredacted images.

June 23, 2026
Page 5

---

**Defendant's Position:**

Defendant answered each of Plaintiff's *several hundred* RFAs, admitting what he could from personal knowledge – including that he photographed Plaintiff and operated certain websites – and stating insufficient knowledge only where Plaintiff's altered, unsourced exhibits, unsupported by native files or metadata, cannot be authenticated or mapped to a set, author, location, or publication more than a decade later. Rule 36 does not require guessing. Plaintiff's source URLs are third-party repost links that establish neither authorship nor date, and Defendant should not be forced to admit the precise facts in dispute.

Defendant offered targeted supplementation if Plaintiff identifies materials linking an image to a set, location, or publication. *See* Ex. A at 3-5. She has declined to do so. This mirrors the issue with Defendant's Interrogatory No. 9 response (discussed below): Plaintiff cannot refuse to identify the works while demanding that Defendant catalog and authenticate them. Blanket supplementation should be denied.

## III.    PLAINTIFF'S INTERROGATORY REQUESTS

**Plaintiff's Position:**

Defendant's responses to Plaintiff's interrogatories are just as devoid of substance. Indeed, when asked in Interrogatory No. 7 to identify the "model agent who hired many of the models" who he indicated in his July 14, 2025 declaration was "prepared to attest to [his] reputation" Lidestri objected based on "Your Declaration dated July 14, 2025" being an undefined term which was vague and ambiguous. Defendant's objections (Exhibit 9) speak for themselves. When asked to identify and describe financial records relating to Plaintiff, Defendant objected, asserting it was duplicative of Plaintiff's document demands (Interrogatory No. 14). As a result, Plaintiff has provided no information and no documents about relevant financial records. Defendant's response to Interrogatory 15 was that he did not possess any documents relating to the purchase, registration, or operation of the Teen Starlet websites, however a recently responded to subpoena from GoDaddy proved otherwise.

**Defendant's Position:**

Plaintiff's three interrogatory complaints do not warrant relief, and one is moot.

- **Interrogatory No. 7** (the "model agent") is a discrete issue: Defendant has already stated he will supplement by naming the individual.

- **Interrogatory No. 14** (financial records) is duplicative of document demands and overbroad to the extent it seeks bank, tax, processor, American Express, and similar records not in Defendant's possession, custody, or control. Defendant does not have the underlying bank records Plaintiff seeks. To avoid an unnecessary dispute, however, Defendant is willing to produce his relevant tax returns and/or a summary of 1099 payments made to Plaintiff to the

extent he is able. Plaintiff's demand for Wells Fargo, American Express, processor, and similar third-party records is third-party discovery, not a basis to compel Defendant to produce records he does not possess or control.

- **Interrogatory No. 15** asks Defendant to identify and describe all documents relating to the purchase, registration, hosting, operation, and shutdown of each Teen Starlet website over a lengthy period. Defendant objected to that overbroad formulation and answered, after reasonable inquiry, that he does not presently have responsive documents in his possession, custody, or control. The GoDaddy subpoena production does not create records in Defendant's possession, custody, or control; if anything, it narrows the issue by providing registrar information for the domains Plaintiff chose to pursue and confirming that several listed domains were never Defendant's and others were never operated. Any other third-party registration records are equally available to Plaintiff.

The Court should deny Plaintiff's request for broad interrogatory relief.


## DEFENDANT'S AFFIRMATIVE DISCOVERY ISSUES

Plaintiff has maintained objections or refused to respond to the requests below. Separately, Plaintiff agreed at the parties' May 18, 2026 meet-and-confer to produce documents and serve supplemental responses across numerous categories, memorialized in writing that day and never disputed. *See* Ex. B. Defendant does not move to compel those conceded items now. To the extent Plaintiff does not produce or supplement, however, Defendant asks that Plaintiff be precluded from relying on any such documents or information at summary judgment or trial.

## Plaintiff's Position:

Plaintiff disputes Defendant's characterization of the parties' discovery communications and the scope of any purported agreements reached during the May 18, 2026 meet-and-confer. To the extent Plaintiff agreed to supplement particular responses or produce additional materials, Plaintiff has done so, is in the process of doing so, or will supplement in accordance with her obligations under the Federal Rules of Civil Procedure.

Plaintiff further objects to Defendant's request for a blanket preclusion order. Preclusion is an extraordinary remedy that is neither warranted nor proportional here. Plaintiff has participated in discovery, served written responses, produced documents, supplemented her responses, and articulated specific objections where appropriate. Defendant identifies no willful failure to comply with a court order that would justify the sweeping sanction he seeks.

Accordingly, to the extent Defendant seeks a general order precluding Plaintiff from relying on documents, information, witnesses, or damages evidence based upon disputed discovery issues or alleged supplementation deficiencies, such relief should be denied.

