# LEWIS & LIN LLC

77 SANDS STREET, 6TH FLOOR
BROOKLYN, NY 11201
TEL: (718) 243-9323  FAX: (718) 243-9326
WWW.ILAWCO.COM

Michael D. Cilento, Esq. | Michael@iLawco.com | 347-404-5844

*VIA ELECTRONIC FILING SYSTEM*

August 11, 2026

Hon. Judith C. McCarthy
The Hon. Charles L. Brieant Jr. Federal Building
300 Quarropas Street
White Plains, NY 10601-4150

>      **Re:**     ***Burns v. Lidestri*, Case No.: 7:25-cv-07474-KMK-JCM**
>      **Defendant's Response to Plaintiff's Proposed Order Directing Custody**
>      **and Inspection Protocol (ECF No. 50)**

Dear Judge McCarthy:

We represent Defendant/Counterclaimant and respond, pursuant to the Court's August 4, 2026 Order (ECF No. 49), to Plaintiff's proposed custody-and-inspection order (ECF No. 50). While Defendant disputes Plaintiff's characterization of the files as CSAM and her assertions concerning their source, authorship, publication, and attribution, Defendant does not oppose a secure, court-supervised protocol for the files Plaintiff alleges constitute CSAM, pending resolution of the parties' disputes – provided the protocol does not hinder Defendant and his retained counsel and experts from meaningfully viewing, analyzing, and addressing the materials on which Plaintiff's claims rest.

Defendant does not object in principle to using the White Plains Police Department ("WPPD") or another government forensic repository. Plaintiff's proposed order, however, should not be entered as presently drafted because it does not establish that WPPD has agreed – or is prepared – to receive, retain, and provide meaningful civil-discovery access to these materials.

Plaintiff's letter describes informal conversations with WPPD personnel and counsel's resulting belief that the proposed procedure will work. At the same time, Plaintiff acknowledges that the personnel available at intake may be unfamiliar with the procedure or unable to accept and maintain the materials. (ECF No. 50 at 1.) The proposal supplies no written institutional acceptance, identified custodian or property number, inventory or intake procedure, security and access terms, treatment of the resulting police report and records, or disposition procedure. It also leaves WPPD without any defined obligation to provide the access contemplated by the proposed order. Plaintiff's reliance on *Doe v. Board of Education of the Pecos Independent School District*, 2023 U.S. Dist. LEXIS 199123 (D.N.M. Nov. 6, 2023), does not eliminate those gaps: there, the material was already in government custody, the responsible agency had agreed to provide access, and the designated experts reviewed the material by appointment at a government forensic laboratory.

# LEWIS & LIN LLC

Defendant proposes the following limited framework:

1. **Scope.** Plaintiff proposes to deposit her entire collection – 4,502 images and 55 videos – into a police property room. But by her own designations, 2,449 of those images are marked "N/A" and "are not claimed for statutory damages." (ECF No. 47 at 6.) Plaintiff has separately committed, in writing, to "produce directly to Defendant those responsive images that Plaintiff has not identified as CSAM." (ECF No. 46 § II.) The proposed order would nonetheless sweep the conceded files into restricted police custody. They should be excluded from any deposit.

2. **Written WPPD acceptance and intake terms.** Before any litigation-protocol deposit, Plaintiff should obtain written confirmation from an authorized WPPD representative that the Department is willing and authorized to receive, retain, safeguard, and display the exact files for purposes of this civil action. The confirmation should identify the responsible unit and custodian, property or evidence number, accepted media, intake and receipt procedure, available review equipment, hours and appointment procedure, supervision and logging, costs, retention and final disposition, and whether the deposit will create investigative, reporting, disclosure, or public-record consequences. Any protocol should in all events require preservation of the deposited materials through final, non-appealable disposition of this action, consistent with the parties' Protective Order (ECF No. 31 ¶ 10), with any eventual return or disposition documented in writing.

3. **Manifest and integrity controls.** Two thumb drives assembled by counsel cannot, without more, support reliable review or preservation. Before transfer, Plaintiff should provide a non-image spreadsheet manifest identifying each deposited file by stable Bates or video identifier, current filename, file type, byte size, and SHA-256 hash, together with the applicable chart designation and a mechanical crosswalk between each Bates number, JPG, Bates-PDF page, video identifier, MP4, and asserted set title. Exact duplicate files may be grouped by matching hashes, but every Bates and damages designation must remain preserved. Because the manifest contains no imagery, it should be served on all counsel directly, so identifier-level review can proceed without any facility visit. WPPD should verify the received file set and provide a signed intake receipt.

4. **Meaningful inspection.** WPPD should provide reasonable and repeat appointments for named defense counsel and qualified experts to review the files on custodian-controlled, isolated, read-only equipment capable of displaying the JPGs, playing the MP4s, and showing the associated non-image metadata and hash information. No image or video may be copied, photographed, altered, or included in any report. Reviewers should, however, be permitted to take written non-image notes and prepare non-image work product identifying files, metadata, hashes, and conclusions. Supervision should be administrative rather than observational: a custodian representative may remain available immediately outside the review room, but continuous observation of counsel's or an expert's file selections and note-taking would expose attorney work product – a concern not presented in *Pecos*, where the monitor also served to protect the identities of non-party minors appearing in the seized material. Inspection should begin promptly after any deposit and conclude sufficiently in advance of Plaintiff's deposition and the September 30, 2026 close of fact discovery.

2

# LEWIS & LIN LLC

If WPPD cannot timely accept the material and provide meaningful inspection on those terms, Plaintiff should identify another accepting government or law-enforcement forensic repository or a technical custodian supported by written government-custodian authorization, a declaration addressing the proposed custodian's authority and technical architecture, and a particularized order governing access, security, reporting, retention, and termination.

Plaintiff should initially bear the baseline external costs of segregation, transfer, intake, custody, storage, ordinary access, logging, and closeout associated with Plaintiff's requested exceptional handling method. Each party should bear its own counsel and expert fees, Defendant should bear any defense-only optional enhancements, and later reallocation should remain without prejudice. *See* Fed. R. Civ. P. 26(c)(1)(B) (protective order may specify terms for discovery, "including time and place or the allocation of expenses"); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978).

Accordingly, Defendant respectfully requests that the Court decline to enter ECF No. 50's proposed order as submitted; direct that no deposit be treated as the operative litigation protocol until WPPD's written acceptance and conditions are provided; and direct the parties to submit a revised protocol incorporating the foregoing safeguards.

Nothing in the protocol, any deposit, or Defendant's participation in an inspection should constitute a concession concerning whether any file is CSAM, Plaintiff's identity or age, authenticity, source, authorship, publication, prior custody, attribution to Defendant, causation, damages, or any position preserved in ECF No. 47.

We thank the Court for its attention to this matter.

Respectfully submitted,

Michael D. Cilento, Esq.

3