# Exhibit 12

Gmail Daniel Szalkiewicz <daniel@lawdss.com>

# Re: Burns v Lidestri - Proposed Protocol Update

1 message

**Daniel Szalkiewicz** <daniel@veridianlegal.com> Sun, Aug 30, 2026 at 8:43 PM
To: Mike Cilento <michael@ilawco.com>
Cc: Cali Madia <cali@veridianlegal.com>, "David D. Lin" <david@ilawco.com>

Mike,

Thank you for laying out Defendant's concerns in detail. It is unfortunate that we have not been able to reach agreement, particularly given the amount of time Cali has spent attempting to identify a law-enforcement agency willing to serve as custodian after White Plains declined to do so. We have worked extensively with the FBI on this issue, and the Hudson Valley Resident Agency has approved the protocol that we circulated.

To address the points in your email:

First, while I understand your concern that the FBI is a non-party federal agency, the practical issue here is different from a situation in which the Court is attempting to compel an unwilling agency to act. The FBI has affirmatively agreed to accept the USB drives and to operate pursuant to the proposed protocol. We therefore do not see the enforceability concern you identify as presenting a practical obstacle to implementation.

Second, I agree that New Windsor is not an ideal location. It is equally burdensome for our office, and we would have preferred White Plains as well. Unfortunately, after White Plains declined to serve as custodian, the FBI advised us that the Hudson Valley Resident Agency in New Windsor is the office that can accommodate this request. The location does have the benefit of being substantially closer to Dutchess County, where your client alleges in his counterclaims that he is domiciled. In any event, we are not proposing New Windsor because it is convenient to us; it is the law-enforcement option that is actually available.

Third, I am somewhat confused by the concern regarding forensic functionality because Defendant already possesses the original/native files that were produced in discovery. The proposed protocol concerns inspection of the allegedly unlawful images and videos while they are maintained by law enforcement. The FBI has agreed to provide a computer that will permit counsel and experts to access and inspect the contents of the drives.

To the extent you are referring to embedded metadata, directory structure, hashes, or similar technical information, we do not presently understand why those functions need to be recreated through an FBI workstation. We are not disputing that the files placed on the drives are copies of the files produced in this litigation. If there is some particular forensic inquiry that you believe cannot be conducted from the native files already in Defendant's possession, please identify it specifically so that we can understand the issue.

Fourth, you are correct that the draft permits an FBI representative to remain with the expert during review. The language provides that an FBI representative "may remain with the expert during review to ensure enforcement of this protocol." That provision is intended to permit the custodian to ensure that material is not copied, reproduced, altered, or removed; it is not intended to permit the FBI to intrude upon privileged attorney-client communications or attorney work product. If your concern is the wording of that provision, rather than the FBI serving as custodian generally, we are willing to discuss language clarifying that distinction.

Fifth, with respect to final disposition of the drives, I have already explained our position. Given our belief that the material constitutes CSAM, we do not intend to retrieve the drives from the FBI simply because discovery concludes. Irrespective of the parties' disagreement over the inspection protocol, our intention is to transfer possession of this material to law enforcement so that neither our client nor our office continues to maintain physical possession of it. The proposed protocol likewise expressly contemplates the FBI retaining possession until further order of the Court.

As to your final point, our understanding from our communications with the FBI is that the protocol circulated to you has been approved. Cali spent substantial time working through the proposed procedure with the Bureau precisely because we did not want to present the Court with another theoretical solution that the proposed custodian had not

agreed to implement.

Ultimately, this is the best workable law-enforcement solution we have been able to obtain after White Plains declined to participate. We believe using law enforcement as the custodian is the appropriate approach given the nature of the material, and we are fortunate that the FBI has agreed to undertake that role.

I do appreciate that you have now identified your objections with specificity, and if there are discrete provisions that can be clarified without changing the fundamental structure of the protocol, we remain willing to discuss them. Given the Court's August 31 deadline, however, we do not have sufficient time to begin searching for yet another governmental custodian, and we are not willing to transfer the material to a private forensic custodian.

I would ask that you reconsider whether the remaining concerns can be addressed through revisions to the language rather than rejecting the FBI arrangement altogether. However, in the meantime, given the deadline we will advise the Court that the parties have reached an impasse, provide the competing positions, and defer to the Court as to how it wishes us to proceed.

Very Truly Yours,

Daniel S. Szalkiewicz, Esq.

**Veridian Legal P.C.**
23 West 73rd Street, Suite 102
New York, New York 10023
Tel: (212) 706-1007
Direct Dial: (212) 760-1007
Cell: (929) 373-2735
Fax: (646) 849-0033

On Sun, Aug 30, 2026 at 3:51 PM Mike Cilento <michael@ilawco.com> wrote:

> Daniel, Cali,
>
> We have reviewed the proposed HVRA protocol. Defendant does not consent to the FBI serving as custodian or to the protocol as drafted. Our reasons include:
>
> The FBI is a non-party federal agency the Court cannot direct. The draft's obligations on the Bureau to maintain possession, grant access, and provide a computer are not enforceable in this case, while the restrictions on the parties are. Even routine chain-of-custody declarations or testimony from FBI personnel would require a DOJ administrative request under the Touhy regulations, 28 C.F.R. §§ 16.21-16.29.
>
> The location - New Windsor, in Orange County, not Rye as previously represented - is a substantial distance from counsel's offices and the courthouse. That burden is compounded by provisions permitting the FBI to limit review to four hours per day and two people per visit. Review of the images and videos may require numerous trips, yet the protocol provides no assurance of sufficient or timely appointments within the remaining discovery schedule.
>
> The draft requires use of an FBI-provided computer and permits the FBI to bar outside electronic devices. It does not require the provided computer to have the software or functionality necessary to inspect full-resolution files and videos, examine or export embedded metadata, examine file and directory structure, calculate or verify hash values, or correlate the native files to the Bates PDF. Nor does it provide a means to create and preserve a non-image report of those results and the expert's work product.
>
> The draft permits an FBI representative to remain with the expert during review, without protecting counsel's or the expert's selections, communications, notes, mental impressions, or analysis from observation. We are not comfortable having an investigative agency monitor substantive defense work.
>
> The draft contains no return, retrieval, or final-disposition procedure and no limits on the FBI's retention, copying, analysis, disclosure, or use of the materials.
>
> We also have not received a final protocol approved by an official authorized to bind the FBI. To the contrary, we were advised that Bureau approval remains outstanding.