UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AUDREY BURNS, *Plaintiff*, v. JAMES LIDESTRI, *Defendant*. | No. 25-CV-7474 (KMK) OPINION & ORDER |

Appearances:

Cali Madia, Esq.
Daniel S.H. Szalkiewicz, Esq.
Veridian Legal P.C.
New York, NY
*Counsel for Plaintiff*

Michael D. Cilento, Esq.
David D.A. Lin, Esq.
Lewis & Lin, LLC
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Audrey Burns ("Plaintiff") brings this Action against James Lidestri ("Defendant"), alleging violations of several federal criminal statutes under the civil remedy provided in 18 U.S.C. § 2255(a). Defendant brings one counterclaim against Plaintiff for defamation in connection with statements Plaintiff made to the press about some of the conduct alleged in her Complaint (the "Counterclaim"). Before the Court is Plaintiff's Motion to Dismiss Defendant's Counterclaim (the "Motion"). Because the Counterclaim states a plausible claim of defamation, the Court denies the Motion.

## I. Background

### A. Factual Background

The following allegations are drawn from the Counterclaim, and assumed true for the purposes of the Motion. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Defendant "became involved in the glamour photography business" in 2001, "shooting nude photographs of adult female models and building websites for" them called "subscription sites," where a "viewer would pay a fee . . . to access the photo and video content" the websites contained. (Countercl. ¶¶ 20–21 (Dkt. No. 14).) In about 2008, "the mother of a model who was under the age of 18 who also wanted him to conduct photoshoots and build a website for her daughter" contacted Defendant, who agreed under certain conditions, including: clear writing memorializing the agreements, the presence of a parent or guardian for photoshoots of minors, the parent's or guardian's agreement to the minor's poses and attire, a release authorizing the company to post the pictures, and adherence to laws governing the photography of minors. (*Id.* ¶¶ 26, 28.) These websites had "comment moderation feature[s]" that enabled Defendant's employees to delete "inappropriate or hostile user comments" or ban users in "egregious situations," and "models would never receive communications from users on their personal devices." (*Id.* ¶¶ 31–32.)

Defendant and Plaintiff were introduced by a photographer when Plaintiff was 16 years old, "in late 2012 or early 2013." (*Id.* ¶ 37.) At that time, Defendant's subscription site "had been operating for approximately three years, with at least 20 models on the site," the "vast majority of" whom "were between 16 and 21 years old," with "a few" aged 15. (*Id.* ¶ 34.) After Plaintiff and her mother "expressed interest in being added to . . . [the] website," the

photographer, Plaintiff, and her mother "agreed to license some photos" for it, and Defendant's company purchased three sets of photographs. (*Id.* ¶¶ 38–39.)

Plaintiff then traveled to Dutchess County for a photoshoot with Defendant on April 19 and 20, 2013. (*Id.* ¶¶ 42–43.) Plaintiff's mother was "present for both days and was free to be in the studio . . . while the photoshoot was being conducted," signed the contract along with Plaintiff, and approved Plaintiff's attire. (*Id.* ¶¶ 43–44.) Defendant alleges that throughout the photoshoot, "[t]here was no inappropriate physical contact" or "sexual assault[]," and "[n]o alcohol or drugs of any kind were provided." (*Id.* ¶¶ 45–49.) Following the photoshoot, with which Defendant alleges both Plaintiff and her mother were "extremely happy," Defendant took them to Manhattan for shopping and sightseeing at his company's expense and reserved a hotel room for Plaintiff and her mother. (*Id.* ¶¶ 51–54.) Plaintiff and her mother then invited Defendant for a second photoshoot in June 2013 in Oklahoma, where they resided. (*Id.* ¶¶ 56–57.) At this photoshoot, too, as with every photoshoot with Plaintiff, Defendant alleges "[t]here was no inappropriate physical contact," or "alcohol or drugs." (*Id.* ¶¶ 59–61.) And, once again, Plaintiff and her mother "were very happy with the results." (*Id.* ¶ 58.) After additional photoshoots sometime in the year that followed, a final photoshoot took place in July 2014, after Plaintiff turned 18. (*Id.* ¶ 66.) "[F]or years after the photoshoots," Defendant's company continued to publish Plaintiff's photographs and videos on its website, and "continued to pay [Plaintiff] her portion of the profits as per her contract." (*Id.* ¶¶ 72–73.)

