VERIDIAN
LEGAL

23 West 73rd Street
Suite 102
New York, NY 10023

T: (212) 706-1007
F: (646) 849-0033
www.veridianlegal.com

October 8, 2026

**VIA ECF**
Hon. Judith C. McCarthy,
United States District Court, Southern District of New York

**Re: Burns v. Lidestri, No. 7:25-cv-07474 (KMK)(JCM)**
**Plaintiff's Opposition to Defendant's Letter-Motion for a Protective Order (Dkt. No. 71)**

Dear Judge McCarthy:

Plaintiff writes to oppose Defendant James Lidestri's October 5, 2026 letter-motion (Dkt. No. 71) ("Def. Ltr.") which asks for a protective order under Fed. R. Civ. P. 16(b)(4) and 26(c)(1) barring Plaintiff's non-party document subpoenas to Signature Payments, LLC, First Data Merchant Services LLC, and American Express Travel Related Services Company, Inc. (the "Processors"). The Court should deny the motion for three independent reasons. First, Defendant bears the burden of a specific showing of good cause, and he makes none against subpoenas that Plaintiff had already narrowed to most of the limits he proposed. Second, the subpoenas were issued within the discovery period, on information that surfaced through responses to a Wells Fargo subpoena which was only necessary because of Defendant's refusal to produce any meaningful information or documentation. Third, and relatedly, the records are relevant and proportional, because Defendant says every business record was lost and disputes who owned the sites and received the money.

**The dispute is far narrower than Dkt. No. 71 suggests.** Plaintiff answered Defendant's proposed limits point by point before he filed (Exhibit 1). She agreed to: (1) strike Requests 1 and 6; (2) limit every subpoena to January 1, 2012 through December 31, 2021, which is the period Defendant proposed by reference to Dkt. No. 54; (3) limit Request 4 to communications about the content sold on the sites; (4) remove Defendant's date of birth; and (5) designate any production Confidential under the Protective Order and produce it to Defendant immediately on receipt. (Exhibit 1, Oct. 2, 2026 Madia email). Defense counsel acknowledged: "We appreciate Plaintiff's agreement to several of the limits we proposed." (Exhibit 1, Oct. 2, 2026 Cilento email). Dkt. No. 71 nonetheless reports only that Plaintiff "later expressed a willingness to narrow some of the requests." (Def. Ltr. at 2). It then asks the Court to impose the temporal cap, the date-of-birth removal, and the confidentiality terms which Plaintiff had already accepted. (*Id.* at 3, ¶¶ 2, 4). Only the following remain in dispute: timeliness; the American Express merchant-services subpoena; and Requests 3, 7, 8, 9, 10, and 11, plus Request 4 as narrowed.

**Defendant has not carried his burden.** "The party seeking a protective order bears the burden of establishing that good cause for the order exists." (*Duling v Gristede's Operating Corp.*, 266 FRD 66, 71 [SDNY 2010]). Good cause requires "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." (*Monterey Bay Military Hous., LLC v AMBAC Assur. Corp.*, 2021 US Dist LEXIS 174530, at *24 [SDNY Sep. 14, 2021]). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." (*McIver v Trustees of Columbia Univ. in the City of NY*, 2026 US Dist LEXIS 73489, at *5 [SDNY Apr. 2, 2026, No. 25-CV-34 (JPO)]). Dkt. No. 71 attaches no declaration and identifies no concrete harm to Defendant. It also does not explain

why Confidential treatment and immediate production to him, which are the protections he himself requested and to which Plaintiff has already agreed, would fall short. In *Kleimar* the subpoenaing party "offered to narrow the scope of the subpoena and agree to a confidentiality stipulation or a protective order" which the court felt addressed confidentiality concerns. (*In re Kleimar N.V.*, 220 F Supp 3d 517, 522 [SDNY 2016]).

**The subpoenas are timely.** Plaintiff issued the subpoenas and served Rule 45(a)(4) notice on September 29, 2026, within the fact-discovery period that closed September 30. (Exs. A–C; Def. Ltr. at 1). Rule 45(a)(4) requires that notice occur before service of the subpoenas. The next morning, Defendant demanded that Plaintiff not serve the subpoenas. (Exhibit 1, Sept. 30, 2026 Cilento email). "At least one court in this District has deemed a subpoena served on a non-party shortly before a deadline to complete fact discovery to be timely for purposes of Federal Rule of Civil Procedure 45." (*VR Optics, LLC v Peloton Interactive, LLC*, 2019 US Dist LEXIS 82183, at *23 [SDNY May 15, 2019, No. 16-CV-6392 (JPO)]). In *VR Optics*, the subpoena was served the day before the deadline by a party that had learned of the documents seven days before the close, and the court ordered production. *Id.* The court distinguished *Kelly v. Wright* because the dilatory party there offered no explanation for failing to seek long-known materials earlier. *Id.* Defendant's authorities share that defect or are more remote. Here, Plaintiff would have been hard-pressed to serve before the deadline as Wells Fargo sent the records – approximately 3,194 pages – to Plaintiff's two-person firm on September 18, 2026. Plaintiff's subpoenas were noticed before the close of discovery.

