UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AUDREY BURNS,

*Plaintiff/Counterclaim-Defendant,*

vs.

JAMES LIDESTRI,

*Defendant/Counterclaimant.*

Case No.: 7:25-cv-07474-KMK-JCM

**PLAINTIFF/COUNTERCLAIM-DEFENDANT AUDREY BURNS'S ANSWER AND AFFIRMATIVE DEFENSES TO DEFENDANT'S COUNTERCLAIM**

Plaintiff/Counterclaim-Defendant Audrey Burns ("Burns"), by her attorneys, Veridian Legal P.C., answers the counterclaim for defamation, libel, and slander (the "Counterclaim") asserted by Defendant/Counterclaimant James Lidestri ("Lidestri") in his Answer to First Amended Complaint and Counterclaims (ECF No. 14). The numbered paragraphs below correspond to the numbered paragraphs of the Counterclaim, which begin again at Paragraph 1 after Lidestri's affirmative defenses. Burns repeats the Counterclaim's headings only for the reader's convenience; to the extent any heading contains an allegation, Burns denies it. Burns denies every allegation of the Counterclaim that she does not expressly admit below. She denies that any statement she made about Lidestri was false, and she denies that she is liable to Lidestri in any respect. Burns answers as follows:

**RESPONSE TO INTRODUCTORY PARAGRAPHS**

1. Burns denies the allegations of Paragraph 1, except that she admits she spoke with reporters for The New York Times (the "Times") and that the Times published an article on December 30, 2024. Burns specifically denies that she engaged in any "campaign of public lies," denies that any statement she made to the Times was false, and denies that she acted with malice.

Burns lacks knowledge or information sufficient to form a belief as to how the Times distributed or promoted the article, and on that basis denies those allegations.

2. Burns denies the allegations of Paragraph 2. Burns's statements to the Times about Lidestri sexually assaulting her were true and any statement made to the Times was made with full belief that it was true.

3. Burns denies the allegations of Paragraph 3, except that she admits Lidestri purports to bring the Counterclaim for the stated purpose. Burns denies that she made any false statement about Lidestri and denies that Lidestri is entitled to any relief.

**PARTIES, JURISDICTION, AND VENUE**

4. Burns admits the allegations of Paragraph 4.

5. Burns admits the allegations of Paragraph 5.

6. Burns admits that this Court has subject-matter jurisdiction over the Counterclaim under 28 U.S.C. § 1332, that the amount Lidestri claims exceeds $75,000, exclusive of interest and costs, and that the parties are citizens of different states. Burns denies that Lidestri is entitled to recover any amount.

7. Paragraph 7 states legal conclusions to which no response is required. To the extent a response is required, Burns does not contest the Court's subject-matter jurisdiction over the Counterclaim and denies any remaining allegations.

8. Burns admits that she commenced this action in this District and that she does not contest the Court's personal jurisdiction over her for purposes of adjudicating the Counterclaim. Burns denies that the Counterclaim has merit.

9. Paragraph 9 states legal conclusions to which no response is required. To the extent a response is required, Burns does not contest the Court's personal jurisdiction over her for purposes of the Counterclaim and denies any remaining allegations.

10. Burns admits that venue is proper in this District and that she chose this District as the forum for this action. Burns denies that the Counterclaim has merit and denies any remaining allegations of Paragraph 10.

11. Burns admits that venue is proper in this District and that she is subject to the Court's personal jurisdiction for purposes of the Counterclaim. Burns denies any remaining allegations of Paragraph 11.

## JURY DEMAND

12. Paragraph 12 is a demand for a jury trial to which no response is required.

## STATEMENT OF FACTS

13. Burns lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 13. Burns refers the Court to the press release described in Paragraph 15 of her First Amended Complaint (ECF No. 12) (the "FAC"), which describes Lidestri as a technology executive, and denies any allegation inconsistent with it.

