VERIDIAN
LEGAL

23 West 73rd Street
Suite 102
New York, NY 10023

T: (212) 706-1007
F: (646) 849-0033
www.veridianlegal.com

October 23, 2026

**Via ECF**
Hon. Judith C. McCarthy
United States District Judge

**Re: Audrey Burns v. James Lidestri**
**United States District Court, Southern District of New York**
**Civ No. 25-cv-07474-KMK-JCM**
**Plaintiff's Letter-Motion for Reconsideration of the Court's October 7, 2026 Order**

Dear Judge McCarthy:

Please accept this letter, sent on behalf of plaintiff Audrey Burns ("Plaintiff"), asking the Court to reconsider its October 7, 2026 Order (Dkt. 72)(the "Order") to the extent it authorized a two-hour deposition of Plaintiff and directed her to bear the court reporter costs. Based on testimony elicited at the deposition of defendant James Lidestri ("Defendant"), Plaintiff respectfully requests that the Court: (1) hold the October 28, 2026 completion deadline in abeyance until this application is decided and, separately, either (2) vacate the continued deposition or (3) direct Defendant to bear all costs of the continued deposition.

As indicated above, the application rests on evidence that did not exist when the Court ruled: Defendant's own deposition testimony that he could not access his Wells Fargo banking records throughout this litigation. More specifically, Defendant testified that soon after the December 30, 2024 New York Times article was published, Defendant checked his bank records to confirm his memory of when he purchased the sex toy for his former model. Notably, Defendant also testified that the table of payments directed to Plaintiff from 2013 until 2015 was created by his attorney based on records Defendant provided (Exhibit 1).

On October 23, 2026, counsel for Plaintiff requested that the re-deposition be canceled based on the reasons provided, however counsel for Defendant refused, arguing our recollection of Defendant's testimony was inaccurate and our motion untimely.

**The Order and the Representations Behind It.** The Court authorized the continued deposition after finding that Plaintiff's production of the Wells Fargo documents "hindered Defendant's ability to examine Plaintiff about their contents at Plaintiff's deposition." (Dkt. 72 at 4). It assigned the reporter costs to Plaintiff because "the need for Plaintiff's re-deposition was caused by Plaintiff's failure to timely produce the Wells Fargo records." (*Id.*). Those findings followed Defendant's attorney's own account. Mr. Cilento told the Court that he could not examine Plaintiff on the records because he "did not have them." He also said he did not "choose to proceed on an incomplete record." (Dkt. 67 at 2).

Defendant took the same position months earlier, when he resisted Plaintiff's document demands and represented that "the venture's Wells Fargo account was closed and Defendant cannot access closed-account records." He said Plaintiff's demand for bank records "seeks third-party materials she can subpoena." (Dkt. 34 at 4). Again it was represented that "Defendant does not

have the underlying bank records Plaintiff seeks." (*Id.* at 5). Accordingly, Plaintiff pursued the records through non-party subpoenas limited by the Court (Dkt. 54 ¶1).

**Defendant's October 19, 2026 Testimony[1].** Contrary to prior representations by counsel, Defendant at his deposition indicated 1) he has been able to access BFC's Wells Fargo banking records throughout this litigation and, in fact, that he accessed these banking records in late-2024 or early 2025 when he confirmed his memory of purchasing a nearly $600 sex toy for a former model. Defendant further testified that the table of payments made to Plaintiff (Exhibit 1) was created by his attorney based on records provided by Defendant. As specifically relevant here, Defendant's testimony confirms that Defendant had access to these documents all along, including, at the very least, when Defendant's attorney was preparing to depose Plaintiff. It further demonstrates, and will be explored in a later motion, what Plaintiff has long-suspected: that Defendant has been withholding discovery.