For items where Plaintiff maintains objections, Defendant seeks the following relief:

June 23, 2026
Page 7

### A.  Defendant's Interrogatory No. 9 - Identification of the Works at Issue.

Plaintiff demands at least $150,000 per depiction across the "no fewer than 88" sets and "at least 54" videos she alleges, yet refuses to identify which images and videos she actually claims, calling identification "more appropriate for document production." *See* Ex. C at 4; Ex. D at 14-16. That is not workable: without item-level identification, Defendant cannot test authorship, age, source, publication, damages, or whether the same images came from later third-party platforms. Defendant asks that Plaintiff be compelled, by a date certain, to identify each photograph, video, or image for which she seeks relief and, for each item, provide the Bates number or file name, source URL/platform, current custodian or person with possession/control, whether Plaintiff seeks statutory damages for that item, whether Plaintiff possesses any native/original file or metadata, when/how Plaintiff obtained the item, and when it was first published or made available. If Plaintiff does not identify the works by the Court's deadline, she should be precluded from relying on unidentified works at summary judgment or trial.

### Plaintiff's Position:

Defendant's assertion that Plaintiff has refused to identify the images and videos at issue is incorrect. Plaintiff has already identified the works that form the basis of her claims.  Plaintiff has informed Defendant that each set, video, and image included in the Plaintiff's First Set of Requests for Admission to Defendant are the images and videos she alleges are the basis for the "no fewer than 88" sets and "at least 54" videos.

In addition, on April 13, 2026, Plaintiff delivered to Defendant, via courier, two USB drives containing 223 PDF files with the images and video stills at issue. Thereafter, on May 14, 2026, Plaintiff provided Defendant with a document containing 163 links to the image sets, videos, and photographs that Plaintiff contends form the basis of her claims.

Accordingly, Defendant possesses the images, videos, and links Plaintiff relies upon and has been provided with ample information to identify and investigate the works at issue. To the extent Defendant seeks additional information regarding particular images or videos, such information may be obtained through *in camera* review. Defendant's request for an order compelling further identification and for preclusion of unidentified works is therefore unwarranted, especially considering the Defendant created, owned, controlled, and maintained the videos and images.

### B.  Defendant's Interrogatory No. 13 / Rule 26(a)(1)(A)(iii) - Damages Computation.

Plaintiff's amended initial disclosures and interrogatory response still do not provide a damages computation. Plaintiff says she seeks at least $150,000 per visual depiction but does not identify the number of items, the per-item damages universe, or the aggregate statutory-damages amount. Plaintiff also asserts $15 million in emotional-distress damages and $15 million in punitive damages without a present methodology. *See* Ex. C at 4-5; Ex. D at 19-22.

June 23, 2026
Page 8

Plaintiff's intent to rely on expert testimony later does not satisfy her current Rule 26(a)(1)(A)(iii) obligation. Defendant asks that Plaintiff be compelled to supplement Interrogatory No. 13 and her Rule 26 disclosures with a current computation for each damages category, including the number and identification of images/videos for which statutory damages are sought, the aggregate amount claimed, the methodology for emotional-distress and punitive damages, any present economic-loss computation, and the documents, persons, or facts on which Plaintiff relies. If Plaintiff does not provide a computation, she should be precluded from relying on undisclosed damages theories, amounts, or supporting materials at summary judgment or trial.

**Plaintiff's Position:**

Plaintiff has identified the visual depictions presently known to form the basis of her claims and has disclosed the categories of damages sought. To the extent Plaintiff seeks statutory damages, the governing statute provides the applicable measure of damages, and the amount recoverable depends on the number of actionable visual depictions ultimately established through discovery and proven at trial. Defendant possesses the visual depictions at issue and is fully capable of calculating the statutory-damages exposure based on the statutory amount applicable to each qualifying depiction.

Plaintiff has also disclosed that she seeks compensatory damages for emotional distress and punitive damages. These categories of damages are not presently susceptible to a precise mathematical computation and depend upon evidence developed through discovery and the factfinder's assessment of the nature, extent, and consequences of Defendant's conduct. Rule 26(a)(1)(A)(iii) does not require a plaintiff to provide a formula for inherently non-economic damages or to predict a future punitive-damages award.

Plaintiff will continue to supplement her disclosures pursuant to Rule 26(e) as additional information becomes available. Defendant's request for an order compelling a more specific computation and for preclusion of damages evidence is therefore unwarranted.

### C. **Defendant's Interrogatory Nos. 11, 15, and 16.**

Plaintiff should provide full responses to Interrogatory Nos. 11, 15, and 16. Interrogatory No. 11 seeks the existence, current location, and custodian of post-Defendant agreements with photographers, producers, companies, or content platforms, including agreements relating to publication, distribution, or sale of Plaintiff's photographs or videos. That information is relevant to attribution, alternative causation, mitigation, and damages. *See* Ex. D at 16-19.

Interrogatory No. 15 is limited to social-media accounts that contain or may contain information relating to the pleadings, allegations, claimed damages, the Articles, or this action. That information is relevant because Plaintiff alleges online dissemination and damages tied to publication; responsive accounts may identify source URLs, reposting, communications, mitigation, and third-party dissemination that Plaintiff attributes to Defendant.