On December 30, 2024, the New York Times (the "Times") published an article "focused on men who use Instagram to develop grooming relationships with child models," which also included quotes and information sourced from "earlier online models," including Plaintiff. (*Id.* ¶¶ 76–77, 79.) Defendant alleges that Plaintiff conveyed to the authors of the article that, during

the first New York photoshoot, she was alone in Defendant's house without her mother present; Defendant "gave her a drink which left her feeling strange, after which he sexually assaulted her"; and that Defendant then "provided her more money than what had previously been arranged for the photo shoot." (*Id.* ¶ 80.) Plaintiff purportedly corroborated these statements with a photo "showing at least $1,000 in cash from that trip" and "photos of her trip [to New York]" that she had posted to Facebook. (*Id.*) Plaintiff's statements were reported in the article as follows:

> Another woman, Audrey Burns, now 28, said Mr. Lidestri sexually assaulted her when she visited him in New York for a photo shoot. At the time, she said, her life was chaotic, and she had lived for a while with her mother in a shelter in Oklahoma. She started working for Mr. Lidestri when she was 14, she recalled, and later traveled to New York with her mother. Photos she shared on Facebook from the trip included separate images of Mr. Lidestri and at least 10 $100 bills. They were posted in April 2013, when she was 16. Mr. Lidestri offered her money beyond what she had been paid for the photo shoot, Ms. Burns said. He then sexually assaulted her with his hands and mouth, she said. "He asked if I wanted to stop, and I couldn't speak," she said. "I was catatonic." . . . All three women said they remained quiet when younger because they felt powerless, because they needed the money or because Mr. Lidestri said they or their parents could get in trouble.

(*Id.* ¶ 81.) Defendant alleges that Plaintiff's claims that Defendant "sexually assaulted her and paid her off" when "she was a child" are "knowing[ly] . . . completely and totally false," that Defendant "did not sexually assault [Plaintiff] in any way," "did not offer . . . [her] more money than she was to earn for the photoshoot," that Plaintiff was at no point "catatonic," and that Defendant "did not 'ask if [Plaintiff] wanted to stop.'" (*Id.* ¶¶ 82–87.) The day the article was published, Plaintiff posted a link to it on her public Facebook profile. (*Id.* ¶¶ 88–90.)

<u>B. Procedural Background</u>

Plaintiff initiated this Action on September 9, 2025. (*See* Compl. (Dkt. No. 1).) Following a pre-motion letter from Defendant, Plaintiff filed an Amended Complaint on December 11, 2025. (*See* Am. Compl. (Dkt. No. 12).) Defendant answered on December 29,

2025, (*see* Answer (Dkt. No. 14)), and asserted one counterclaim for defamation, (*see* Countercl.). Plaintiff moved to dismiss the Counterclaim on February 3, 2026. (*See* Mot. to Dismiss Countercl. (Dkt. No. 19); Suppl. Mem. ("Pl.'s Mem.") (Dkt. No. 19-8).) Defendant filed a Memorandum in Opposition on February 26, 2026. (*See* Mem. in Opp'n re: Mot. to Dismiss Countercl. ("Def.'s Mem.") (Dkt. No. 24).) Plaintiff did not reply by the deadline set in the Court's briefing schedule, (*see* Dkt. (minute entry dated Jan. 22, 2026)), and has not since filed a reply, (*see generally* Dkt.), so the Court deems the Motion fully submitted. *See Hopkins v. Seabrook*, No. 14-CV-600, 2015 WL 685220, at *1 (S.D.N.Y. Feb. 18, 2015) (deeming motion fully submitted where party did not timely provide responsive briefing); *United States v. Clarke*, No. 05-CR-17, 2006 WL 3615111, at *1 (S.D.N.Y. Dec. 7, 2006) (same). Discovery on the claims in the Amended Complaint is ongoing. (*See* Case Mgmt. & Scheduling Order (Dkt. No. 21); *see* Order Granting Letter Mot. for Ext. of Time to Complete Discovery (Dkt. No. 36).)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).[1] Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me

[1] The standard of review for a motion to dismiss a counterclaim is no different than the standard of review for a motion to dismiss a complaint. *See S&R Dev. Ests., LLC v. Town of Greenburgh*, 336 F. Supp. 3d 300, 307 (S.D.N.Y. 2018).

accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must

confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (noting that a district court should only consider the complaint, documents appended to the complaint or incorporated by reference, and matters of which judicial notice can be taken in ascertaining facts for a motion to dismiss).