**Good cause supports the return date.** As Plaintiff told Defendant, "The subpoenas were prompted in significant part by information produced directly by Wells Fargo." Indeed, that production identified the merchant-processing relationships which Defendant neglected to provide. (Exhibit 1, Sept. 30, 2026 Szalkiewicz email). A court in this District recently found good cause for a subpoena served *after* the close of discovery where the issuing party learned the proper recipient only at the end and acted within days. (See *Vinci Brands LLC v Coach Servs.*, 2026 US Dist LEXIS 216691, at *22 [SDNY Sep. 23, 2026, No. 23-CV-5138 (LGS) (VF)]).

Defendant swore the TeenStarlet business records were stolen in a 2019 burglary and that he has no records of the sites' operation. (Exhibit 2, Def.'s Resp. to Pl.'s First Set of Interrogs. ("Def. Interrog. Resp.") Nos. 12, 15, 16 (Mar. 30, 2026)). He refused to produce merchant-account and payment-processor records. (Exhibit 3, Def.'s Resp. to Pl.'s First RFPs No. 19 (Mar. 30, 2026)). He also told the Court that Plaintiff's demand for processor and American Express records "seeks third-party materials she can subpoena." (June 22, 2026 Joint Letter at 34, p. 4). Plaintiff did exactly that once the Processors were identified in the Wells Fargo records. Defendant suffers no prejudice. The subpoenas call for documents only, impose no work on him, and route all production to him immediately under a Confidential designation. Discovery also has not ended in fact: the Court has permitted Defendant's own deposition to proceed after September 30 and has permitted Defendant to question Plaintiff about his Wells Fargo records.

**The records are relevant and proportional.** Relevance extends "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." (*Goldman Sachs & Co. LLC v Leissner*, 2026 US Dist LEXIS 203965, at *4 [SDNY Sep. 9, 2026]). Plaintiff's claims under 18 U.S.C. § 2255 turn on the sale and distribution of her images through subscription websites. (First Am. Compl. ¶¶ 154–

156, 219). Defendant himself pleaded that every company website "used credit card processors based in the United States." (Countercl. ¶ 29, Dkt. No. 14). In a case about nonconsensual intimate images sold online, this Court has held that "payments made to defendant for his OnlyFans videos are wholly relevant, especially in light of plaintiff's offer to limit the time frame of the request." (*C.K. v. Rigueur*, No. 24 Civ. 2778 (NRB) (S.D.N.Y. Aug. 15, 2024) at 3). The court in *C.K.* also found view counts "relevant not just to plaintiff's injury but also to the amount of money defendant has earned from displaying videos of plaintiff." *Id.* Requests 3 and 7, which ask which domains each merchant identifier served and how much revenue each site generated, show where, when, and how much of the content was sold. Records of the flow of money through accounts are plainly relevant and not burdensome. Requests 8 and 9 identify who owned, controlled, and directed the proceeds of the accounts. That question is disputed: Defendant attributes the sites to BFC (Answer ¶¶ 149, 153, Dkt. No. 14), admits he "was paid a portion of the company's earnings" (Exhibit 4, Def.'s Resp. to Pl.'s First RFAs No. 12 (May 11, 2026)), and denies association with sites tied to him (Exhibit 1, Oct. 2, 2026 Madia email). Requests 10 and 11, now limited to 2012 through 2021, bear on the sites' operation and on Defendant's sworn statement that no law-enforcement agency ever contacted him about the sites. (Exhibit 2, Def. Interrog. Resp. No. 6). Proportionality favors production. Defendant says he has no business, subscriber, or device records (*id.* Nos. 12, 15–17), so the Processors are the only remaining source. Any burden falls on them and the ten-year window is the one he proposed.

Dkt. No. 54 does not bar the American Express subpoena. According to Defendant, that order limited Plaintiff's earlier subpoena to card accounts ending 1007, 1008, and 2005. (Def. Ltr. at 3, ¶ 1). The new subpoena is directed to American Express's merchant-services role, which the later Wells Fargo production revealed. (Exhibit C, Def. 1; Exhibit 1, Oct. 2, 2026 Madia email.) The Court clearly did not have that information when it entered Dkt. No. 54. As narrowed, the subpoena also follows Dkt. No. 54's 2012–2021 period and confidentiality terms.

**Interim relief is unwarranted.** Defendant supports his request for a hold concluding, "Disclosure cannot be undone, and a short hold prejudices no one," and a citation to *Sheindlin*. (Def. Ltr. at 3). *Sheindlin* says neither thing but rather quashed subpoenas on relevance and proportionality grounds after full consideration. (See *Sheindlin v. Brady*, No. 21-CV-1124 (LJL)(SDA), 2021 WL 2075483 (S.D.N.Y. May 24, 2021). Here, any disclosure would go to counsel under a Confidential designation and to Defendant immediately, as requested.

For these reasons, Plaintiff respectfully requests that the Court deny Defendant's letter-motion for a protective order, including his request for interim relief (Dkt. No. 71). Plaintiff further requests that the Court permit her to serve and enforce the subpoenas to the Processors, returnable fourteen days after service, as narrowed in her October 2, 2026 meet-and-confer response: Requests 1 and 6 withdrawn; all requests limited to January 1, 2012 through December 31, 2021; Request 4 limited to communications about the content sold on the sites; Defendant's date of birth removed; and all production designated Confidential under the Protective Order and produced to Defendant immediately on receipt.

Respectfully submitted,
VERIDIAN LEGAL P.C.
/s/Daniel Szalkiewicz
By: Daniel S. Szalkiewicz, Esq.
***daniel@veridianlegal.com***