14. Burns lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 14.

15. Burns lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 15.

16. Burns lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 16.

17. Burns lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 17.

18. Burns lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18. Burns refers the Court to the press release described in Paragraph 15 of the FAC and denies any allegation inconsistent with it.

19. Burns denies the characterization of Lidestri's appearance in the Times articles as "incidental." Burns denies that Lidestri has not invited public scrutiny due to his admitted ownership of websites depicting minor girls naked and in lingerie. Burns lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 19.

20. Burns lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 20. Burns denies any implication that Lidestri's photography and website business was limited to adult models.

21. Burns admits that TeenStarlet.com was a subscription-based website. Burns lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 21.

22. Burns lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 22.

23. Burns lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 23.

24. Burns lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 24.

25. Burns lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 25. Burns denies that all payments to her were made through a

Wells Fargo bank, and avers that Lidestri sent her money through other means on multiple occasions. (FAC ¶¶ 43, 46, 61).

26. Burns lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 26.

27. Burns lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 27.

28. Burns lacks knowledge or information sufficient to form a belief as to the terms of any contract between Lidestri and any other model or parent, and on that basis denies those allegations. Burns denies that Lidestri adhered to the conditions alleged in Paragraph 28 in his dealings with her. Burns specifically denies that her mother was present at all times during the April 2013 photoshoot at Lidestri's home, denies that her mother agreed in advance to the poses and attire used, and denies that Lidestri complied with all laws governing the photography of a minor. (FAC ¶¶ 72-74, 80-95.) Burns denies the remaining allegations of Paragraph 28, including that parents or guardians were present at any of her photoshoots.

29. Burns lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 29, and on that basis denies them.

30. Burns lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 30.

31. Burns denies that the website's moderation shielded her from inappropriate or hostile communications from subscribers, and avers that she was required to respond daily to vulgar messages from subscribers. (FAC ¶¶ 111-112.) Burns lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 31, and on that basis denies them.

32. Burns denies the allegations of Paragraph 32. Burns avers that Lidestri sent her a device on which to interact with fans, threatened her with a $250,000 breach-of-contract claim if she did not engage with them, and that she spent time each day responding to vulgar messages sent by subscribers. (FAC ¶¶ 109-112.)

33. Burns lacks knowledge or information sufficient to form a belief as to whether any other parent or model lodged a complaint with Lidestri, and on that basis denies those allegations. Burns denies the remaining allegations of Paragraph 33, and avers that other women have come forward with accounts of Lidestri's conduct toward them, as seen in the Times article(s) which stated that one young woman alleged Lidestri sent her a sex toy when she was seventeen and offered her money for a video of her using it and another young woman indicated that Lidestri required a naked photo session to get a tattoo. (FAC ¶¶ 144-146.)

**Introduction to Counterclaim-Defendant**

34. Burns lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 34, and on that basis denies them.

35. Burns lacks knowledge or information sufficient to form a belief as to the ages of the other models who appeared on the website, and on that basis denies the allegations of Paragraph 35. Burns denies any implication that Lidestri did not solicit or obtain images of her before she turned sixteen.

36. Burns lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 36, and on that basis denies them.

37. Burns admits that she was introduced to Lidestri through a photographer named Jim who had previously photographed her. Burns denies the remaining allegations of Paragraph

37, including that she first became acquainted with Lidestri when she was sixteen and that Lidestri had no contact with her before that age. (FAC ¶¶ 26-46, 172.)

38. Burns denies the allegations of Paragraph 38 as stated. Burns avers that Lidestri, through Jim, sought her out after seeing her photographs, and that Lidestri arranged and directed photoshoots of her and communicated with her directly while she was a minor. (FAC ¶¶ 26-47.)

39. Burns denies the allegations of Paragraph 39. Burns avers that she was paid for photographs taken for Lidestri before she turned sixteen, and that Lidestri sent her money in exchange for photographs she sent him while she was a minor. (FAC ¶¶ 29, 41-46.)