**The Court Should Reconsider the Order.** The Court has inherent authority to revisit its interlocutory rulings. The law-of-the-case doctrine "does not limit a court's power to reconsider its own decisions prior to final judgment," and new evidence is a recognized ground for reconsideration (*Virgin Atl. Airways, Ltd. v Natl. Mediation Bd.*, 956 F2d 1245, 1255 [2d Cir 1992]). The standard for Local Civil Rule 6.3 is strict, and reconsideration is generally reserved for a movant who identifies "controlling decisions or data that the court overlooked," meaning matters that "might reasonably be expected to alter the conclusion reached by the court."*(Shrader v CSX Transp.,* 70 F3d 255, 257 [2d Cir 1995]). Deposition testimony given after a discovery ruling and bearing on its premise, meets that standard. (*Alexander v NY City Dept. of Educ.*, 2022 US Dist LEXIS 69958, at *5 [SDNY Apr. 15, 2022, No. 1:19-cv-07023 (JMF).

This application is made one day after Local Civil Rule 6.3's fourteen-day period ran. The Court nonetheless retains power to revisit the Order. In *Shervington*, for example, this Court recognized "the inherent power of the court to reconsider a prior decision at any time before the entry of final judgment" and again cited the major ground justifying reconsideration as including "the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" (*Shervington v Vil. of Piermont,* 732 F Supp 2d 423 [SDNY 2010]).

**The Continued Deposition Should be Vacated.** Leave to re-depose a witness must be "consistent with Rule 26(b)(1) and (2)." (Fed. R. Civ. P. 30(a)(2)(A)(ii). Under Rule 26(b)(2)(C) the Court "must limit" discovery in either of two situations 1) the discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive" or 2) the requesting party "has had ample opportunity to obtain the information by discovery in the action."

This Court's Order proceeded from Defendant's account that the late forwarding left him without necessary records for Plaintiff's deposition, however his testimony undercuts that premise. Not only did Defendant testify that he possessed the ability to access the sought after records all

[1] The transcript is not yet available. Plaintiff will file the cited excerpts promptly upon receipt.

along but declined to produce them, but also that Defendant's own attorney generated a payment table based on information about payments made to Plaintiff provided to him by his client. Nothing – except for tipping his hand that he possessed these records – prevented Defendant's attorney from questioning Plaintiff about the Wells Fargo records when he examined her for approximately six hours in late-September.

A court may deny a second deposition where the party taking it "chose to conduct the deposition prior to the completion of document discovery." (*United States v Prevezon Holdings, Ltd.*, 320 FRD 112, 115 [SDNY 2017]). *Prevezon* found the movant's decision premature but allowed a limited second deposition as the later documents concerned matters within that witness's knowledge. *Id.* This case is the opposite as the subject is Defendant's own banking records, which he could review himself and whose contents do not depend on Plaintiff's recollection.

Here, Defendant had access to his own Wells Fargo records and apparently directed sufficient records of payments made to Plaintiff for counsel to generate the table of payments provided in discovery (Exhibit 1). Defendant's attorney's representations that he was forced to proceed on an incomplete record are disproven by his own client's testimony.

**Alternatively, Defendant Should Bear the Costs of Any Continued Deposition.** If the deposition goes forward, Defendant should bear its costs, including the court reporter costs. Defendant relied on Rule 37(b)(2)(C) (Dkt. 67 at 3). To the extent the allocation rests on that rule, it reaches only expenses "caused by the failure," and it does not apply where "other circumstances make an award of expenses unjust." (Fed. R. Civ. P. 37(b)(2)(C).

Shifting costs is meant to spare a party "additional costs that it would not have otherwise incurred."(*Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v Coventry First LLC*, 280 FRD 147, 157 [SDNY 2012]). Defendant's testimony shows, with or without Plaintiff's copy of the production, he could have examined Plaintiff on his own Wells Fargo records. A second session therefore comes from his own choice and is not a cost he would not otherwise have incurred.

Charging that cost to Plaintiff would also be unjust. Defendant told the Court that he could not access the records. His refusal to produce those records and concomitant conferences about discovery deficiencies and subpoenas subsequently forced Plaintiff's attorneys and this Court to expend time and resources litigating third party production of documents that had been within Defendant's ability to produce from the inception of this lawsuit. If Defendant insists on re-deposing Plaintiff about his own records he has been withholding access throughout this litigation, he should, at a minimum, be responsible for the associated costs.

Respectfully submitted,
*/s/ Daniel S. Szalkiewicz*
By: Daniel S. Szalkiewicz, Esq.