June 23, 2026
Page 9

Interrogatory No. 16 seeks account-level information for OnlyFans or similar subscription platforms, including the location and custodian of account data, revenue records, subscriber records, and content archives. *See* Ex. D at 22-25. Identification of these accounts and custodians is relevant for the same reasons as RFP No. 62 (discussed below): Plaintiff has put reputation, emotional distress, economic loss, causation, and mitigation at issue, and platform activity may bear directly on source attribution and damages.

**Plaintiff's Position:**

Plaintiff objects to these interrogatories as overbroad, not proportional to the needs of the case, and seeking information that is not relevant to any claim or defense.

As to Interrogatory No. 11, Defendant seeks agreements relating to Plaintiff's adult modeling and content-creation activities occurring years after the conduct at issue in this action. Plaintiff's claims arise from Defendant's exploitation and abuse of Plaintiff as a minor. Contracts entered into by Plaintiff as an adult are not relevant to whether Defendant engaged in the alleged conduct or to the damages resulting therefrom. To the extent Defendant contends that any particular agreement bears on a specific damages defense, Defendant has not identified any basis for such contention beyond speculation.

As to Interrogatory No. 15, Plaintiff is attempting to regain access to the Facebook account identified in the pleadings. Plaintiff further objects to Defendant's request for information concerning every social-media account she has maintained over approximately sixteen years that "may contain" information relating to this action. The request is facially overbroad and not proportional to the needs of the case. Plaintiff will identify and produce responsive information from accounts reasonably likely to contain relevant information concerning the allegations, damages, or other issues actually in dispute.

As to Interrogatory No. 16, Plaintiff objects to Defendant's demand for information regarding OnlyFans and other subscription-platform accounts. Plaintiff's adult content-creation activities are not the subject of this lawsuit and are not relevant to whether Defendant exploited Plaintiff as a minor. Plaintiff maintains her objection to Defendant's demand for her OnlyFans information as, again, the modeling work she undertook as an adult is not relevant to the damages inflicted by Lidestri.  The fact that Defendant has homed in on Plaintiff's work on OnlyFans rather than her employment, generally, demonstrates the intent behind his demand..

  **D. Defendant's Request for Production No. 62. Plaintiff's limitation on RFP No. 62 is insufficient.**

Plaintiff admits she has maintained an OnlyFans account since 2022 and generated revenue from it by posting explicit content, while claiming reputational harm, emotional distress, economic loss, causation, and substantial damages. *See* Ex. C at 4-5; Ex. E at 1-2. Plaintiff offered only subscriber communications referencing Lidestri, the Websites, the Allegations, or the Articles, plus summary revenue information – materials she still has not produced even under that limitation. Plaintiff should not be permitted to impose a unilateral limitation that withholds the records needed to test her claims. Defendant does not seek unrelated adult content for its own

June 23, 2026
Page 10

sake. He seeks account registration records, subscriber counts, revenue records, payout histories, content/source information, and relevant communications sufficient to test damages, attribution, alternative causation, and mitigation. These materials are relevant and proportional, and any legitimate privacy concern is addressed by the Protective Order.

**Plaintiff's Position:**

Plaintiff objects to Request for Production No. 62 as overbroad, disproportionate to the needs of the case, and seeking information that is not relevant to any claim or defense.

As discussed above, Plaintiff's adult content-creation activities are not the subject of this action. Plaintiff's claims arise from Defendant's alleged exploitation and abuse of Plaintiff as a minor, not from Plaintiff's lawful activities as an adult years later. Defendant's request for account-registration records, subscriber information, payout histories, content records, and other account-level data seeks extensive discovery into collateral matters that bear no meaningful relationship to the claims asserted in this case.

Contrary to Defendant's characterization, Plaintiff did not agree to produce OnlyFans account records or subscription-platform account information. On May 18, 2026, Plaintiff expressly amended her response to object to producing "any OnlyFans and subscription-platform accounts, and related revenue/account information on the basis of relevance." See Defendant's Exhibit B.

To the extent Defendant contends that Plaintiff's adult content-creation activities are relevant to causation, mitigation, reputational harm, emotional distress, or economic damages, such contention does not justify wholesale discovery into years of account activity. The existence of a Protective Order does not render otherwise irrelevant information discoverable.

Accordingly, Plaintiff maintains her objections and respectfully submits that no further response should be required.

Respectfully submitted,

*/s/ Daniel S. Szalkiewicz*

_____
Daniel Szalkiewicz
**Veridian Legal P.C.**
23 W. 73rd Street, Suite 102
New York, New York 10023
daniel@lawdss.com
*Attorney for Plaintiff Audrey Burns*

_/s/ David Lin_____
David Lin
**Lewis & Lin LLC**
77 Sands Street, 6th Floor
Brooklyn, NY 11201
david@iLawco.com
*Attorney for Defendant James Lidestri*