B. Analysis

1. Jurisdiction

The Court starts, as it must, with Plaintiff's jurisdictional challenge to the Counterclaim. *See Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 234 (S.D.N.Y. 2020) (explaining that a "court facing challenges as to both its jurisdiction over a party and the sufficiency of any claims raised must first address the jurisdictional question" (quoting *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 148 (E.D.N.Y. 2017)); *see also In re Mex. Gov. Bonds Antitrust Litig.*, 412 F. Supp. 3d 380, 387 n.12 (S.D.N.Y. 2019) (same) (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431–32 (2007)). Plaintiff contends the Court lacks personal jurisdiction over her for the Counterclaim because New York's long-arm statute does not encompass her, and because the Counterclaim is not closely related to the allegations in her Amended Complaint. (*See* Pl.'s Mem. 19–23.)

The Court has personal jurisdiction over Plaintiff for the Counterclaim because she agreed to personal jurisdiction in this Court by bringing this Action here. "When [a plaintiff] invokes the court's jurisdiction by bringing suit, [the plaintiff] also subjects herself to the court's

jurisdiction in respect of the defendant's counterclaims." Siegel, N.Y. Prac. § 224 (6th ed.);[2] *see also V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 132 (2d Cir. 2022) (explaining that "[o]ne exception" to the principle that a plaintiff's consent to a court's jurisdiction extends only to the plaintiff's instant case is "in the context of counterclaims, where a plaintiff bringing suit in a forum 'submit[s] itself to the jurisdiction of the court with respect to all the issues embraced in the suit, including those pertaining to the counterclaim of the defendants.'" (quoting *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 451 (1932))). In other words, in bringing a complaint, "[i]n the vast majority of cases a plaintiff, by virtue of bringing suit, waives venue and personal jurisdiction objections to a defendant's counterclaims." *Glob. Refining Grp., Inc. v. PMD Analysis, Inc.*, Nos. 21-CV-532, 21-CV-9182, 2023 WL 5733968, at *10 (S.D.N.Y. Aug. 15, 2023) (quoting *Grupke v. Linda Lori Sportswear, Inc.*, 174 F.R.D. 15, 18 (E.D.N.Y. 1997)); *see also Fiorillo v. New York State Dep't of Env't Conservation*, 558 N.Y.S.2d 659, 660 (App. Div. 1990) ("One initiating an action or proceeding subjects himself to personal jurisdiction for any counterclaims the party sued wishes to interpose."); *Scanomat A/S v. Boies, Schiller & Flexner LLP*, 54 N.Y.S.3d 612, 612 (Sup. Ct. 2017) ("A court whose jurisdiction an out-of-state party has invoked can entertain counterclaims against that party.") (alterations adopted). Plaintiff's argument that the counterclaim is insufficiently related to the allegations in her Amended Complaint, (*see* Pl.'s Mem. 22–23), may have been relevant to a

---

[2] "Personal jurisdiction is governed by the laws of the state of New York." *Nat'l Sch. Reporting Servs., Inc. v. Nat'l Schs. of Cal., Ltd.*, 924 F. Supp. 21, 23 (S.D.N.Y. 1996); *see also Doe v. City of New York*, 583 F. Supp. 2d 444, 447 (S.D.N.Y. 2008) ("To establish personal jurisdiction, this Court must apply the law of New York, the state in which it sits." (citing *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997))).

challenge to supplemental jurisdiction if it were contested,[3] or to jurisdiction under the "affirmative relief" rule,[4] but it does not bear on personal jurisdiction when she has consented to it by bringing suit, *see Fiorillo*, 558 N.Y.S.2d at 660; *Scanomat*, 54 N.Y.S.3d at 612.