40. Burns admits that she lived in Oklahoma and that she and her mother traveled to New York in April 2013. Burns denies the remaining allegations of Paragraph 40 as stated, and avers that Lidestri arranged and paid for the trip after telling her she could not be photographed by him in New York until she was fifteen and a half. (FAC ¶¶ 41, 52-61.)

41. Burns denies the allegations of Paragraph 41. Burns avers that, at Lidestri's request, she asked her mother whether her sister could accompany her to New York instead of her mother. (FAC ¶ 60.)

**<u>First Photoshoot with Counterclaim-Defendant: April 2013</u>**

42. Burns admits that Lidestri photographed and videotaped her at his home over two days in April 2013, when she was sixteen years old. Burns denies the remaining allegations of Paragraph 42.

43. Burns admits that her mother signed contracts at Lidestri's home during the April 2013 trip. Burns denies the remaining allegations of Paragraph 43, including any implication there was a "studio" or she and her mother approved all attire in advance.

44. Burns admits only that her mother was at Lidestri's home on both days of the April 2013 photoshoot. Burns denies the remaining allegations of Paragraph 44.

45. Burns denies the allegations of Paragraph 45. Burns avers that Lidestri stocked his home with her mother's preferred beer and brought Burns, then sixteen years old, beer during the photoshoot. (FAC ¶¶ 72, 86-89.)

46. Burns denies the allegations of Paragraph 46.

47. Burns denies the allegations of Paragraph 47.

48. Burns denies the allegations of Paragraph 48. Burns avers that Lidestri performed oral sex on her in a bedroom of his home while she was sixteen years old. (FAC ¶¶ 89-92, 173.)

49. Burns admits that no intimate part of Counterclaimant's body touched her intimate parts. Burns avers that Lidestri performed oral sex on her in a bedroom of his home while she was sixteen years old. (FAC ¶¶ 89-92, 173.)

50. Burns denies the allegations of Paragraph 50. Lidestri sexually assaulted Burns at his home in April 2013. (FAC ¶¶ 89-93, 173.)

51. Burns denies the allegations of Paragraph 51. Burns avers that after the assault she was shutting down, had difficulty following directions, and was upset. (FAC ¶¶ 94-97.)

52. Burns admits that Lidestri drove her and her mother around Manhattan during the April 2013 trip. Burns lacks knowledge or information sufficient to form a belief concerning the remaining allegations of Paragraph 52, including the date and sequence alleged (FAC ¶¶ 65-66.)

53. Burns admits that she visited Times Square with Lidestri and her mother during the April 2013 trip. Burns lacks knowledge or information sufficient to form a belief about the remaining allegations of Paragraph 53, including the sequence alleged.

54. Burns admits that she and her mother stayed at a hotel in Times Square during the April 2013 trip. Burns lacks knowledge or information sufficient to form a belief that their stay in Times Square was limited to Sunday night. Burns lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 54, including the details of the reservation and Lidestri's own travel, and on that basis denies them.

55. Burns lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 55, and on that basis denies them.

**Second Photoshoot with Counterclaim-Defendant**

56. Burns admits that a second photoshoot with Lidestri took place in Oklahoma after the April 2013 trip. Burns denies the remaining allegations of Paragraph 56, including the characterization that she and her mother were "so happy" with the first photoshoot and "enthusiastically" invited Lidestri.

57. Burns admits that a photoshoot with Lidestri took place in Oklahoma after the April 2013 trip. Burns lacks knowledge or information sufficient to form a belief as to the precise date alleged, and on that basis denies it. Burns denies the remaining allegations of Paragraph 57.

58. Burns denies the allegations of Paragraph 58.

59. Burns lacks knowledge or information sufficient to form a belief about the allegations of Paragraph 59.

60. Burns denies the allegations of Paragraph 60 but admits that Lidestri did not rape her at the Oklahoma photoshoot.

61. Burns denies the allegations of Paragraph 61.

62. Burns admits that no intimate part of Counterclaimant's body touched her intimate parts. Burns avers that Lidestri performed oral sex on her in a bedroom of his home while she was sixteen years old. (FAC ¶¶ 89-92, 173.)