Accordingly, as a matter of New York law, there is personal jurisdiction in this Court over Plaintiff for the Counterclaim.

2. Anti-SLAPP Law

Plaintiff argues that "New York's anti-SLAPP [law] protects . . . [Plaintiff] from these type[s] of actions." (Pl.'s Mem. 18.) Defendant responds that the anti-SLAPP law does not apply in federal court. (Def.'s Mem. 20–21.) The Court agrees with Plaintiff that parts of New

---

[3] Subject matter jurisdiction extends over counterclaims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," a test more closely resembling what Plaintiff argues here. 28 U.S.C. § 1367(a). But Defendant does not and need not invoke the Court's supplemental jurisdiction for his Counterclaim: there is more than $75,000 in controversy, (*see* Countercl. ¶ 108), and there is diversity of state citizenship between Plaintiff and Defendant, (*see id.* ¶¶ 4–5), so the Counterclaim falls within the Court's original jurisdiction.

[4] Plaintiff cites *Yehuda v. Zuchaer*, No. 22-1972, 2023 WL 8888584, at *2 (2d Cir. Dec. 26, 2023) (summary order), for the proposition that "personal jurisdiction exists where a defendant . . . independently seeks affirmative relief in a separate action before the same court concerning the same transaction or occurrence" (the "affirmative relief" rule). (*See* Pl.'s Mem. 22.) That principle plainly does not apply here. Defendant does not argue the Court has personal jurisdiction over Plaintiff because Plaintiff "independently" filed some "separate action" concerning the same facts—he is arguing the Court has personal jurisdiction over Plaintiff because she filed *this* Action in which Defendant is bringing the Counterclaim. *Yehuda*, 2023 WL 8888584, at *2. In *V&A Collection*, which *Yehuda* quoted, the Second Circuit embraced the proposition that "in the context of *counterclaims*," a plaintiff "by his voluntary act in demanding justice from the defendant, submit[s] himself to the jurisdiction of the court." 46 F.4th at 132 (quoting *Adam v. Saenger*, 303 U.S. 59, 67–68 (1938)) (emphasis added). It described the affirmative relief rule—*i.e.*, that consent jurisdiction can arise from "*other* lawsuits in the same forum arising out of the same transaction or occurrence"—as an *expansion* of the rule that a plaintiff consents to personal jurisdiction over them for counterclaims, and it did not endorse it. *Id.* (emphasis added).

York's anti-SLAPP law govern the Counterclaim, but finds no parts of that law apply that would mandate dismissal of the counterclaim at the pleadings stage.

The Supreme Court's decision in *Erie Railroad Company v. Tompkins*, 304 U.S. 64 (1938), requires that "federal courts sitting in diversity apply state substantive law and federal procedural law," *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996). New York's anti-SLAPP law includes procedural provisions that do not apply in federal court under *Erie*, and substantive provisions that do. *Compare Carroll v. Trump*, 590 F. Supp. 3d 575, 584 (S.D.N.Y. 2022) (noting that certain provisions of the anti-SLAPP statute requiring a motion to dismiss to be granted unless a claim has a "substantial basis in law," or requiring allowing any motion made pursuant to the statute to be decided not just on the pleadings but also on affidavits and supporting evidence, are procedural and thus displaced by Rule 12), *with Heilbut v. Cassava Scis., Inc.*, 778 F. Supp. 3d 551, 567 (S.D.N.Y. 2025) (concluding that although "New York's anti-SLAPP law contains provisions with procedural effects that . . . conflict with Rules 12 and 56," it contains other substantive state-law remedies that can be given effect in federal court).