63. Burns denies the allegations of Paragraph 63.

64. Burns denies the allegations of Paragraph 64. Lidestri sexually assaulted Burns at his home in April 2013. (FAC ¶¶ 89-93, 173.)

65. Burns admits that additional photoshoots followed. Burns avers that Lidestri arranged additional photoshoots of her while she was still a minor, including a photoshoot in Florida when she was seventeen and others involving different photographers. (FAC ¶¶ 113-118.)

**Final Photoshoot with Counterclaim-Defendant**

66. Burns admits that, after she turned eighteen, Lidestri photographed her on one occasion. (FAC ¶ 125.)

67. Burns denies the allegations of Paragraph 67 as stated. Burns avers that Lidestri photographed her together with another model at a photoshoot in Florida that Lidestri arranged when Burns was seventeen years old. (FAC ¶¶ 114-118.)

68. Burns denies the allegations of Paragraph 68. Burns avers that she and the other model arrived at the Florida photoshoot before Lidestri. (FAC ¶ 115.)

69. Burns denies the allegations of Paragraph 69.

70. Burns denies the allegations of Paragraph 70.

71. Burns denies the allegations of Paragraph 71.

**Ongoing Business Relationship with Counterclaim-Defendant**

72. Burns admits that photographs and videos of her continued to be published on Lidestri's websites after the photoshoots.

73. Burns admits that she received payments after the photoshoots. Burns lacks knowledge or information sufficient to form a belief as to whether those payments conformed to any contract or reflected her portion of the profits, which is not in her possession, and on that basis denies the remaining allegations of Paragraph 73.

74. Burns lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 74, and on that basis denies them. Burns denies any implication that every payment to her was made through a Wells Fargo bank, and avers that Lidestri sent her money using other means. (FAC ¶¶ 43, 46, 61.)

**The New York Times Investigation and Article**

75. Burns admits that Jennifer Valentino-DeVries and Michael H. Keller are Times reporters with whom she communicated. Burns lacks knowledge or information sufficient to form a belief as to the dates or substance of the reporters' communications with Lidestri and his attorneys, and on that basis denies those allegations. Burns denies the remaining allegations of Paragraph 75.

76. Burns lacks knowledge or information sufficient to form a belief as to the Times's editorial focus, and on that basis denies the allegations of Paragraph 76. Burns refers the Court to the December 30, 2024 article for its contents and denies any allegation inconsistent with it. Burns further refers the Court to the November 10, 2026 Times article entitled "She Was a Child Instagram Influencer. Her Fans Were Grown Men." which also featured reporting about and a quote from Lidestri.

77. Burns admits that the reporters spoke with her. Burns lacks knowledge or information sufficient to form a belief as to which other models the reporters spoke with, and on that basis denies those allegations. Burns denies the remaining allegations of Paragraph 77 as stated, including any implication that her history bears on the truth of her account, and avers that the harms she has suffered, including her struggle with substance abuse, flow from Lidestri's conduct. (FAC ¶¶ 126-132.)

78. Burns lacks knowledge or information sufficient to form a belief as to the reporters' communications with Lidestri, and on that basis denies those allegations. Burns denies that her statements about Lidestri were false.

79. Burns admits that the December 30, 2024 article included a photograph of her and a caption. Burns refers the Court to the article for its contents and denies any allegation inconsistent with it.

80. Burns admits that she spoke with Times reporters about her experiences with Lidestri. Burns lacks knowledge or information sufficient to form a belief as to Lidestri's conversations with the reporters and what the reporters told him, and on that basis denies those allegations. Burns denies that subparagraphs (a) through (f) accurately or completely describe her communications with the Times, denies that any statement she made to the Times was false, and refers the Court to the FAC for her account of the April 2013 trip. (FAC ¶¶ 61-106.) Burns denies the remaining allegations of Paragraph 80.