The provision Plaintiff points to here requires that in "an action involving public petition and participation, damages may only be recovered if the plaintiff, in addition to all other necessary elements, shall have established by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false" if the truth of the communication is material, setting an "actual malice" standard and a burden of proof for it. (Pl.'s Mem. 18 (quoting N.Y. Civil Rights Law § 76-a(2)).) That provision is not procedural—it sets an element and standard of proof for recovering damages, which is substantive law to which a federal court exercising diversity jurisdiction and applying New York law must give effect. *See Medtronic, Inc. v.*

*Mirowski Family Ventures*, 571 U.S. 191, 199 (2014) ("[W]e have held that the burden of proof is a substantive aspect of a claim." (quotation marks omitted) (citing *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20–21 (2000)); *Contreras v. Wal-Mart Stores E., LP*, No. 18-CV-3589, 2019 WL 7599888, at *3 (E.D.N.Y. Nov. 12, 2019) (explaining that where a federal court in diversity is applying New York law, "New York substantive law governs the elements of the plaintiff's cause of action"), *report and recommendation adopted*, 2020 WL 1429473 (E.D.N.Y. Mar. 24, 2020). Indeed, the Second Circuit recently "conclude[d] that Section 76-a of New York's anti-SLAPP statute is substantive law," along with "its heightened fault standard," because it "governs the rights and obligations of parties to certain defamation suits by defining the standard of fault required to succeed on such claims." *Satanic Temple, Inc. v. Newsweek Digit. LLC*, 177 F.4th 202, 211 (2d Cir. 2026) (citation and quotation marks omitted); *see also Kesner v. Buhl*, 590 F. Supp. 3d 680, 693–94 (S.D.N.Y. 2022) (applying § 76-a and noting "[c]ourts have uniformly found the anti-SLAPP amendment . . . to apply to diversity actions").

However, the Court need not take the next step of concluding § 76-a(2)'s actual malice and clear-and-convincing evidence standards govern *this* Action, *i.e.*, concluding that the Counterclaim is an action involving public petition and participation. Whether or not § 76-a(2) applies, the Court concludes for reasons discussed *infra* Part II(B)(3) that the Counterclaim adequately alleges actual malice. *See Doe v. St. Lawrence Univ.*, No. 23-CV-426, 2024 WL 1116454, at *23 (N.D.N.Y. Mar. 14, 2024) ("Because . . . [the defendant's] counterclaims adequately allege 'actual malice,' the Court need not determine, at this juncture, whether [the p]laintiff's alleged statements involve matters of public concern or were made in a public forum within the meaning of New York's anti-SLAPP law."). Accordingly, though the Court

concludes certain provisions in the anti-SLAPP law may apply here without running afoul of *Erie*, the Court does not find that to be a basis to dismiss the Action.

3. Defamation Claim

The Parties agree that New York law governs Defendant's defamation counterclaim. (*See* Pl.'s Mem. 8 (citing New York law for elements of defamation claim); Def.'s Mem. 12, 16 (same).) "To prevail on a defamation claim under New York law, a plaintiff must prove that the defendant made 'a false statement, published without privilege or authorization to a third party,' that 'either causes special harm or constitutes defamation per se.'" *Coleman v. Grand*, 158 F.4th 132, 138 (2d Cir. 2025) (quoting *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (App. Div. 1999)). The Second Circuit has distilled this into five elements a plaintiff must establish at the motion to dismiss stage: "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (citing *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000)). As discussed *supra* Part II(B)(2), the Court assumes the relevant standard for fault is actual malice.[5]

---

[5] Because the Court assumes the "actual malice" standard applies, it need not reach Plaintiff's argument that Defendant is a limited public figure. (*See* Pl.'s Mem. 15–17.) In any event, that argument is not ripe for resolution at this stage; Plaintiff's contention is largely premised on articles the Court cannot take judicial notice of at the Motion to Dismiss stage, and the Counterclaim's allegations that the New York Times contacted Defendant for comment, which do not show *Defendant* inserting himself into the public sphere. (*Id.*) "[W]here the facts are not in dispute, the issue of whether a plaintiff, in a defamation action, is a public figure is one for the court to determine," but the Court cannot resolve factual disputes in a motion to dismiss in a non-movant's favor. *O'Neil v. Peekskill Fac. Ass'n*, 507 N.Y.S.2d 173, 179 (App. Div. 1986) (emphasis added); *see also Farber v. Jefferys*, 941 N.Y.S.2d 537, 537 (Sup. Ct. 2011) (same).