81. Burns admits that the December 30, 2024 article (the "Article") contains the language quoted in Paragraph 81. The Article speaks for itself, and Burns denies any allegation inconsistent with it. Burns denies that the emphasis Lidestri added appears in the Article, denies

that any statement attributed to her in the Article is false, and denies the remaining allegations of Paragraph 81.

82. Burns denies the allegations of Paragraph 82. Lidestri sexually assaulted Burns when she was sixteen years old and then gave her a wad of $100 bills. (FAC ¶¶ 89-93.) Burns's statements were true, and she did not make them knowing they were false or with any intent to injure Lidestri.

83. Burns denies the allegations of Paragraph 83.

84. Burns denies the allegations of Paragraph 84.

85. Burns denies the allegations of Paragraph 85. Burns avers that after the assault Lidestri provided her with a wad of $100 bills. (FAC ¶ 92.)

86. Burns denies the allegations of Paragraph 86.

87. Burns denies the allegations of Paragraph 87.

88. Burns admits that on December 30, 2024, she posted on her Facebook profile a post linking to the Article (the "Facebook Post"). Burns denies the remaining allegations of Paragraph 88, including that the Facebook Post amplified any "lies."

89. Burns admits that the Facebook Post carried the caption "Here it is!"

90. Burns admits the allegations of Paragraph 90.

## FIRST CLAIM FOR RELIEF (Defamation)

91. Burns repeats and realleges her responses to Paragraphs 1 through 90 of the Counterclaim as if fully set forth here.

92. Burns denies the allegations of Paragraph 92.

93. Burns denies the allegations of Paragraph 93, except that she admits she posted the Facebook Post linking to the Article.

94. Burns admits that the Article identifies Lidestri by name. Burns denies that the Article contains any defamatory statement made by her and denies the remaining allegations of Paragraph 94.

95. Burns denies the allegations of Paragraph 95.

96. Burns denies the allegations of Paragraph 96.

97. Burns denies the allegations of Paragraph 97. Burns denies that she gave the Times false or internally inconsistent timelines, denies that any statement in her litigation filings is false, and denies that any inference of knowing falsity arises. Burns denies that any alleged inconsistencies in her timeline of events from more than a decade ago supports a plausible inference that she knew her accusations were false.

98. Burns lacks knowledge or information sufficient to form a belief about the exact timeline of events which occurred while she was in New York. Burns denies that any alleged inconsistencies in her timeline of events from more than a decade ago supports a plausible inference that she knew her accusations were false.

99. Burns admits that Lidestri traveled to Oklahoma where he photographed her shortly after photographing her in New York, lacks knowledge or information about whether her mother invited Lidestri to photograph her in Oklahoma, and denies the remainder of the allegations of Paragraph 99, including any implication that agreeing to subsequently be photographed by Lidestri means he did not previously sexually assault her. Burns further denies any inference that she knowingly advanced a false or misleading account.

100. Burns denies the allegations of Paragraph 100, including that she advanced materially false statements or had knowledge of any alleged falsity she supposedly advanced.

101. Burns denies the allegations of Paragraph 101. Burns avers that Lidestri deposited her mother in a basement theatre with beer while he photographed and filmed Burns upstairs, and that Burns was alone with Lidestri in a bedroom when he assaulted her. (FAC ¶¶ 72-74, 89-94.). Burns further denies any inference that she knowingly advanced a false or misleading account.

102. Burns denies the allegations of Paragraph 102, except that she admits she posted the Facebook Post.

103. Paragraph 103 states legal conclusions to which no response is required. To the extent a response is required, Burns denies the allegations of Paragraph 103.

104. Burns denies the allegations of Paragraph 104.

105. Burns denies the allegations of Paragraph 105.

106. Burns denies the allegations of Paragraph 106, except that she admits she posted the Facebook Post. Burns lacks knowledge or information sufficient to form a belief as to republication of the Article by others, and on that basis denies those allegations.