As to the first element, Plaintiff argues Defendant has not alleged what actionable statements she made with sufficient specificity, citing only New York state cases for that standard. (*See* Pl.'s Mem. 8–10.) But "[f]ederal law, not [state] law, governs pleading in diversity cases," and "the Second Circuit does not require *in haec verba* pleading, *i.e.*, of the exact alleged defamatory words" in defamation cases. *Merco Holdings, LLC v. Bousbib*, No. 20-CV-1688, 2022 WL 673579, at *11 (D. Conn. Mar. 7, 2022) (citations omitted); *see also Yukos Cap. S.A.R.L. v. Feldman*, No. 15-CV-4964, 2016 WL 183360, at *1 (S.D.N.Y. Jan. 11, 2016) ("It no longer is essential in a defamation case in federal court to plead *in haec verba* the allegedly defamatory words. Rather, pleading of defamation claims in federal court is governed by Fed[eral] R[ule of] Civ[il] P[rocedure] 8."). Rule 8 requires a party bringing a defamation claim only to "identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published." *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 790 (S.D.N.Y. 2019) (citation and quotation marks omitted). Defendant's allegations clear that bar. The Counterclaim identifies the allegedly defamatory statements that Plaintiff made to the reporters, (*see* Countercl. ¶ 80 ("Among [Plaintiff's] statements to the *Times* reporters were the following," listing, *inter alia*, that "[w]hile [in New York], [Defendant] gave [Plaintiff] a drink which left her feeling strange, after which he sexually assaulted her," and that "[h]e then provided her more money than what had previously been arranged for the photoshoot"), that Plaintiff herself made these statements, (*id.*), that she made them to reporters at the Times who are identified by name, (*id.* ¶¶ 75, 80), and that she made those statements "as part of" the investigation for the

forthcoming December 30, 2024 article,[6] (*id.* ¶¶ 77, 80). That suffices for Rule 8's requirements to allege the statements made. And although the first element nominally requires a "written" statement, *Palin*, 940 F.3d at 809, "[w]here a defamatory statement is oral, but is expected by the speaker to be reduced to writing and published, and is subsequently communicated in written form," that still satisfies the first element, *Carroll v. Trump*, 680 F. Supp. 3d 491, 510 (S.D.N.Y. 2023) (citing *Park Knoll Assocs. v. Schmidt*, 454 N.Y.S.2d 901, 904 (App. Div. 1982)); *see also Macineirghe v. County of Suffolk*, No. 13-CV-1512, 2015 WL 4459456, at *9 (E.D.N.Y. July 21, 2015) (explaining a claim "sound[ed] in libel" where it alleged defamatory statements "orally described . . . before ultimately being reduced to writing"). Accordingly, "[a] statement made to a person known . . . by the speaker to be a working newspaper reporter, for example, provided the statement is thereafter communicated in written form," as is alleged here, can still be actionable under this standard. *Carroll*, 680 F. Supp. 3d at 510 (citing Robert D. Sack, Sack on Defamation: Libel, Slander, & Related Probs. § 2:3 (4th ed. 2011)).[7]

As to the second element, Defendant has adequately alleged publication to a third party—at least to the Times reporters who are named in the Counterclaim. (*See* Countercl. ¶¶ 75, 80.)

---

[6] That may not be especially specific as to the "when" of Plaintiff's statement, but to survive a motion to dismiss, a defamation claim need not provide the precise time of a statement so long as it "provide[s] enough context for the defendants to defend themselves," *i.e.*, "an '*indication*' of . . . when" the statement was made. *Wellner v. City of New York*, No. 16-CV-7032, 2019 WL 1511022, at *2 (S.D.N.Y. Mar. 22, 2019) (emphasis added) (quoting *MCM Prod. USA, Inc. v. Botton*, No. 16-CV-l616, 2016 WL 5107044, at *5 (S.D.N.Y. Sept. 19, 2016)). Here, the Counterclaim identifies the timing of Plaintiff's statements with adequate notice to Plaintiff of what statements it alleges were defamatory and when they were made—*i.e.*, her statements to the identified Times reporters in advance of the publication of the article at issue. (*See* Countercl. ¶¶ 80–81.)

[7] The Court accordingly need not reach Defendant's argument that Plaintiff's Facebook post with the article "constitute[d] adoption" of its contents and therefore also either satisfied the first or second element of a defamation claim. (*See* Def.'s Mem. 16.)