107. Burns denies the allegations of Paragraph 107.

108. Burns denies the allegations of Paragraph 108.

## RESPONSE TO PRAYER FOR RELIEF

The unnumbered paragraph and subparagraphs (i) through (iv) following Paragraph 108 constitute Lidestri's prayer for relief, to which no response is required. To the extent a response is required, Burns denies that Lidestri is entitled to any of the relief requested or to any relief at all.

## GENERAL DENIAL

Burns denies each allegation of the Counterclaim, including any allegation in its headings, footnotes, images, or unnumbered paragraphs, that is not expressly admitted above.

## AFFIRMATIVE AND OTHER DEFENSES

Burns asserts the following affirmative and other defenses. She does not assume any burden of proof she would not otherwise bear, and she reserves the right to amend or supplement these defenses as discovery proceeds.

**FIRST DEFENSE**
**(Truth and Substantial Truth)**

The Counterclaim is barred because the statements on which it rests are true or substantially true.

**SECOND DEFENSE**
**(Failure to State a Claim)**

The Counterclaim fails, in whole or in part, to state a claim upon which relief can be granted.

**THIRD DEFENSE**
**(Non-Actionable Opinion and Rhetorical Hyperbole)**

The Counterclaim is barred to the extent it rests on statements of opinion, subjective description of Burns's own experience, or rhetorical hyperbole that are not actionable as statements of fact.

**FOURTH DEFENSE**
**(Privilege)**

The Counterclaim is barred, in whole or in part, by applicable privileges, including privileges protecting statements on matters of public concern and the privilege attaching to statements made in the course of judicial proceedings, including statements in Burns's pleadings and other filings in this action and in *Lidestri v. Burns*, No. 25-cv-01166 (S.D.N.Y.).

**FIFTH DEFENSE**
**(Lack of Requisite Fault)**

The Counterclaim is barred because Burns did not make any statement with knowledge of its falsity or with reckless disregard for its truth, and did not act with the degree of fault required to impose liability.

**SIXTH DEFENSE**
**(No Cognizable Damages)**

Lidestri's claimed damages are barred, in whole or in part, because they are speculative, were not caused by any statement of Burns, were caused by the conduct of Lidestri or third parties, and because Lidestri has not pleaded special damages with the required specificity.

**SEVENTH DEFENSE**
**(Statute of Limitations)**

The Counterclaim is barred, in whole or in part, by the statute of limitations applicable to claims for defamation, libel, and slander.

**EIGHTH DEFENSE**
**(New York Anti-SLAPP Law)**

The Counterclaim targets Burns's communications on an issue of public interest. Burns asserts every defense and remedy available to her under New York's anti-SLAPP law, including, to the extent provided under that law, any heightened fault standard and any entitlement to costs, attorneys' fees, and damages.

**RESERVATION OF DEFENSES**

Burns reserves the right to assert additional affirmative and other defenses as they become known through discovery or otherwise during this action.

**PRAYER FOR RELIEF**

WHEREFORE, Burns respectfully requests that the Court: (a) dismiss the Counterclaim in its entirety, with prejudice; (b) enter judgment in favor of Burns and against Lidestri on the

Counterclaim; (c) award Burns her costs and attorneys' fees as permitted by law; and (d) grant such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Under Fed. R. Civ. P. 38(b), Burns demands a trial by jury on all issues so triable.

Dated: October 13, 2026
New York, New York

Respectfully submitted,
VERIDIAN LEGAL P.C.

By: /s/*Daniel S. Szalkiewicz* ___
Daniel S. Szalkiewicz, Esq.
Cali P. Madia, Esq.
23 West 73rd Street, Suite 102
New York, New York 10023
Telephone: (212) 706-1007
daniel@veridianlegal.com
cali@veridianlegal.com
*Attorneys for Plaintiff/Counterclaim-Defendant Audrey Burns*