Plaintiff argues she "is not the publisher of the statements contained within the Complaint." (Pl.'s Mem. 9.) But that misreads New York defamation law's publication requirement. "[U]nder New York law, 'publication' is a 'term of art, signifying communication of the defamatory statement to a third party.'" *Gandhi v. New York State Unified Court Sys.*, No. 20-CV-0120, 2021 WL 4404235, at *4 (N.D.N.Y. Sept. 27, 2021) (quoting *Penn Warranty Corp. v. DiGiovanni*, 810 N.Y.S.2d 807, 814 (Sup. Ct. 2005)); *see also Egiazaryan v. Zalmayev*, No. 11-CV-2670, 2011 WL 6097136, at *5 (S.D.N.Y. Dec. 7, 2011) (same). Here, Defendant has plausibly alleged Plaintiff communicated certain statements, (*see* Countercl. ¶ 80), to a third party when she relayed them to reporters at the Times, *see, e.g.*, *Horton v. Guillot*, No. 14-CV-1050, 2016 WL 4444875, at *3 (N.D.N.Y. Aug. 23, 2016) (finding publication requirement met where the plaintiff alleged the defendant made defamatory statements about him to reporters, even when the subsequent reproduction of those statements did not consist of direct quotes from the defendant). Accordingly, Defendant has plausibly alleged the publication element.

As to the third element, Defendant has alleged the statements referenced in the Counterclaim, (*see* Countercl. ¶ 80), and the direct quote in the article, (*id.* ¶ 81), were false, (*see id.* ¶¶ 42–55 (offering a specific and differing factual account of the New York photoshoot than in Plaintiff's statements, concluding with the claim that Defendant "never sexually assaulted [Plaintiff], at the photo shoot or on any other date," *contra* the statements Defendant attributes to Plaintiff)). Plaintiff argues that she "possesses ample evidence demonstrating the veracity of many of" the statements reproduced in the Times article. (Pl.'s Mem. 12.) She may. But "the resolution of the substantial truth" of Plaintiff's statements "is not appropriate on a motion to dismiss under Rule 12(b)(6) because it takes the Court beyond the pleadings," which considering this argument and Plaintiff's attached exhibits would do. *McCusker v. Hibu PLC*, 159 F. Supp.

3d 341, 350 (E.D.N.Y. 2016) (quotation marks and citation omitted); *see also Watson v. NY Doe 1*, 439 F. Supp. 3d 152, 164 (S.D.N.Y. 2020) ("Whether the allegedly defamatory comments . . . are actually true cannot be decided on a motion to dismiss.").

As to the fourth element, fault, Defendant has plausibly alleged Plaintiff made these statements with "actual malice." The Second Circuit has "emphasize[d] that actual malice does not mean maliciousness or ill will; it simply means the statement was made with knowledge that it was false or with reckless disregard of whether it was false or not." *Palin*, 940 F.3d at 816 (describing actual malice in the First Amendment context) (quotation marks omitted); *Satanic Temple*, 177 F.4th at 213 (explaining that in adopting § 76-a(2), "the state legislature intended the statute's standard of fault to mirror the constitutional 'actual malice' standard, such that [courts] may draw from cases applying both the statutory and the constitutional standards"). Here, Defendant has alleged that Plaintiff knew her statements about her New York trip were false at the time she made them because she was physically present for the photoshoot and trip and "extremely happy" with how it went, and Defendant pled specific facts that contradicted the statements Plaintiff provided to the Times, culminating in the allegation that he did not sexually assault her. (*See* Countercl. ¶¶ 45–51.) Courts have held that factual allegations supporting a speaker's firsthand knowledge of falsity suffice to plead actual malice. *See Watson*, 439 F. Supp. 3d at 164 ("A fair inference from the Complaint is that [the defendant] knew that the plaintiff did not rape her but falsely made that accusation. Those circumstances are sufficient to infer . . . actual malice on the part of [the defendant] because she is alleged to have firsthand knowledge of whether the plaintiff did or did not rape her."); *Bah v. Apple Inc.*, No. 19-CV-3539, 2020 WL 614932, at *12 (S.D.N.Y. Feb. 10, 2020) ("Actual knowledge of falsity can satisfy the actual malice standard."); *contra Button v. Doherty*, No. 24-CV-5026, 2025 WL

2846927, at *16 (S.D.N.Y. July 30, 2025) (dismissing defamation action under actual malice standard where "[w]hile the [complaint] [was] replete with conclusory assertions that [the defendant] acted with actual malice, there [were] no facts pleaded to support those assertions"), *report and recommendation adopted*, 2025 WL 2776069 (S.D.N.Y. Sept. 30, 2025). Defendant has accordingly alleged actual malice.

As to the fifth element, Defendant does not claim special damages, but has plausibly alleged that the statements at issue are defamation per se. Defendant alleges, in sum, that Plaintiff stated Defendant drugged and sexually abused her when she was a child.[8] (*See* Countercl. ¶ 80 (alleging that Plaintiff stated to Times reporters that Defendant had sexually abused her during her trip to New York when she was a minor); *id.* ¶ 81 (quoting the New York Times article as relaying that "[Plaintiff], now 28, said [Defendant] sexually assaulted her when she visited him in New York for a photo shoot"); *id.* (quoting the New York Times article's reproduction of Plaintiff's quote that "[Defendant] asked if [Plaintiff] wanted to stop, and [Plaintiff] couldn't speak").) Such a statement, if false, constitutes defamation per se.[9] *See Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184, 212 (W.D.N.Y. 2013) ("A statement falsely

---

[8] Plaintiff contends that "the statements attributed to Plaintiff . . . do not accuse Defendant of raping her." (Pl.'s Mem. 9.) However the Counterclaim's allegations of Plaintiff's statements are characterized, the statements at the very least accuse Defendant of serious sexual misconduct, (*see* Countercl. ¶ 80 (alleging Plaintiff told the Times reporters that Defendant sexually assaulted Plaintiff)), and the Court must accept the allegations in the Counterclaim as true for the purposes of Plaintiff's Motion.

[9] This also addresses Plaintiff's argument that many of her alleged statements to the reporters are not capable of a defamatory meaning, such as her statements about her own upbringing. (*See* Pl.'s Mem. 11–12.) Defendant "do[es] not challenge" those statements; rather, Defendant only challenges the statements that "attribute[] to him specific acts of sexual misconduct," which, as the Court has explained above, are clearly capable of a defamatory meaning, and are specific and factual claims about Defendant's conduct. (Def.'s Mem. 17.)

accusing someone of rape is defamation *per se*." (citing *TC v. Valley Cent. Sch. Dist.*, 777 F. Supp. 2d 577, 603 (S.D.N.Y. 2011)); Restatement (Second) of Torts § 574 (A.L.I. 1977) ("One who publishes a slander that imputes serious sexual misconduct to another is subject to liability to the other without proof of special harm."); *Rejent v. Liberation Pubs., Inc.*, 611 N.Y.S.2d 866, 869 (App. Div. 1994) (describing the Restatement as giving "the modern formulation of the rule" for defamation per se from sexual misconduct).

Whether Plaintiff's statements to the Times were, in fact, *true*, as she argues throughout her memorandum, is a question of fact to be resolved at a later stage in this Action, and one the Court does not and cannot resolve in this Opinion and Order. *See Cartagena v. Dixon*, No. 25-CV-3552, 2026 WL 673811, at *8 (S.D.N.Y. Mar. 10, 2026) ("Whether the statements that [the plaintiff] claims are defamatory are in fact false is a matter for another day."); *Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Pub. Inc.*, 49 F. Supp. 2d 673, 680 (S.D.N.Y. 1999) ("Whether the statements allegedly made by [the plaintiff] are false is a factual issue that is 'enmeshed' in the ultimate resolution of this action."). The Court does find, however, that the Counterclaim plausibly alleges each element of a defamation claim under New York law, and that the Court has personal jurisdiction over Plaintiff to hear that Counterclaim. Accordingly, the Court denies Plaintiff's Motion to Dismiss.

## III. Conclusion

For the reasons set forth above, the Court denies Plaintiff's Motion to Dismiss Defendant's Counterclaim. The Clerk of Court is respectfully directed to terminate the pending Motion (Dkt. No. 19).

SO ORDERED.

Dated: September 28, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge